# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE RICHARD M. OSBORNE SR<br>*Debtor* | CASE NO. 17-17361<br>JUDGE ARTHUR I HARRIS<br>CHAPTER 11 |

## MOTION OF RICHARD M. OSBORNE TO EMPLOY KELLER WILLIAMS PITTSBURGH N. AS REAL ESTATE BROKER

Richard M. Osborne, as both the debtor-in-possession ("Debtor"), moves this Court for an order authorizing him to employ Thomas Seaman and Keller Williams Pittsburgh N. as real estate agent.

**Necessity for Employment**. The Debtor has determined that the administration of assets of the estate and the resolution of claims of creditors require the Debtor to perform or obtain real estate brokerage services. In particular, the Debtor has determined that a real estate broker is needed to effectively market for sale or lease the interest of the estate and the Debtor in the parcels of real property located at 225 Swede Road Tidioute PA("Real Estate"). The Real Estate needs to be properly marketed through a real estate broker with proper expertise.

**Person to be Employed**. The Debtor seeks to employ Thomas Seaman and Keller Williams Pittsburgh N., 2550 Village Commons Dr, Erie PA 16506, Tel. 814-833-8500 ("KW") as his real estate agent.

**Reasons for Selection**. KW has been selected by Debtor to perform these services because Mr. Seamen has been performing these services since June 2017 for the Debtor and is a person with expertise in selling such properties, as does KW generally.

**Professional Services to be Rendered**. The professional services KW shall render consist of brokerage and marketing services incidental for the sale or lease of the Real Estate, and production of related documents.

**Proposed Arrangement for Compensation and Mr. Seamen and KW's Connections with Other Entities**. The Debtor proposes to pay KW for broker services on a commission of

5.0% of the sale price for the Real Estate as set forth in the attached listing agreement. KW is a disinterested person as that term is defined in the Bankruptcy Code as shown by the verified statement of Thomas Seaman, and only has the connections to other parties in interest set forth in that statement.

THEREFORE, the Debtor respectfully requests that this Court enter an order authorizing the retention of Thomas Seaman and Keller Williams Pittsburgh N. as real estate agent to Debtor to perform the services necessary for the effective administration of the estate.

Respectfully submitted,
/s/ Frederic P. Schwieg, Esq.
Frederic P. Schwieg, Esq. (0030418)
Attorney at Law
2705 Gibson Dr
Rocky River, OH 44116
(440) 499-4506
(440) 398-0490
fschwieg@schwieglaw.com

## NOTICE

Pursuant to Local Bankruptcy Rule 9013-1, any objection to this application must be filed within 14 days from the date of service as set forth on the certificate of service. If no response or objection is timely filed, the Court is authorized to grant the relief requested without further notice.

## CERTIFICATE OF SERVICE

A copy of this Motion to Employ was served on the following on the date filed by Notice of Electronic Filing.

Gregory P. Amend on behalf of Creditor First National Bank of Pennsylvania
gamend@bdblaw.com, grichards@bdblaw.com

Alison L. Archer on behalf of Interested Party Lakeland Community College
alison.archer@ohioattorneygeneral.gov, Trish.Lazich@ohioattorneygeneral.gov;angelique.dennis-noland@ohioattorneygeneral.gov

Adam S. Baker on behalf of Creditor Michael E. Osborne, Sr.
abakerlaw@sbcglobal.net, adam@bakerlaw.us;abakerlaw@gmail.com

Austin B. Barnes, III on behalf of Creditor Tax Ease Ohio, LLC
abarnes@sandhu-law.com, bk1notice@sandhu-law.com

Robert D. Barr on behalf of Creditor Chicago Title Insurance Company
rbarr@koehler.law, rbarr@koehler.law

David T. Brady on behalf of Creditor Tax Ease Ohio, LLC

DBrady@Sandhu-Law.com, bk1notice@sandhu-law.com

Gregory M. Dennin on behalf of Debtor Richard M. Osborne
greg@gmdlplaw.com, djensch1@roadrunner.com

