# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: RICHARD M. OSBORNE | ) | CASE NO. 17-17361 |
| | ) | |
| Debtor | ) | Chapter 11 |
| | ) | |
| HOME SAVINGS BANK, SUCCESSOR BY MERGER TO THE HOME SAVINGS AND LOAN COMPANY OF YOUNGSTOWN, OHIO | ) ) ) ) | HON. ARTHUR I. HARRIS

ADVERSARY PROC. NO. ____ |
| 275 West Federal Street | ) | COMPLAINT |
| Youngstown, OH 44503 | ) | |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | |
| | ) | |
| RICHARD M. OSBORNE | ) | |
| 7265 Markell Road | ) | |
| Waite Hill, OH 44094 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DIANE M. OSBORNE | ) | |
| 8255 Morley Road, Unit 3 | ) | |
| Mentor, OH 44060-8033 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DIANE M. OSBORNE TRUSTEE OF THE DIANE M. OSBORNE TRUST | ) ) ) | |
| 8255 Morley Road, Unit 3 | ) | |
| Mentor, OH 44060-8033 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RIGRTONA HOLDING COMPANY, LLC | ) ) | |
| c/o Richard M. Osborne, Statutory Agent | ) | |
| 7001 Center Street – Rear Door | ) | |
| Mentor, OH 44060 | ) | |

|  |  |
|---|---|
| and | ) |
|  | ) |
| LEIMCO HOLDING COMPANY, LLC | ) |
| c/o Richard M. Osborne, Statutory Agent | ) |
| 7001 Center Street – Rear Door | ) |
| Mentor, OH  44060 | ) |
|  | ) |
| and | ) |
|  | ) |
| BACK LAND, LLC | ) |
| c/o Richard M. Osborne, Statutory Agent | ) |
| 7001 Center Street – Rear Door | ) |
| Mentor, OH  44060 | ) |
|  | ) |
| and | ) |
|  | ) |
| FRONT LAND, LLC | ) |
| c/o Richard M. Osborne, Statutory Agent | ) |
| 7001 Center Street – Rear Door | ) |
| Mentor, OH  44060 | ) |
|  | ) |
| Defendants | ) |
|  | ) |

Now comes Plaintiff, Home Savings Bank, successor by merger to The Home Savings and Loan Company of Youngstown, Ohio ("Plaintiff"), by counsel, and for its Complaint against Defendants Richard M. Osborne ("Defendant Debtor"), Diane M. Osborne ("Defendant Diane Osborne"), Diane M. Osborne, Trustee of the Diane M. Osborne Trust ("Defendant Osborne Trustee"), Rigrtona Holding Company, LLC, Leimco Holding Company, LLC, Back Land, LLC, and Front Land, LLC states as follows:

## PARTIES

1.　　Plaintiff is a financial institution with its principal place of business in Youngstown, Mahoning County, Ohio.

2. Defendant Debtor is an individual Chapter 11 Debtor residing in Waite Hill, Lake County, Ohio.

3. Defendant Diane Osborne is an individual residing in Mentor, Lake County, Ohio.

4. Defendant Osborne Trustee is a trust organized under the law of the state of Ohio.

5. Defendant Rigrtona Holding Company, LLC is an Ohio limited liability company that, to the best of Plaintiff's knowledge, maintains its principal place of business in Lake County, Ohio.

6. Defendant Leimco Holding Company, LLC is an Ohio limited liability company that, to the best of Plaintiff's knowledge, maintains its principal place of business in Lake County, Ohio.

7. Defendant Back Land, LLC is an Ohio limited liability company that, to the best of Plaintiff's knowledge, maintains its principal place of business in Lake County, Ohio.

8. Defendant Front Land, LLC is an Ohio limited liability company that, to the best of Plaintiff's knowledge, maintains its principal place of business in Lake County, Ohio.

## JURISDICTION AND VENUE

9. On December 17, 2017 (the "Petition Date"), Defendant Debtor filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

10. The Defendant Debtor has continued in possession of his property and has continued to operate and manage his businesses as debtor-in-possession pursuant to § 1107(a) and 1108 of the Bankruptcy Code.

11. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 (a), (b) and (e) and General Order 84 of the United States District Court for this District.

12. This is a core proceeding in which the Court may enter a final order pursuant to 28 U.S.C. § 157 (b) (2) (A), (B), (K), (N) and (O).