Stephen R. Franks on behalf of Creditor Bank of America, N.A.
amps@manleydeas.com

Christopher J. Klym on behalf of Creditor Ohio Department of Taxation
bk@KWkwlaw.com

Matthew H. Matheney on behalf of Creditor First National Bank of Pennsylvania
mmatheney@bdblaw.com, bhajduk@bdblaw.com

Timothy P. Palmer on behalf of Creditor The Huntington National Bank
timothy.palmer@bipc.com, donna.curcio@bipc.com

Kirk W. Roessler on behalf of Creditor Estate of Jerome T. Osborne
kroessler@walterhav.com, kballa@walterhav.com;slasalvia@walterhav.com

John J. Rutter on behalf of Creditor Mentor Lumber & Supply Co.
jrutter@ralaw.com

Frederic P. Schwieg on behalf of Debtor Richard M. Osborne
fschwieg@schwieglaw.com

Michael J. Sikora, III on behalf of Creditor Chicago Title Insurance Company
msikora@sikoralaw.com, aarasmith@sikoralaw.com;mtroha@sikoralaw.com

Nathaniel R. Sinn on behalf of Creditor First National Bank of Pennsylvania
nsinn@bdblaw.com, kslatinsky@bdblaw.com

Rachel L. Steinlage on behalf of Interested Party Zachary B Burkons
rsteinlage@meyersroman.com, jray@meyersroman.com;mnowak@meyersroman.com

Andrew M. Tomko on behalf of Creditor Tax Ease Ohio, LLC
atomko@sandhu-law.com, bk1notice@sandhu-law.com

Jeffrey C. Toole on behalf of Interested Party Zachary B Burkons
toole@buckleyking.com, young@buckleyking.com;heberlein@buckleyking.com

Michael S. Tucker on behalf of Creditor Citizens Bank, N.A.
mtucker@ulmer.com

Maria D. Giannirakis ust06 on behalf of U.S. Trustee United States Trustee
maria.d.giannirakis@usdoj.gov

Scott R. Belhorn ust35 on behalf of U.S. Trustee United States Trustee
Scott.R.Belhorn@usdoj.gov

                                           /s/ Frederic P. Schwieg, Esq.
                                           Frederic P. Schwieg, Esq.

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE RICHARD M. OSBORNE SR<br>*Debtor* | CASE NO. 17-17361<br>JUDGE ARTHUR I HARRIS<br>CHAPTER 11 |

**VERIFIED STATEMENT OF THOMAS SEAMAN PURSUANT TO FED RULE BANKR. P. 2014 IN SUPPORT OF MOTION OF RICHARD M. OSBORNE TO EMPLOY AS REAL ESTATE AGENT**

Thomas Seaman, being first duly sworn, deposes and says as follows:

1. He avers to the following statements from his personal knowledge.

2. He is licensed sales person of Keller Williams Pittsburgh N. ("KW") and makes this verified statement pursuant to the provisions of the Bankruptcy Code regarding the employment of professional persons by Richard M. Osborne ("Debtor") and in light of the restrictions and requirements imposed therein by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of this Court.

3. This verified statement is to affirm to this Court that neither affiant, nor any person with whom he is associated in KW is a relative by blood or marriage of any Bankruptcy Judge of the Northern District of Ohio, the United States Trustee for the Districts of Ohio and Michigan, Region IX, or any employee of said U.S. Trustee, and that he is not now nor has he ever been so connected with any such person as to render his appointment or the Court's approval of his appointment as Auctioneer to the Trustee in the above-captioned matter improper.