13. Venue is proper pursuant to 28 U.S.C. § 1409 (a).

## COUNT I

14. Plaintiff incorporates the averments in the preceding paragraphs as if fully restated.

15. Prior to March 31, 2010, Defendant Debtor, either as a debtor or guarantor, and various trusts and companies owned or controlled by Defendant Debtor were indebted to Plaintiff on eight (8) credit facilities in the collective original principal amount of $25,662,500.00.

16. On March 31, 2010, Plaintiff, Defendant Debtor and various trusts and companies owned or controlled by Defendant Debtor (collectively "Borrowers") entered into a Loan Modification and Contribution Agreement (the "Modification Agreement") to resolve defaults under six (6) of the credit facilities in the collective original principal amount of $17,962,500.00. A true and accurate copy of the Modification Agreement is attached hereto as Exhibit A.

17. Pursuant to Section 4.1 of the Modification Agreement, Plaintiff extended a new first mortgage loan (the "New Loan") to Defendant Debtor and Richard M. Osborne as Trustee of the Rigrtona Trust under Trust Agreement dated December 3, 2001 as amended on October 30, 2006 (the "Rigrtona Trust"), as a co-borrowers, in the original principal amount of Seven Hundred Fifty Thousand Dollars ($750,000) (the "New Loan").

18. Pursuant to Section 4.1 of the Modification Agreement, the proceeds of the New Loan were used to pay off a revolving demand loan extended to Defendant Debtor also in the amount of Seven Hundred Fifty Thousand Dollars ($750,000).

19. The New Loan was evidenced by a promissory note (the "PA Note") executed and delivered by Defendant Debtor and the Rigrtona Trust, and secured by an Open-End Mortgage and Security Agreement (the "PA Mortgage") executed and delivered by the Rigrtona Trust granting Plaintiff a first priority mortgage on certain real property located at 225A Swede Road, Triumph Township, Warren County, Pennsylvania, including improvements and fixtures thereto (the "Lodge"). A true and correct copy of the PA Note and the PA Mortgage are attached hereto as Exhibit B and Exhibit C respectively.

20. Pursuant to Page 2 of the PA Mortgage, the Rigrtona Trust granted, bargained, sold, conveyed and mortgaged to Plaintiff, and agreed that Plaintiff shall have a security interest in and lien on the Lodge and among other things, "all proceeds of the conversion, voluntary or involuntary, of the Realty, Improvement and Equipment, including proceeds of insurance and condemnation awards or payments in lieu thereof."

21. Pursuant to Section 4.01 of the PA Mortgage, the Rigrtona Trust was obligated to maintain, among other things, comprehensive fire insurance with extended coverage.

22. Pursuant to Section 4.01 of the PA Mortgage, the amounts, coverages and other terms and conditions of the fire insurance with extended coverage policy had to, at all times, be reasonably satisfactory to Plaintiff and satisfy any coinsurance requirement of Plaintiff.

23. The Rigrtona Trust was obligated to pay as they became due all premiums for said fire insurance with extended coverage and to keep such policy in full force and effect.

24. Pursuant to Section 4.01 of the PA Mortgage, the Rigrtona Trustee's fire insurance with extended coverage policy had to specifically name Plaintiff as an additional insured.

25. Pursuant to Section 4.01 of the PA Mortgage, the Rigrtona Trustee's fire insurance with extended coverage policy had to provide for written notice to Plaintiff at least thirty (30) days prior to any cancellation, nonrenewal or amendment of such insurance.

26. Section 4.02 of the PA Mortgage provides that, in the event of a loss, "[a]ll insurance proceeds shall be payable solely to Mortgagee [Plaintiff], and Mortgagor [the Rigrtona Trustee] hereby appoints Mortgagee as its attorney-in-fact to endorse any drafts thereof, and such proceeds in excess of $50,000 be applied to all or part of the Secured Obligations and in any order (notwithstanding that such Secured Obligations may not be otherwise due and payable) or to the repair and restoration of any of the Mortgaged Property under such terms and conditions as Mortgagee may impose."

27. Section 4.02 of the PA Mortgage further provides that Mortgagee's option for application of such proceeds must be elected specifically in writing and, until so elected, Mortgagee shall not in any circumstances be deemed to have waived its right to make such election.