4. He and KW are "disinterested persons" as:

   a) He is not and has not served as an employee of the debtor within two years before the petition filing.

   b) He and KW are not and has not been a general or limited partner of a partnership in which the debtor is also a general or limited partner. He and KW is not presently a creditor of the estate.

   c) He and KW are not an insider of the debtor.

which the debtor is also a general or limited partner. He and KW is not presently a creditor of the estate.

c) He and KW are not an insider of the debtor.

d) He and KW have not been paid fees prepetition or hold a security interest guarantee or other assurance of compensation for services performed and to be performed in the case.

e) There is no agreement of any nature as to the sharing of any compensation to be paid to them other than employment contracts with KW. In the course of closing a sale of the Real Estate, there may be a commission split with brokers outside of KW, but this is standard industry practice.

f) He and KW do not have any does not have an interest materially adverse to the interest of the estate or of any class of creditors by reason of any direct or indirect relationship to, connection with the debtor, or for any other reason. He and KW have represented the Estate of Jerome Osborne in sales of real property in the past year, and they may undertake a representation of real property owned by Hamilton-Mercantile LLC a company wholly owned by the Debtor. He and KW do not have any other interest, direct or indirect, which may be affected by the proposed representation.

g) The rates of compensation set forth in the attached schedule and the Debtor's application to employ KW are true and are the customary and usual rates charged by KW for such services.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NOT

_____
Thomas Seanlan

SWORN TO BEFORE ME and subscribed in my presence this 27 day of June 2018.

JENNIFER NOVAK
NOTARY PUBLIC - OHIO
MY COMMISSION EXPIRES
MAY 18, 2019

_____
NOTARY PUBLIC

LISTING CONTRACT (SELLER AGENCY CONTRACT)  XLS
EXCLUSIVE RIGHT TO SELL REAL ESTATE

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

1. Broker (Company) Keller Williams Pittsburgh N.     Licensee(s) (Name) Thomas Seaman
2.
3. Company Address 2550 Village Common Dr.           Direct Phone(s) 814-737-1242
4.                  Erie, PA., 16506                 Cell Phone(s) 216-469-7081
5. Company Phone 814-833-8500                        Fax 216-453-2052
6. Company Fax                                       Email tseaman@kw.com

7. SELLER Rigrtona Trust
8.
9. SELLER'S MAILING ADDRESS 7265 Markell Rd., Waite Hill, OH., 44094
10.
11. PHONE 216-215-1313                               FAX
12. E-MAIL

13. Seller understands that this Listing Contract is between Broker and Seller.
14. Does Seller have a listing contract for this Property with another broker? ☐ Yes  ☒ No
15. If yes, explain:

16. **1. PROPERTY**                                  **LISTED PRICE $** 6,500,000.
17. Address 225 Swede Road                           ZIP 16351
18. Municipality (city, borough, township) Tidioute
19. County Warren County                             School District Tidioute Community Charter School
20. Zoning Agricultural OB Only
21. Present Use Residential
22. Identification (For example, Tax ID #; Parcel #; Lot, Block; Deed Book, Page, Recording Date)
23. TD-001-862200-000 plus parcels listed on page 6
24. **2. STARTING & ENDING DATES OF LISTING CONTRACT (ALSO CALLED "TERM")**
25. (A) No Association of REALTORS® has set or recommended the term of this contract. Broker/Licensee and Seller have discussed and
26. agreed upon the term of this Contract.
27. (B) **Starting Date:** This Contract starts when signed by Broker and Seller, unless otherwise stated here: 07/01/2018
28. (C) **Ending Date:** This Contract ends at 11:59 PM on 06/30/2019 _____. By law, the term of a listing contract may not ex-
29. ceed one year. If the Ending Date written in this Contract creates a term that is longer than one year, the Ending Date is automati-
30. cally 364 days from the Starting Date of this Contract.
31. **3. DUAL AGENCY**
32. Seller agrees that Broker and Broker's Licensees may also represent the buyer(s) of the Property. A Broker is a Dual Agent when a Bro-
33. ker represents both a buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents a buyer and Seller
34. in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for a buyer and
35. Seller. If the same Licensee is designated for a buyer and Seller, the Licensee is a Dual Agent. Seller understands that Broker is a Dual
36. Agent when a buyer who is represented by Broker is viewing properties listed by Broker.
37. **4. DESIGNATED AGENCY**
38. Designated Agency is applicable, unless checked below. Broker designates the Licensee(s) above to exclusively represent the interests
39. of Seller. If Licensee is also the buyer's agent, then Licensee is a DUAL AGENT.
40. ☐ **Designated Agency is not applicable.**
41. **5. BROKER'S FEE**
42. (A) No Association of REALTORS® has set or recommended the Broker's Fee. Broker and Seller have negotiated the fee that Seller
43. will pay Broker.
44. (B) Broker's Fee is 5.0 ___ % of the sale price OR $_____, whichever is greater, AND $_____, paid
45. to Broker by Seller as follows:
46. 1. $ -0- _____ of Broker's Fee is earned and due **(non-refundable)** at signing of this Listing Contract, payable
47. to Broker.