28. On or about November 26, 2012, Plaintiff and Borrowers entered into a Forbearance Agreement (the "Forbearance Agreement") in order to resolve multiple defaults under the PA Note, the PA Mortgage, and other obligations owed to Plaintiff by the Borrowers. A true and correct copy of the Forbearance Agreement is attached hereto as Exhibit D. At the

time of the Forbearance Agreement the principal amount alone of the obligations subject to the Forbearance Agreement totaled $18,858,077.32, not including interest.

29. Under the Forbearance Agreement, Borrowers agreed to pay Plaintiff the sum of Ten Million Five Hundred Thousand and 00/100 Dollars ($10,500,000.00) the Settlement Amount within a certain time in exchange for Plaintiff's agreement to forbear from taking certain actions and Plaintiff's agreement to, among other things, transfer to Defendant Debtor or his nominee after payment of the Settlement Amount: (A) the PA Note, the PA Mortgage, and a related judgment (collectively the "Rigrtona Loan"); (B) a promissory note and mortgage executed and delivered by Leimco Development Company, Ltd to Plaintiff, which obligations were guaranteed by Defendant Debtor, along with a related judgment (collectively the "Leimco Loan"); (C) a promissory note and mortgage executed and delivered by Midway Industrial Campus Co., Ltd. and Defendant Debtor, along with a related judgment (collectively the "Midway Loan"); and (D) a promissory note and mortgage executed and delivered by Madison/Route 20, LLC and Defendant Debtor, along with a related judgment (collectively the "Madison Loan").

30. Plaintiff's obligation under the Forbearance Agreement to transfer the Rigrtona Loan, the Leimco Loan, the Midway Loan, and the Madison Loan to Defendant Debtor or his nominee are collectively referenced herein as the "Loan Transfer Obligations."

31. Pursuant to Section 20 of the Forbearance Agreement, the PA Note, PA Mortgage, Loan Documents and any related documents were integrated into the Forbearance Agreement.

32. On or about February 25, 2013, Plaintiff and the Borrowers entered into a Modification of Forbearance Agreement ("February 2013 Modification"). A true and accurate copy of the February 2013 Modification is attached hereto as Exhibit E.

33. On or about April 8, 2013, Plaintiff and the Borrowers entered into an Amended and Restated Modification of Forbearance Agreement ("April 2013 Modification"). A true and accurate copy of the April 2013 Modification is attached hereto as Exhibit F.

34. On or about June 26, 2014, Plaintiff and the Borrowers entered into a Third Amended and Restated Modification of Forbearance Agreement ("June 2014 Modification"). A true and accurate copy of the June 2014 Modification is attached hereto as Exhibit G.

35. On or about August 30, 2016, Plaintiff and the Borrowers entered into a Fourth Amended and Restated Modification of Forbearance Agreement ("August 2016 Modification"). A true and accurate copy of the August 2016 Modification is attached hereto as Exhibit H. At the time of the August 2016 Modification, the principal balance of obligations owed to Plaintiff that were subject to the Forbearance Agreement, as modified, totaled $8,380,849.87, not including interest.

36. Immediately following the closing of the August 2016 Modification, in order to trigger Plaintiff's Loan Transfer Obligations under the Forbearance Agreement, as modified, Borrowers had to make certain quarterly principal reduction payments and certain monthly interest payments in amounts sufficient to pay Plaintiff the principal sum of Five Hundred Ninety-Nine Thousand Eight Hundred Two and 02/100 Dollars ($599,802.02) by March 9, 2018.

37. On or about August 21, 2017, a building located at the Lodge suffered a complete fire loss (the "Fire").

38. At the time of the Fire, the Lodge was insured by Nationwide Mutual Fire Insurance Company ("Nationwide") under Policy No. 5437140547492 (the "Policy"). A certified copy of the Declaration and Policy is attached hereto as Exhibit I.

39. Defendant Debtor and Defendant Diane Osborne are the named insureds under the Policy.

40. Plaintiff is the First Mortgagee under the Policy.

41. Under the terms of the Policy, and the Mortgage, the insurance proceeds were payable to Plaintiff as an involuntary payment.