Broker/Licensee Initials: _____     XLS Page 1 of 6     Seller Initials: Ro.

2. Seller will pay the balance of **Broker's Fee if:**
   a. **Property, or any ownership interest in it, is sold or exchanged during the term of this Contract by Broker, Broker's Licensee(s), Seller, or by any other person or broker, at the listed price or any price acceptable to Seller, OR**
   b. A ready, willing, and able buyer is found, during the term of this contract, by Broker or by anyone, including Seller. A willing buyer is one who will pay the listed price or more for the Property, or one who has submitted an offer accepted by Seller, OR
   c. Negotiations that are pending at the Ending Date of this Contract result in a sale, OR
   d. A Seller signs an agreement of sale then refuses to sell the Property, or if a Seller is unable to Sell the Property because of failing to do all the things required of the Seller in the agreement of sale (Seller default), OR
   e. The Property or any part of it is taken by any government for public use (Eminent Domain), in which case Seller will pay from any money paid by the government, OR
   f. A sale occurs after the Ending Date of this Contract IF:
      (1) The sale occurs within 120 days of the Ending Date, AND
      (2) The buyer was shown or negotiated to buy the Property during the term of this contract, AND
      (3) The Property is not listed under an "exclusive right to sell contract" with another broker at the time of the sale.
   (C) If a sale occurs, balance of Broker's Fee will be paid upon delivery of the deed or other evidence of transfer of title or interest. If the Property is transferred by an installment contract, balance of Broker's Fee will be paid upon the execution of the installment contract.

6. **BROKER'S FEE IF SETTLEMENT DOES NOT OCCUR**
   If an agreement of sale is signed and settlement does not occur, and deposit monies are released to Seller, Seller will pay Broker none of/from deposit monies.

7. **COOPERATION WITH OTHER BROKERS**
   Licensee(s) has explained Broker's company policies about cooperating with other brokers. Broker and Seller agree that Broker will pay **from Broker's Fee** a fee to another broker who procures the buyer, is a member of a Multiple Listing Service (MLS), and who:
   (A) ☐ **Represents Seller (SUBAGENT).** Broker will pay _____ of/from the sale price.
   (B) ☑ **Represents the buyer (BUYER'S AGENT).** Broker will pay 2.0% _____ of/from the sale price.
   A buyer's Agent, even if compensated by Broker for Seller, will represent the interests of the buyer.
   (C) ☐ **Does not represent either Seller or a buyer (TRANSACTION LICENSEE).**
   Broker will pay _____ of/from the sale price.