42. Plaintiff and Defendant Debtor previously litigated entitlement to and application of involuntary payments Plaintiff received from third-parties while the Forbearance Agreement was in effect. *See Richard M. Osborne, Trustee, v. Home Savings and Loan Company of Youngstown, Ohio*, Lake County Common Pleas Case No. 15CV000404, Judgment Entry (Feb. 8, 2016), a copy of which is attached hereto as Exhibit J. In that case, Lake County initiated a foreclosure against real property subject to a mortgage in favor of Home Savings. The property was sold at a judicial sale and after payment of delinquent taxes and other costs, a balance remained of $133,555.56. The Defendant Debtor, the Rigrtona Trust, and related entities filed suit against Plaintiff claiming Plaintiff had to apply the $133,555.56 to amounts due under the Forbearance Agreement. Since the $133,555.56 was an involuntary payment and the Forbearance Agreement, as modified, contained no provision requiring Plaintiff to apply the $133,555.56 to amounts due under the Forbearance Agreement, the Lake County Common Pleas Court dismissed the Defendant Debtor's complaint and held that Plaintiff was entitled to the

proceeds which it could apply to other indebtedness of the Defendant Debtor and the related entities, including charged-off balances.

43. Since the insurance proceeds for the complete fire loss to the Lodge were payable to Plaintiff and constituted an involuntary payment under the Policy and the Mortgage, Plaintiff was entitled to receive the insurance proceeds and apply the same to amounts that had been written-off without reducing the remaining amount due under the Forbearance Agreement

44. However, Defendant Debtor and the Rigrtona Trust failed to disclose to Plaintiff the Fire and the resulting change to the Policy within thirty (30) days as required under the terms of the PA Mortgage.

45. Instead, in order to conceal the Fire and the resulting change to the Policy from Plaintiff, Defendant Debtor entered into negotiations with Plaintiff for an early payoff of the Borrowers' obligations to Plaintiff under the Forbearance Agreement, as amended.

46. Thereafter, on or about September 25, 2017, Plaintiff entered into: (A) a Non-Recourse Commercial Loan Sale, Indemnification and Release Agreement with Defendant Rigrtona Holding Company, LLC, Defendant Debtor's nominee, pursuant to which Plaintiff transferred the Rigrtona Loan to Defendant Rigrtona Holding Company, LLC; (B) a Non-Recourse Commercial Loan Sale, Indemnification and Release Agreement with Defendant Leimco Holding Company, LLC, Defendant Debtor's nominee, pursuant to which Plaintiff transferred the Leimco Loan to Defendant Leimco Holding Company, LLC[1]; (C) a Non-

---

[1] The signature of Richard M. Osborne, Managing Member, Leimco Holding Company, LLC, does not appear on this copy of the Non-Recourse Commercial Loan Sale, Indemnification and Release Agreement with Defendant Leimco Holding Company, LLC, Defendant Debtor's nominee, pursuant to which Plaintiff transferred the Leimco Loan to Defendant Leimco Holding Company, LLC. Counsel is advised that the fully executed original of this document was delivered to Richard M. Osborne at Closing.

Recourse Commercial Loan Sale, Indemnification and Release Agreement with Defendant Back Land, LLC, Defendant Debtor's nominee, pursuant to which Plaintiff transferred the Midway Loan to Defendant Back Land, LLC; and (D) a Non-Recourse Commercial Loan Sale, Indemnification and Release Agreement with Defendant Front Land, LLC, Defendant Debtor's nominee, pursuant to which Plaintiff transferred the Madison Loan to Defendant Front Land, LLC (collectively the "Loan Sale Agreements"), along with certain documents referenced in and related to each of said agreements. Copies of said agreements are attached hereto as Exhibit K, Exhibit L, Exhibit M and Exhibit N, respectively.

47. Being owned and/or controlled by Defendant Debtor, Defendant Rigrtona Holding Company, LLC, Defendant Leimco Holding Company, LLC, Defendant Back Land, LLC, and Defendant Front Land, LLC were aware that Defendant Debtor failed to disclose the Fire and the resulting change to the Policy to Plaintiff.

48. If Defendant Debtor and the Rigrtona Trust would have disclosed to Plaintiff the Fire and the resulting change to the Policy within thirty (30) days as required under the terms of the PA Mortgage, Plaintiff would have: (A) deemed itself insecure; (B) declared Defendant Debtor, the Rigrtona Trust, and the other Borrowers in default of the Forbearance Agreement, as amended; (C) refused to accept the payoff due under the Forbearance Agreement, as amended, on September 25, 2017; (D) refused enter into the Loan Sale Agreements and related agreements; and (E) refused to transfer the Rigrtona Loan, the Leimco Loan, the Midway Loan, and the Madison Loan.