8. **DUTIES OF BROKER AND SELLER**
   (A) Broker is acting as a Seller Agent, as described in the Consumer Notice, to market the Property and to negotiate with potential buyers. Broker will use reasonable efforts to find a buyer for the Property.
   (B) Seller will cooperate with Broker and assist in the sale of the Property as asked by Broker.
   (C) All showings, negotiations and discussions about the sale of the Property, written or oral, will be communicated by Broker on Seller's behalf. All written or oral inquiries that Seller receives or learns about regarding the Property, regardless of the source, will be referred to Broker.
   (D) If the Property, or any part of it, is rented, Seller will give any leases to Broker before signing this Contract. If any leases are oral, Seller will provide a written summary of the terms, including amount of rent, ending date, and Tenant's responsibilities.
   (E) Seller will not enter into, renew, or modify any leases, or enter into any option to sell, during the term of this Contract without Broker's written consent.

9. **BROKER'S SERVICE TO BUYER**
   Broker may provide services to a buyer for which Broker may accept a fee. Such services may include, but are not limited to: document preparation; ordering certifications required for closing; financial services; title transfer and preparation services; ordering insurance, construction, repair, or inspection services.

10. **BROKER NOT RESPONSIBLE FOR DAMAGES**
    Seller agrees that Broker and Broker's Licensee(s) are not responsible for any damage to the Property or any loss or theft of personal goods from the Property unless such damage, loss or theft is solely and directly caused by Broker or Broker's Licensee(s).

11. **DEPOSIT MONEY**
    (A) Broker, if named in an agreement of sale, will keep all deposit monies paid by or for the buyer in an escrow account until the sale is completed, the agreement of sale is terminated, or the terms of a prior written agreement between the buyer and Seller have been met. This escrow account will be held as required by real estate licensing laws and regulations. Buyer and Seller may name a non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not by the Real Estate Licensing and Registration Act. Seller agrees that the person keeping the deposit monies may wait to deposit any uncashed check that is received as deposit money until Seller has accepted an offer.
    (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
       1. If an agreement of sale is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

Broker/Licensee Initials: _____  XLS Page 2 of 6  Seller Initials: R.G.

2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.
3. According to the terms of a final order of court.
4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved.

(C) Seller agrees that if Seller names Broker or Broker's licensee(s) in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by Seller.

## 12. OTHER PROPERTIES
Seller agrees that Broker may list other properties for sale and that Broker may show and sell other properties to prospective buyers.

## 13. ADDITIONAL OFFERS
Unless prohibited by Seller, if Broker is asked by a buyer or another licensee(s) about the existence of other offers on the Property, Broker will reveal the existence of other offers and whether they were obtained by the Licensee(s) identified in this Contract, by another Licensee(s) working with Broker, or by a by a licensee(s) working for a different Broker. ONCE SELLER ENTERS INTO AN AGREEMENT OF SALE, BROKER IS NOT REQUIRED TO PRESENT OTHER OFFERS.

## 14. SELLER WILL REVEAL DEFECTS & ENVIRONMENTAL HAZARDS
(A) Seller (including Sellers exempt from the Real Estate Seller Disclosure Law) will disclose all known material defects and/or environmental hazards on a separate disclosure statement. A material defect is a problem or condition that:
1. is a possible danger to those living on the Property, or
2. has a significant, adverse effect on the value of the Property.

The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.

B. Seller will update the Seller's Property Disclosure Statement as necessary throughout the term of this Listing Contract.
C. If Seller fails to disclose known material defects and/or environmental hazards:
1. Seller will not hold Broker or Licensee(s) responsible in any way;
2. Seller will protect Broker and Licensee(s) from any claims, lawsuits, and actions that result;
3. Seller will pay all of Broker's and Licensee's costs that result. This includes attorneys' fees and court-ordered payments or settlements (money Broker or Licensee pays to end a lawsuit or claim).