49. Plaintiff reasonably relied upon the intentional omissions of material fact by Defendant Debtor and the Rigrtona Trust concerning the Fire and the resulting change to the Policy.

50. As a direct and proximate result of the omissions of material fact by Defendant Debtor and the Rigrtona Trust concerning the Fire and the resulting change to the Policy, Plaintiff was induced to enter into the Loan Sale Agreements and the related agreements.

51. Plaintiff stands ready, willing, and able to refund to Defendant Debtor and the Borrowers the final payment made to Plaintiff on or about September 25, 2017.

52. On or about August 28, 2018, Defendant Debtor filed a Motion for Authority to Compromise Controversies with Nationwide (Doc. 230) to which Plaintiff filed an Objection (Doc. 252).

53. An Agreed Order Granting Motion of Richard M. Osborne, Sr. Debtor and Debtor in Possession for Authority to Compromise Controversies with Nationwide (Doc. 268) entered October 18, 2018, which provided for, among other things, certain proceeds payable under the Policy to be deposited by Nationwide with the Clerk of Court, and for entitlement to said insurance proceeds to be later determined by the Court.

54. Wherefore, Plaintiff is entitled to rescind the Loan Sale Agreements, the related agreements, and related transfer documents, and recover all or part of the insurance proceeds.

## COUNT II

55. Plaintiff incorporates the averments in the preceding paragraphs as if fully restated.

56. Section III (D) of the Loan Sale Agreement for the Rigrtona Loan provided as follows: "As of Closing, Buyer shall have itself substituted as loss payee on all Loan related insurance in which Seller is currently listed as a loss payee. Any loss after Closing to Borrower, a participant in a Loan, or Buyer, or to the value or collectability of any Loan due to Seller's or any predecessor's cancellation of any insurance is the sole responsibility of Buyer."

57. Upon information and belief, Defendant Rigrtona Holding Company, LLC, the above-referenced Buyer, did not substitute itself as loss payee under the Policy.

58. Upon information and belief, Plaintiff continues to be identified as the First Mortgagee under the Policy.

59. Upon information and belief, Defendant Debtor, Defendant Diane Osborne, Defendant Osborne Trust, and/or Defendant Rigrtona Holding Company, LLC may claim entitlement to all or part of the proceeds under the Policy attributable to the loss to the building on the Lodge as a result of the Fire.

60. Plaintiff claims that it is entitled to receive all or part of said insurance proceeds, because it still is listed as the First Mortgagee under the Policy, and it was fraudulently induced to enter into the Loan Sale Agreements and the related agreements by the omissions of material fact made by Defendant Debtor and the Rigrtona Trust.

61. A justiciable controversy exists as to whom the insurance proceeds under the Policy should be paid.

62. Wherefore, Plaintiff is entitled to a declaratory judgment that it is entitled to all or part of the insurance proceeds payable under the Policy.

WHEREFORE, Plaintiff requests that the Court: (1) enter judgment in favor of Plaintiff on Count I of the Complaint: (A) rescinding and cancelling the Loan Sale Agreements and related agreements; (B) rescinding and canceling all assignments made and recorded and/or filed pursuant to the Loan Sale Agreements; (C) rescinding and cancelling all releases made pursuant to the Loan Sale Agreements; (D) awarding all or part of the insurance proceeds held in the registry of the Clerk to Plaintiff; (2) to enter judgment in favor of Plaintiff on Count II of the Complaint declaring that Plaintiff is entitled to receive all or part of the insurance proceeds; and (3) awarding Plaintiff the costs of this action, reasonable attorneys' fees, and such other relief as the Court deems necessary, proper and/or equitable.

Respectfully submitted,

HENDERSON, COVINGTON, MESSENGER,
  NEWMAN & THOMAS CO., L.P.A.


/s/ Richard J. Thomas
RICHARD J. THOMAS (0038784)
JERRY R. KRZYS (0078013)
MELODY DUGIC GAZDA (0047122)
6 Federal Plaza Central, Ste. 1300
Youngstown, Ohio 44503
Telephone: (330) 744-1148
Fax: (330) 744-3807
rthomas@hendersoncovington.com
jkrzys@hendersoncovington.com
mgazda@hendersoncovington.com
*Attorneys for Plaintiff, Home Savings Bank*