## 15. IF PROPERTY WAS BUILT BEFORE 1978
The Residential Lead-Based Paint Hazard Reduction Act says that any seller of property built before 1978 must give the buyer an EPA pamphlet titled *Protect Your Family From Lead in Your Home*. The seller also must tell the buyer and the broker what the seller knows about lead-based paint and lead-based paint hazards that are in or on the property being sold. Seller must tell the buyer how the seller knows that lead-based paint and lead-based paint hazards are on the property, where the lead-based paint and lead-based paint hazards are, the condition of the painted surfaces, and any other information seller knows about lead-based paint and lead-based paint hazards on the property. Any seller of a pre-1978 structure must also give the buyer any records and reports that the seller has or can get about lead-based paint or lead-based paint hazards in or around the property being sold, the common areas, or other dwellings in multi-family housing. According to the Act, a seller must give a buyer 10 days (unless seller and the buyer agree to a different period of time) from the time an agreement of sale is signed to have a "risk assessment" or inspection for possible lead-based paint hazards done on the property. Buyers may choose not to have the risk assessment or inspection for lead paint hazards done. If the buyer chooses not to have the assessment or inspection, the buyer must inform the seller in writing of the choice. The Act does not require the seller to inspect for lead paint hazards or to correct lead paint hazards on the property. The Act does not apply to housing built in 1978 or later.

## 16. HOME WARRANTIES
At or before settlement, Seller may purchase a home warranty for the Property from a third-party vendor. Seller understands that a home warranty for the Property does not alter any disclosure requirements of Seller, may not cover or warrant any pre-existing defects of the Property, and will not alter, waive or extend any provisions of the Agreement regarding inspections or certifications that Buyer may elect or waive as part of the Agreement. Seller understands that Broker who recommends a home warranty may have a business relationship with the home warranty company that provides a financial benefit to Broker.

## 17. RECOVERY FUND
Pennsylvania has a Real Estate Recovery Fund (the Fund) to repay any person who has received a final court ruling (civil judgment) against a Pennsylvania real estate licensee because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund repays persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about the Fund, call (717) 783-3658.

## 18. NOTICE TO PERSONS OFFERING TO SELL OR RENT HOUSING IN PENNSYLVANIA
Federal and state laws make it illegal for a seller, a broker, or anyone to use RACE, COLOR, RELIGION or RELIGIOUS CREED, SEX, DISABILITY (physical or mental), FAMILIAL STATUS (children under 18 years of age), AGE (40 or older), NATIONAL ORIGIN, USE OR HANDLING/TRAINING OF SUPPORT OR GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCIATION TO AN INDIVIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan money, or set deposit amounts, or as reasons for any decision relating to the sale of property.

Broker/Licensee Initials: _____   XLS Page 3 of 6   Seller Initials: Q.O.

## 19. TRANSFER OF THIS CONTRACT
(A) Seller agrees that Broker may transfer this Contract to another broker when:
   1. Broker stops doing business, OR
   2. Broker forms a new real estate business, OR
   3. Broker joins his business with another.
(B) Broker will notify Seller immediately in writing if Broker transfers this Contract to another broker. Seller will follow all requirements of this Contract with the new broker.

## 20. NO OTHER CONTRACTS
Seller will not enter into another listing contract for the property(s) identified in Paragraph 1 with another broker that begins before the Ending Date of this Contract.

## 21. CONFLICT OF INTEREST
It is a conflict of interest when Broker or Licensee has a financial or personal interest in the property and/or cannot put Seller's interests before any other. If Broker, or any of Broker's licensees, has a conflict of interest, Broker will notify Seller in a timely manner.

## 22. ENTIRE CONTRACT
This Contract is the entire agreement between Broker and Seller. Any verbal or written agreements that were made before are not a part of this Contract.

## 23. CHANGES TO THIS CONTRACT
All changes to this Contract must be in writing and signed by Broker and Seller.

## 24. MARKETING OF PROPERTY
(A) Where permitted, Broker, at Broker's option, may use: for sale sign, lock box, key in office, open houses and advertising in all media, including print and electronic, photographs and videos, unless otherwise stated here: _____

   1. ☐ Seller does not want the listed Property to be displayed on the Internet.
      ☐ Seller does not want the address of the listed Property to be displayed on the Internet.
   2. Seller understands and acknowledges that, if the listed Property is not displayed on the Internet, consumers who conduct searches for listings on the Internet will not see information about the listed Property in response to their search.
(B) Seller understands and acknowledges that, if an open house is scheduled, the property address may be published on the Internet in connection to the open house.
(C) There are many ways of marketing properties electronically. Some brokers may use a virtual office website (also known as "VOW") or Internet data exchange (also known as "IDX"), which are governed by specific rules and policies. Sellers have the right to control some elements of how their property is displayed on a VOW and/or IDX websites.
   Seller elects to have the following features disabled or discontinued for VOW and IDX websites (check all that apply):
   ☐ Comments or reviews about Seller's listings, or a hyperlink to such comments or reviews, in immediate conjunction with Seller's listing.
   ☐ Automated estimates of the market value of Seller's listing, or a hyperlink to such estimates, in immediate conjunction with the Seller's listing.
(D) Multiple Listing Services (MLS)
   ☐ Broker will not use a Multiple Listing Service (MLS) to advertise the Property.
   ☐ Broker will use a Multiple Listing Service (MLS) to advertise the Property to other real estate brokers and salespersons. Listing broker shall communicate to the MLS all of Seller's elections made above.
(E) Seller agrees that Broker and Licensee, and the MLS are not responsible for mistakes in the MLS or advertising of the Property.
(F) Other _____

## 25. PUBLICATION OF SALE PRICE
Seller is aware that the Multiple Listing Service (MLS), newspapers, Web Sites, and other media may publish the final sale price of the Property.

## 26. COPYRIGHT
In consideration of Broker's efforts to market Seller's Property as stated in this Contract, Seller grants Broker a non-exclusive, worldwide license (the "License") to use any potentially copyrightable materials (the "Materials") which are related to the Property and provided by Seller to Broker or Broker's representative(s). The Materials may include, but are not limited to: photographs, images, video recordings, virtual tours, drawings, written descriptions, remarks, and pricing information related to Seller's Property. This License permits Broker to submit the Materials to one or more multiple listing services, to include the Materials in compilations of property listings, and to otherwise distribute, publicly display, reproduce, publish and produce derivative works from the Materials for any purpose that does not conflict with the express terms of this Contract. The License may not be revoked by Seller and shall survive the ending of this Contract. Seller also grants Broker the right to sublicense to others any of these rights granted to Broker by Seller. Seller represents and warrants to Broker that the License granted to Broker for the Materials does not violate or infringe upon the rights, including any copyrights, of any person or entity. Seller understands that the terms of the License do not grant Seller any legal right to any works that Broker may produce using the Materials.

Broker/Licensee Initials: _PM_       XLS Page 4 of 6       Seller Initials: _R.O._

## 27. FIXTURES AND PERSONAL PROPERTY

(A) INCLUDED in this sale are all existing items permanently installed in the Property, free of liens, and other items including plumbing; heating; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pool and spa equipment (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; television antennas; unpotted shrubbery, plantings and trees; any remaining heating and cooking fuels stored on the Property at the time of settlement; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware, shades and blinds; awnings; built-in air conditioners; built-in appliances; the range/oven, unless otherwise stated; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems. Also included: _____

(B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment systems, propane tanks, satellite dishes and security systems): _____

(C) EXCLUDED fixtures and items: _____

## 28. TAXES & SPECIAL ASSESSMENTS

(A) At settlement, Seller will pay one-half of the total Real Estate Transfer Taxes, unless otherwise stated here: _____

(B) Yearly Property Taxes $ pro rated to closing $31,290.90/yr    Property Assessed Value $ _____

(C) Is the property preferentially assessed (including a tax abatement)?  ☐ Yes  ☐ No
    If applicable, how many years remain? _____

(D) COA/HOA Name _____ COA/HOA Phone _____
    COA/HOA special assessments $ _____ Buyer's required capital contribution $ _____
    Please explain: _____

(E) Municipality Assessments $ _____

(F) COA/HOA Fees $ _____  ☐ Quarterly  ☐ Monthly  ☐ Yearly

## 29. TITLE & POSSESSION

(A) Seller will give possession of Property to a buyer at settlement, or on _____

(B) At settlement, Seller will give full rights of ownership (fee simple) to a buyer except as follows:
    ☑ Oil  ☑ Gas  ☑ Mineral  ☐ Other
    If checked, please explain: seller to retain rights to those checked above

(C) Seller has:
    ☑ First mortgage with Home Savings _____ Amount of balance $ 750,000.
       Address _____
       Phone _____ Acct. # _____
    ☑ Second mortgage with Diane Osborne _____ Amount of balance $ 3,700,000.
       Address _____
       Phone _____ Acct. # _____
    ☐ Home Equity line of credit with _____ Amount of balance $ _____
       Address _____
       Phone _____ Acct. # _____
    ☐ Seller authorizes Broker to receive mortgage payoff and/or equity loan payoff information from lender(s).

(D) Seller has:
    ☐ Judgments $ _____       ☐ Past Due Municipal Assessment $ _____
    ☐ Past Due Property Taxes $ _____  ☐ Past Due COA/HOA Fees $ _____
    ☐ Federal Tax Liens $ _____     ☐ Past Due COA/HOA Assessments $ _____
    ☐ State Tax Liens $ _____
    ☐ Other: _____ $ _____

(E) If Seller, at any time on or since January 1, 1998, has been obligated to pay support under an order on record in any Pennsylvania county, list the county and the Domestic Relations Number or Docket Number: _____

## 30. BUYER FINANCING
Seller will accept the following arrangements for buyer to pay for the Property:
☑ Cash  ☑ Conventional mortgage  ☐ FHA mortgage  ☐ VA mortgage
☐ Seller's Assist to buyer (if any) $ _____, or _____ %

## 31. SPECIAL INSTRUCTIONS
The Office of the Attorney General has not pre-approved any special conditions or additional terms added by any parties. Any special conditions or additional terms in this Contract must comply with the Pennsylvania Plain Language Consumer Contract Act.

Broker/Licensee Initials: _____    XLS Page 5 of 6    Seller Initials: R.O.

## 32. SPECIAL CLAUSES

(A) The following are part of this Listing Contract if checked:
- ☐ Property Description Addendum to Listing Contract (PAR Form XLS-A)
- ☐ Single Agency Addendum (PAR FormSA)
- ☐ Consumer Services Fee Addendum (PAR Form CSF)
- ☐ Vacant Land Addendum to Listing Contract (PAR Form VLA)
- ☐ Short Sale Addendum (PAR Form SSL)
- ☐ _____
- ☐ _____

(B) Additional Terms:
Additional parcels included:
TD-001-947720-000
TD-001-944000-000
TD-001-862200-000
TD-001-8280000-000
TD-001-835100-000
TD-001-842000-000
TD-001-852000-000
TD-001-862100-000
TD-001-862200-001

[RO] Seller has read the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

[RO] Seller has received the Seller's Property Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if required.

[RO] Seller has received the Lead-Based Hazards Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if required.

Seller has read the entire Contract before signing. Seller must sign this Contract.

Seller gives permission for Broker to send information about this transaction to the fax number(s) and/or e-mail address(es) listed.

Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures of all parties, constitutes acceptance by the parties.

This Contract may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties.

NOTICE BEFORE SIGNING: IF SELLER HAS LEGAL QUESTIONS, SELLER IS ADVISED TO CONSULT A PENNSYLVANIA REAL ESTATE ATTORNEY.

SELLER _Anil M. Orlue_ DATE 6/19/18

SELLER _____ DATE _____

SELLER _____ DATE _____

BROKER (Company Name) Keller Williams Pittsburgh N.

ACCEPTED ON BEHALF OF BROKER BY _____ DATE 6/19/18