The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on June 10, 2019, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: June 10, 2019**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE RICHARD M. OSBORNE<br>DEBTOR | CASE NO. 17-17361<br>CHAPTER 11<br>JUDGE ARTHUR I. HARRIS |

**ORDER GRANTING, IN PART, MOTION OF RICHARD M. OSBORNE TO SELL A PARCEL OF REAL PROPERTY LOCATED AT PLAZA BOULEVARD, MENTOR OH FREE OF ANY INTEREST OF ANY ENTITY OTHER THAN THE ESTATE**

The matter before the Court is the motion of Richard M. Osborne, Debtor in Possession ("Debtor") for an order pursuant to 11 U.S.C. §§ 102(1)(B)(i), 363(b) and (f), authorizing the sale of the property of the estate described below free of any interest of any entity other than the estate ("Motion") [Doc. 429] and the Objection of Citizens Bank, N.A. to Debtor's Motion to Sell Parcel of Vacant Real Property Located at Plaza Boulevard, Mentor, Ohio Free of Any Interest of Any Entity Other Than the Estate [Doc. 437] ("Objection"). A hearing on the Motion and the Objection having been held on June 4, 2019 at 11 AM, the court having heard the arguments of the parties and having granted the Motion in part and sustained the Objection in part; the Court Finds and Orders as follows:

THE COURT FINDS THAT:

1. The Motion and Notice of the Motion was certified as being duly served according to the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.

2. On December 17, 2017 (the "Petition Date"), the Debtor filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3. The Debtor has continued in possession of his property and has continued to operate and manage his businesses as debtor-in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

4. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). The statutory predicate for the relief sought herein is Section 363(b) and (f) of the Bankruptcy Code.

5. The Debtor seeks to sell a vacant lot located on Plaza Boulevard, Mentor, Ohio PPN 16B031B000310 ("Plaza Boulevard"). The Debtor proposes to sell the estate's interest in Plaza Boulevard for $40,000 ("Gross Proceeds") less payment of all outstanding real estate taxes and assessments due Lake County Ohio (the "Real Estate Taxes") and costs of sale such as customary prorations, broker commissions and fees through the closing date. More specifically, in addition to real estate taxes and assessments, Debtor will be responsible for the following closing costs in connection with the sale: (1) the cost of the transfer tax; (2) the cost of the title report and title search; (3) one-half (l/2) of the escrow fees; (4) one-half (l/2) of the cost of filing the deed for record; (5) a brokers commission in the amount of 8% of the Purchase Price; and (6) all other charges properly borne by Seller consistent with the terms of the Agreement (the "Closing Costs" and the remaining sum the "Net Proceeds") on the terms and conditions set forth

in the Purchase Agreement by and between Richard M. Osborne and Signature Health, Inc. ("Buyer") dated February 28, 2019 attached hereto as Exhibit A.

6. Buyer has no connection to the Debtor and seeks to purchase Plaza Boulevard in good faith. On February 28, 2019 Buyer purchased a nearby property from 7621 Mentor Avenue LLC for $320,000, and wants Plaza Boulevard for signage. 7621 Mentor Avenue LLC is wholly owned by the Debtor.

7. Debtor's son Nathan Osborne will receive a 4% broker commission from the sale proceeds.

8. The Lake County Auditor's fair market appraisal for Plaza Boulevard is $42,070.00. The proposed Gross Sales Price is therefore fair and reasonable for Plaza Boulevard.

9. On or about April 3, 2008, the Trust granted a mortgage to Citizens Bank, N.A. fka RBS Citizens, N.A. dba Charter One ("Citizens") on Plaza Boulevard (the "Mortgage"). The Mortgage granted a first priority lien on Plaza Boulevard. Citizens alleges that it is owed $8,076,373.53 in its filed proof of claim Claim No. 28. The only interest superior to the Mortgage in Plaza Boulevard are the liens for Real Estate Taxes. The Debtor disputes that Citizens is owed the amount it claims, and alleges that Citizens has substantial claims against other assets that are not a part of this estate to satisfy its claim.

10. There are numerous holders of an interest in Plaza Boulevard as set forth on Exhibit B to the Motion, but all such holders of any interest who did not object to the sale are determined to have consented to the sale free of their interest.

11. Many of the interests in Plaza Boulevard are in bona fide dispute.

12. As the remaining interests are junior in priority to the Real Estate Taxes and the Mortgage, the holder of any interest in Plaza Boulevard other than Citizens may be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest.

13. In order to provide adequate protection of any interest in Plaza Boulevard, the Real Estate Taxes will be paid to Tax Ease and/or the Lake County Treasurer. The Net Proceeds will be paid to Citizens and all other interests in Plaza Boulevard will be determined by a later order of this Court, in accordance with the respective rights and priorities of the holders any interest in Plaza Boulevard, as such right appears and is entitled to be enforced against Plaza Boulevard, the Estate or the Debtor under the Bankruptcy Code or applicable non-bankruptcy law.

14. Therefore Plaza Boulevard may be sold free of any interest of any other entity.

THEREFORE IT IS ORDERED THAT:

1. The Debtor is hereby authorized to sell Plaza Boulevard, free and clear of any interest of any entity other than the estate;

2. The Debtor and the Closing Agent are each hereby authorized to disburse from the Gross Sale Proceeds the amount necessary to pay the Real Estate Taxes, the Closing Costs through the closing date and to pay the Net Proceeds to Citizens.

3. All other interests in Plaza Boulevard are hereby transferred to the Net Proceeds subject and pursuant to later order of this Court, in accordance with the respective rights and priorities of the holders any interest in Plaza Boulevard, as such right appears and is entitled to be enforced against Plaza Boulevard, the Estate or the Debtor under the Bankruptcy Code or applicable non-bankruptcy law.

###

Prepared By:
/s/ Frederic P. Schwieg, Esq.
Frederic P. Schwieg, Esq. (0030418)
Attorney at Law
2705 Gibson Dr
Rocky River, OH 44116
(440) 499-4506

Fax: (440) 398-0490
fschwieg@schwieglaw.com
Attorney for Richard M. Osborne

## SERVICE

The following is a list of the parties who are on the list to receive e-mail notice/service for this case:

Gregory P. Amend on behalf of Creditor First National Bank of Pennsylvania
gamend@bdblaw.com, grichards@bdblaw.com

Alison L. Archer on behalf of Interested Party Lakeland Community College
alison.archer@ohioattorneygeneral.gov, Trish.Lazich@ohioattorneygeneral.gov;angelique.dennis-noland@ohioattorneygeneral.gov

Adam S. Baker on behalf of Creditor Michael E. Osborne, Sr.
abakerlaw@sbcglobal.net, adam@bakerlaw.us;abakerlaw@gmail.com

Austin B. Barnes, III on behalf of Creditor Tax Ease Ohio, LLC
abarnes@sandhu-law.com, bk1notice@sandhu-law.com

Robert D. Barr on behalf of Creditor Chicago Title Insurance Company
rbarr@koehler.law, rbarr@koehler.law

David T. Brady on behalf of Creditor Tax Ease Ohio, LLC
DBrady@Sandhu-Law.com, bk1notice@sandhu-law.com

LeAnn E. Covey on behalf of Creditor Bank of America, N.A.
bknotice@clunkhoose.com

Richard W. DiBella on behalf of Creditor Nationwide Mutual Fire Insurance Company
rdibella@dgmblaw.com

Stephen R. Franks on behalf of Creditor Bank of America, N.A.
amps@manleydeas.com

Stephen John Futterer on behalf of Creditor City of Willoughby
sjfutterer@sbcglobal.net, r43087@notify.bestcase.com

Melody Dugic Gazda on behalf of Respondent Home Savings Bank, Successor by Merger to The Home Savings & Loan Company of Youngstown, Ohio
mgazda@hendersoncovington.com

Dennis J. Kaselak on behalf of Claimant Diane M. Osborne
dkaselak@peteribold.com, Cynthia@peteribold.com

Christopher J. Klym on behalf of Creditor Ohio Department of Taxation
bk@hhkwlaw.com

Matthew H. Matheney on behalf of Creditor First National Bank of Pennsylvania
mmatheney@bdblaw.com, bhajduk@bdblaw.com

Shannon M. McCormick on behalf of Creditor Center Street School Condominiums and coachhouses Unit Owners' Association, Inc.

bankruptcy@kamancus.com

Kelly Neal on behalf of Creditor The Huntington National Bank
kelly.neal@bipc.com, donna.curcio@bipc.com

David M. Neumann on behalf of Interested Party Zachary B Burkons
dneumann@meyersroman.com, jray@meyersroman.com;mnowak@meyersroman.com

Timothy P. Palmer on behalf of Creditor The Huntington National Bank
timothy.palmer@bipc.com, donna.curcio@bipc.com

Kirk W. Roessler on behalf of Creditor Estate of Jerome T. Osborne
kroessler@walterhav.com, kballa@walterhav.com;slasalvia@walterhav.com

John J. Rutter on behalf of Creditor Mentor Lumber & Supply Co.
jrutter@ralaw.com

Frederic P. Schwieg on behalf of Attorney Frederic P. Schwieg
fschwieg@schwieglaw.com

Frederic P. Schwieg on behalf of Debtor Richard M. Osborne
fschwieg@schwieglaw.com

Michael J. Sikora, III on behalf of Creditor Chicago Title Insurance Company
msikora@sikoralaw.com, aarasmith@sikoralaw.com

Nathaniel R. Sinn on behalf of Creditor First National Bank of Pennsylvania
nsinn@bdblaw.com, grichards@bdblaw.com

Rachel L. Steinlage on behalf of Interested Party Zachary B Burkons
rsteinlage@meyersroman.com, jray@meyersroman.com;mnowak@meyersroman.com;rbain@meyersroman.com

Andrew M. Tomko on behalf of Creditor Tax Ease Ohio, LLC
atomko@sandhu-law.com, bk1notice@sandhu-law.com

Jeffrey C. Toole on behalf of Interested Party Zachary B Burkons
toole@buckleyking.com, young@buckleyking.com;heberlein@buckleyking.com;toolejr82560@notify.bestcase.com

Michael S. Tucker on behalf of Creditor Citizens Bank, N.A.
mtucker@ulmer.com

Maria D. Giannirakis ust06 on behalf of U.S. Trustee United States Trustee
maria.d.giannirakis@usdoj.gov

Scott R. Belhorn ust35 on behalf of U.S. Trustee United States Trustee
Scott.R.Belhorn@usdoj.gov


Ordinary US Mail Service:
Treasurer-Lake County
PO BOX 490
Painesville OH 44077-0490

Lake County Prosecutor-Civil

PO BOX 490
Painesville OH 44077-0490

Ohio Department of Job & Family Services
Attn: Program Services/Revenue Recovery
P.O. Box 182404
Columbus, Ohio 43218-2404

Ohio Bureau of Workers' Compensation
Attn: Law Section Bankruptcy Unit
P.O. Box 15567
Columbus, Ohio 43215-0567

Ohio Attorney General
Collections Enforcement Section
attn Bankruptcy Staff
150 E Gay ST Fl 21
Columbus, OH 43215

## PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT (the "Agreement") is made this 28th day of February, 2019 (the "Effective Date"), by and between Richard M. Osborne (hereinafter referred to as "Seller"), and Signature Health, Inc., an Ohio non-profit corporation (hereinafter referred to as "Buyer").

WHEREAS, Seller owns the Property (as hereinafter defined) and Seller desires to sell the Property to Buyer; and

WHEREAS, Buyer desires to purchase the Property;

NOW, THEREFORE, in consideration of the promises and covenants hereinafter set forth, the parties agree as follows:

1. Purchase and Sale. Seller agrees to sell and convey to Buyer, and Buyer agrees to purchase and pay for, subject to Bankruptcy Court Approval (as set forth in Section 24 hereof), all land known as Lake County Permanent Parcel Number 16B031B000310 and more specifically described in Exhibit "A", which is attached hereto and incorporated herein by reference (the "Property"). The Property shall include the land, together with all improvements, if any thereon, and all rights, privileges, and easements appurtenant to the Property.

2. Purchase Price. The total purchase price for the Property shall be Forty Thousand Dollars ($40,000), which price shall be payable by Buyer as follows:

    a. Earnest Money. Five Thousand Dollars ($5,000.00) in cash or by check upon the execution of this Agreement, delivered to Seller, which sum shall be deposited into escrow with the Escrow Agent, hereinafter designated (the "Earnest Money").
    b. Balance of Purchasing Price. The balance of the purchase price, namely Thirty-Five Thousand Dollars ($35,000.00), shall be deposited into escrow on or before the Closing Date of this transaction, as hereinafter defined.

3. Closing Date. The closing date of this transaction shall be within thirty (30) days after the expiration of the Inspection and Contingency Period (the "Closing Date").

4. Representations and Warranties. Seller hereby represents and warrants to the best of its knowledge, which representations and warranties shall be effective as of the Closing Date and shall survive the transfer of title to Buyer, or Buyer's nominee, as follows:

    a. that no person or entity has an option, right of first refusal, first offer, or similar right with respect to the Property, except as may be set forth in the Title Report;

    b. that all improvements made by the local governmental authority that now benefit the Property have been assessed against the Property as of the Effective Date of this Agreement, and there are no pending or proposed assessments against the Property;

    c. that there are no unrecorded easements, leases or other similar unrecorded rights affecting the Property;

    d. that there are no pending or threatened actions, suits or proceedings against the Seller with respect to the Property, including, without limitation, condemnation proceedings or environmental proceedings, except for the Bankruptcy Case;

1

**EXHIBIT A**

- e. that there are no outstanding notices or orders from any governmental authority with respect to the condition of the Property, or with respect to any claim of violation of any laws, ordinances, zoning codes, including, without limitation, all environmental laws, rules and regulations;

- f. that Seller has not received written notice alleging that the Property is in violation of any environmental laws, rules or regulations, whether federal, state or local, or that there is any form of contamination in or on the Property, including, without limitation, petroleum, crude oil, toxic or radioactive materials or that the Property contains any condition that is a public or private nuisance;

- g. that there are no encroachments from adjoining properties affecting all or any part of the Property, except as may be set forth on the Survey, as hereinafter defined;

- h. that there are no underground storage tanks, oil and gas wells, or other underground facilities affecting the Property;

- i. that Seller has delivered originals and/or accurate copies of all documents, summaries, reports and tests which Seller has in its possession, if any, with respect to the Property, including, without limitation, all material contracts, leases (and any amendments or modifications to such leases), existing title policies (either owner's or lender's), appraisals, environmental reports, surveys, engineering reports, traffic studies, wetlands delineations or reports, blueprints, plans and specifications for the Property, including any available "as built" drawings, maintenance records, licenses and permits (collectively the "Property Records");

- j. that Seller shall keep the Property in the same condition as on the Effective Date of this agreement, except for normal wear and tear, and shall not in any material manner disturb the Property or cut or remove any timber, trees, shrubs or other items from the Property; and

- k. that Seller owns, and will own on the Closing Date, the fee simple ownership interest in the Property.

5. Inspection and Contingency Period. Buyer, its agents, consultants, engineers and other representatives shall have the right, at any and all reasonable times commencing on the Effective Date and terminating at 5:00 p.m. ET ninety (90) days after the Effective Date (referred to herein as the "Inspection and Contingency Period"), to enter upon the Property for the purpose of inspecting and testing the Property, including without limitation, environmental matters, surveys, physical building conditions including the environmental conditions that may exist, utilities, zoning and other matters deemed pertinent by Buyer (collectively hereinafter referenced to as the "Inspections"). All Inspections shall be conducted at Buyer's sole cost and expense. All reports, studies and surveys generated by third parties for Buyer in connection with the Property, including, but not limited to, any surveys, engineering surveys and environmental studies, and any other documents or studies commissioned by or on behalf of Buyer shall be herein collectively referred to as the "Third Party Reports." Buyer shall keep the results of its Investigations confidential and shall not disclose the results thereof (including, but not limited to, the Third Party Reports) to any person or entity unless and except to the extent required by law. Buyer shall not be required to keep the results of the Investigations confidential after the transaction contemplated by this Agreement is consummated. At Seller's written request, Buyer shall provide copies of all Third Party Reports

2

to Seller. Buyer shall indemnify, defend and hold Seller harmless from and against any and all damages and claims arising from or in connection with the Inspections and/or Buyer or its agents entering the Property. Buyer shall promptly repair any damage to the Property arising from or in connection with Buyer's or its agents' entry into or Inspections of the Property and shall restore the Property to its original condition in the event the Closing does not occur. The foregoing obligations of Buyer under this paragraph shall survive the Closing or the earlier termination of this Agreement without time limitation. During the Inspection and Contingency Period, Buyer shall use its best efforts to 1) obtain financing for the Property upon terms and conditions and at rates which are satisfactory to the Buyer in the Buyer's sole and absolute discretion; 2) obtain approval from the Buyer's Board of Directors, as required by the Buyer's governing documents; 3) obtain approval by all appropriate governmental authorities necessary for Buyer's intended use (hereinafter referred to as "Approvals"). Buyer shall have the right to extend such Inspection and Contingency Period for a term of thirty (30) days. Buyer shall exercise such extension by providing written notice to the Seller, in accordance with Section 14 hereof, no more than ten (10) days prior to the expiration for the initial Inspection and Contingency Period.

Notwithstanding any contrary provision in this Agreement, Buyer's obligation to consummate the transaction contemplated by this Agreement is contingent upon Buyer's satisfaction, in Buyer's sole discretion, with the results of Buyer's Inspections of the Property and Buyer's ability to obtain all Approvals listed above. If Buyer is not satisfied with the results of its Inspections or if Buyer does not receive one or more of the Approvals, then Buyer shall have the sole right to terminate this Agreement, exercisable by delivering written notice to Seller and Escrow Agent prior to the expiration of the Inspections and Contingencies Period in accordance with Section 14 hereof. If this Agreement is terminated by Buyer pursuant to this Section, then the Escrow Agent shall return the Earnest Money to Buyer, the Escrow Agent shall return to the depositing party all other funds and documents, if any, previously deposited with the Escrow Agent, Buyer shall return the Property Records to Seller, and Buyer shall pay all escrow, title, Survey and other charges incurred to that time, with the exception of any attorneys' fees or other charges not required by the terms of this Agreement which shall be the responsibility of the party that incurs such charges, whereupon this Agreement shall automatically terminate and be of no further force or effect and neither party shall have any further liability hereunder (except for the obligations of Buyer which are specifically stated above to survive the Closing or early termination of this Agreement), and no compensation shall be paid to Broker (as that term is defined in Section 10 hereof). If Buyer does not timely exercise its right to terminate this transaction pursuant to this Section 6 and in accordance with Section 14 hereof prior to or at the end of the Inspection and Contingency Period, then the Approvals and all other contingencies hereunder shall be deemed to have been waived by Buyer and Buyer shall be obligated to complete the purchase of the Property in accordance with the terms of this Agreement.

6. Survey. Buyer shall, at Buyer's sole cost and expense, obtain an ALTA/ACSM survey of the Property (the "Survey"), which Survey shall be completed no later than thirty (30) days after the Effective Date hereof.

7. Title Provisions.

    a. Title. Seller shall convey marketable title to the Property to Buyer, or Buyer's nominee, by good and sufficient general warranty deed, with the general warranty covenants, warranting title to be free and clear of all liens, charges and encumbrances, clouds and defects whatsoever, except such restriction, reservations, limitations, easements and conditions of record, if any which are approved by Buyer as hereinafter provided, zoning ordinances, and taxes and assessments, both general and special, which are a lien but not yet due and

3

payable, and dower rights, if any. Said deed shall be deposited into escrow on or before the Closing Date. Prior to the deposit of said deed into escrow, a copy of said deed shall be submitted to Buyer's counsel for approval.

    b. Title Insurance. Seller shall accompany Seller's deed with an ALTA Owner's Policy of Title Insurance in the amount of the purchase price issued by Lake County Title (hereinafter called "Title Company"), in its customary form, with the "so-called" standard exceptions deleted, insuring marketable title to the Property to be good in Buyer, subject only to the exceptions to be contained in the deed. To the extent that the standard exceptions may be removed by the Survey, Buyer shall bear the cost of conducting the Survey in accordance with Section 6 of this Agreement. All other costs associated with the removal of the standard exceptions shall be borne by Seller.

    c. Title Report. A preliminary title report, with a special tax search included, in the form of a commitment to issue the required title policy requested by Buyer ("Title Report") shall be ordered from the Title Company by Buyer immediately upon the execution of this Agreement, a copy of which shall be delivered to Seller. Within ten (10) working days from the receipt of the Survey and the Title Report by Buyer, Buyer shall notify Seller and the Title Company in accordance with Section 14 hereof of any restrictions, reservations, limitations, easements and conditions of record (together herein called "Title Defects") disclosed in said Title Report which are objectionable to Buyer. In the event Buyer so notifies Seller of any such Title Defects, Seller shall have until the Closing Date to cure or remove said Title Defects. Seller shall be obligated to remove all such Title Defects objected to by Buyer that may be removed by the payment of money, and Seller shall take whatever reasonable steps may be necessarily to remove any other Title Defects. If Seller is unable to satisfy Buyer, in Buyer's sole discretion, with respect to non-monetary items which Buyer has objected to, or if Seller fails to remove any such title defect which may be removed by the payment of money, then Buyer shall have the sole right to terminate this Agreement, exercisable by delivering written notice to Seller and Escrow Agent prior to the Closing Date in accordance with Section 14 hereof. If this Agreement is terminated by Buyer pursuant to this Section, then the Escrow Agent shall return the Earnest Money to Buyer, the Escrow Agent shall return to the depositing party all other funds and documents, if any, previously deposited with the Escrow Agent, Buyer shall return the Property Records to Seller, and Buyer and Seller shall share equally and pay all escrow, title, and other charges incurred to that time (excepting the cost of the Survey which shall be paid by Buyer), whereupon this Agreement shall automatically terminate and be of no further force or effect and neither party shall have any further liability hereunder (except for the obligations of Buyer which are specifically stated in Section 5 above to survive the Closing or early termination of this Agreement), and no compensation shall be paid to Broker (as that term is defined in Section 10 hereof). If Buyer does not timely exercise its right to terminate this transaction pursuant to this Section 7 and in accordance with Section 14 hereof prior to the Closing Date, then any and all Title Defects shall be deemed to have been waived by Buyer and Buyer shall be obligated to complete the purchase of the Property, subject to all Title Defects, in accordance with the terms of this Agreement.

8. Possession. Seller shall deliver possession of the Property as of the Closing Date, in the condition as warranted by Seller.

9. Proration. All real estate taxes and assessments, both general and special, shall be prorated by the Escrow Agent as of the date the deed is filed for record and all past due taxes and assessments shall be paid and charged to Seller, using for such purpose the rate and valuation shown on the latest

4

available tax duplicate. If the aforesaid proration shall not fully reimburse Buyer for all real estate tax accrued and unpaid with respect to the Property as of the record date of transfer of title, Seller shall promptly reimburse Buyer that amount accrued in excess of the proration credit upon the official certification of the real estate tax duplicate for the year in which transfer of title occurs.

10. Brokers. Buyer and Seller mutually represent that neither party has been contacted by any broker or other person concerning this transaction claiming to be an agent of either party except Nathan Osborne and Kevin Callahan of Hanna Commercial Real Estate and Bruce Adams of Signature Commercial Real Estate, LLC. Seller shall pay a commission of four (4%) percent to each of the above listed brokers, for a total of eight (8%) percent, upon consummation of the Closing.

11. Escrow Agent. This transaction shall be placed in escrow with the Title Company ("Escrow Agent"). An executed counterpart of this Agreement shall be deposited with the Escrow Agent by Buyer, and this Agreement shall serve as the escrow instructions. The Escrow Agent may attach its standard conditions of acceptance thereto; provided, however, that in the event said standard conditions are inconsistent or in conflict with the terms of this Agreement, then this Agreement shall control. Provided that all money and documents required by this Agreement have been deposited in escrow on or before the Closing Date, the Escrow Agent shall direct that the deed and other instruments be filed for record and the owner's title insurance policy, be issued as provided for herein and/or in Buyer's and/or in Seller's other escrow instructions, and the time it is prepared to wire transfer to Seller the net proceeds of the Purchase Price payable to Seller under this Agreement.

12. Closing. On the Closing Date, the Escrow Agent shall file for record the deed, and any other instruments required to be recorded and shall thereupon deliver to each of the parties the funds and documents to which they shall be respectively entitled, together with its escrow statement (the "Closing"), provided that the Escrow Agent shall then have on hand all fund and documents necessary to complete the within transaction and provided the Title Company has stated that it shall be in a position to, and will issue and deliver upon the filing of the deed for record, the title insurance required hereunder. Unless otherwise provided herein, all documents necessary for the Closing shall be deposited in escrow at least one (1) business day prior to the Closing Date, and all funds shall be deposited in escrow on or prior to the Closing Date.

In Closing this transaction, the Escrow Agent shall charge Seller with the following:

   a. the amount of real estate taxes prorated up to and including the date of transfer of title and the full amount of any assessments;

   b. the cost of any transfer tax;

   c. the cost of the Title Report and title search;

   d. one-half (1/2) of the cost of filing the deed for record;

   e. the cost of paying off and satisfying any mortgage indebtedness for which Seller is liable, together with the cost of any mortgage cancellation, recording fee or other costs incident to the satisfaction of any such indebtedness;

   f. one-half (1/2) of the escrow fee; and

   g. all other charges properly borne by Seller consistent with the terms of this Agreement;

5

and immediately thereafter shall deliver to Seller the balance of the funds in escrow due under the terms hereof, including any prorations due Seller, and any documents due Seller.

On closing, the Escrow Agent shall charge Buyer with the following:

   a. the cost of the title insurance in the amount of the purchase price and any endorsements thereon;

   b. one-half (1/2) of the escrow fees;

   c. one-half (1/2) of the cost of filing the deed for record;

   d. the cost of all Third Party Reports including without limitation to the Survey, to the extent that the Buyer has not separately arranged for payment with those parties conducting the Third Party Reports; and

   e. all other charges properly borne by Buyer consistent with the terms of this Agreement;

and immediately thereafter, the Escrow Agent shall deliver to Buyer any prorations to which Buyer is entitled and any other funds or documents due Buyer and, as soon as available, the recorded deed and the title insurance.

13. Insurance. Risk of loss to any improvements located on the Property shall remain with Seller until the transfer of title to the Property to Buyer. Seller shall keep in force through the Closing Date fire and extended coverage insurance on the Property in at least those amounts currently maintained. Until the Closing Date, Seller shall maintain the Property in the same condition as existed on the Effective Date, except for ordinary wear and tear. In the event that there is a casualty or damage to the improvements upon the Property after the Effective Date and prior to the Closing Date and the cost of such repair exceeds ten percent (10%) of the Purchase Price, then in that event, Buyer shall have the option to:

   a. terminate the transaction and thereupon the Escrow Agent shall return the Earnest Money to Buyer, the Escrow Agent shall return to the depositing party all other funds and documents, if any, previously deposited with the Escrow Agent, Buyer shall return the Property Records to Seller, and Buyer and Seller shall share equally and pay all escrow, title and other charges incurred to that time (excepting the cost of the Survey which shall be paid by Buyer), whereupon this Agreement shall automatically terminate and be of no further force or effect and neither party shall have any further liability hereunder (except for the obligations of Buyer which are specifically stated in Section 5 above to survive the Closing or early termination of this Agreement), and no compensation shall be paid to Broker (as that term is defined in Section 10 hereof); or

   b. elect to complete the Closing of the transaction, and thereupon Seller shall assign to Buyer a share of any insurance proceeds in an amount equal to the reasonable cost for the repair or restoration of such loss or damage.

Seller shall notify Buyer promptly of any such loss, casualty or damage, including a reasonable estimate as to the cost of such repair or replacement, and Buyer shall have ten (10) days from and after the date of the receipt of such notice to make such election as set forth herein, and such election must be in writing delivered to the Seller in accordance with Section 14 hereof; and if Buyer makes

6

no such election, Buyer shall be deemed to have elected to complete the transaction and receive the proceeds of insurance as hereinabove set forth. If the cost of the repair or replacement is less than ten percent (10%) of the Purchase Price, then Buyer shall be required to complete the purchase and Seller agrees to assign to Buyer the insurance proceeds in amount not to exceed the actual cost of the repairs.

14. Notice. Any notice which may be or is required to be given pursuant to the provisions of this Agreement shall be deemed to be sufficiently given if personally delivered, or sent by a nationally recognized overnight courier, or sent by certified or registered mail, postage prepaid, return receipt requested, and addressed as follows:

| | |
|---|---|
| If to Seller, to: | Richard M. Osborne<br>7265 Markell Road<br>Waite Hills, OH 44094 |
| With a copy to: | Jodi Littman Tomaszewski, Esq.<br>Dworken & Bernstein Co., L.P.A.<br>60 South Park Place<br>Painesville, OH 44077 |
| If to Buyer: | Signature Health, Inc.<br>38882 Mentor Ave.<br>Willoughby, OH 44094<br>Attn: CEO |
| If to Escrow Agent | Lake County Title<br>306 High Street<br>Fairport Harbor, OH 44077<br>Attn: Tom Flenner |

15. Amendment. Any amendment to this Agreement shall be binding upon Buyer and Seller as soon as a written amendment has been executed by both parties. Only written amendments to this Agreement shall be effective.

16. Counterparts. This Agreement may be executed in several counterparts, each of which shall be deemed an original, and all such counterparts together shall constitute one and the same instrument.

17. Severability. This Agreement is intended to be performed in accordance with and only to the extent permitted by, all applicable laws, ordinances, rules and regulations. If any provision of this Agreement, or the application thereof to any person or circumstance shall be invalid or unenforceable for any reason and to any extent, then the remainder of the Agreement and the application of such provision to other persons or circumstances shall not be affected thereby but shall rather be enforced to the greatest extent permitted by law.

18. Entire Agreement. This Agreement and all exhibits hereto and the instruments referred to herein contain the entire agreement and understanding between the parties hereto relating to the subject matter hereof.

19. Binding Effect. This Agreement shall be binding upon and inure to the benefit of Seller and Buyer and their respective successors and assigns.

7

20. Assignment.   Buyer may assign this Agreement to another party with the written consent of the Purchaser, which shall not be unreasonably withheld.

21. As-Is/Where-is Purchase. EXCEPT AS OTHERWISE SPECIFICALLY SET FORTH IN SECTION 4 AND SECTION 7 HEREOF, BUYER ACKNOWLEDGES THAT BUYER IS PURCHASING THE PROPERTY ON AN "AS-IS WITH ALL FAULTS" BASIS WITH ANY AND ALL PATENT AND LATENT DEFECTS, EXCEPT AS OTHERWISE SPECIFICALLY SET FORTH IN SECTION 4 AND SECTION 7 HEREOF, BUYER FURTHER ACKNOWLEDGES THAT BUYER IS NOT RELYING ON ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, OF ANY KIND WHATSOEVER FROM SELLER AS TO ANY MATTERS CONCERNING THE PROPERTY, INCLUDING THE PHYSICAL CONDITION OF THE PROPERTY AND ANY DEFECTS THEREOF, THE PRESENCE OF ANY HAZARDOUS SUBSTANCES, WASTES OR CONTAMINANTS IN, ON OR UNDER THE PROPERTY, THE CONDITION OR EXISTENCE OF ANY OF THE ABOVE GROUND OR UNDERGROUND STRUCTURES OR IMPROVEMENTS IN, ON OR UNDER THE PROPERTY, THE CONDITION OF TITLE TO THE PROPERTY, AND THE EASEMENTS OR OTHER AGREEMENTS AFFECTING THE PROPERTY.

22. Governing: Law: This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio.

23. Time of The Essence. All time references set forth in this Agreement shall be and they are hereby made of the essence.

24. Bankruptcy Court Approval.   Upon the execution of this Agreement, Seller shall file an approval motion with the United States Bankruptcy Court, Northern District of Ohio, Eastern Division, in the case entitled Re: Richard M. Osborne, Debtor, Case No. 17-17361 (the "Bankruptcy Case"), seeking entry of an order (the "Bankruptcy Court Approval") which, among other things, (i) approves this Agreement, and (ii) authorizes Seller to sell the Property to Buyer, free and clear of all encumbrances pursuant to Section 363 of the Bankruptcy Code, which Bankruptcy Court Approval shall not be inconsistent with the terms of this Agreement.  Buyer agrees that it will promptly take all actions as are reasonably requested by Seller to assist in obtaining the Bankruptcy Court's entry of the Bankruptcy Court Approval order, including, without limitation, furnishing affidavits, financial information or other documents or information for filing with the Bankruptcy Court and making Buyer's employees and representatives available to testify before the Bankruptcy Court if necessary.  If the Bankruptcy Court does not issue a Bankruptcy Court Approval order then this Agreement shall be null and void.

*[Signature Page to Follow]*

8

IN WITNESS WHEREOF, the parties hereto execute this Purchase Agreement the day and year first above written.

**SELLER:**

7621 MENTOR AVENUE, LLC,
an Ohio limited liability company

By: *Uril M. Orlus Jr.*
Title: *MANGING MEMBER*

**BUYER:**

SIGNATURE HEALTH, INC.,
an Ohio non-profit corporation

By: _____
Title: _____ CEO

10

EXHIBIT "A"
Legal Description

Situated in the City of Mentor, County of Lake and State of Ohio, known as being part of Original Mentor Township Blake Lot, Tract 5, further known as being part of lands conveyed to Richard M. Osborne, Tr. by deeds recorded in Lake County Document No.'s 199957788 (PPN 16B-31B-27) and 970000569 (PPN 16B-31B-09):

Beginning at a 5/8 inch iron pin set in the easterly line of land conveyed to Susa Partnership, L.P. by deed recorded in Lake County Document No. 970012035, said point being the northwesterly corner of land conveyed to Richard M. Osborne, Tr. by deed recorded in Lake County Document No. 199957789 (PPN 16B-31B-28);

| | |
|---|---|
| COURSE I | Thence North 01°46'05" East, along said easterly line, 206.35 feet to a 5/8 inch iron pin set at the southwesterly corner of land conveyed to the City of Mentor by deed recorded in Lake County Document No. 199957785 (PPN 16B-31B-25); |
| COURSE II | Thence South 52°15'02" East, along said City of Mentor's southwesterly line, 95.15 feet to a 5/8 inch iron pin set; |
| COURSE III | Thence along the arc of a curve deflecting to the left, 56.44 feet, said curve having a radius of 30.00 feet and a chord which bears South 52°15'02" East, 48.48 feet to a 5/8 inch iron pin set in said southwesterly line of City of Mentor; |
| COURSE IV | Thence South 52°15'02" East, along said southwesterly line and the southwesterly line also of the City of Mentor by deed recorded in Lake County Document No. 990049208 (PPN 16B-31B-24), 81.50 feet to a 5/8 inch iron pin set; |
| COURSE V | Thence along the arc of a curve deflecting to the right, 23.85 feet, said curve having a radius of 28.00 feet and a chord which bears South 13°20'58" West, 23.13 feet to a 5/8 inch iron pin set at a point of tangency; |
| COURSE VI | Thence South 37°44'58" West, 17.51 feet to a 5/8 inch iron pin set at a point of curvature; |
| COURSE VII | Thence along the arc of a curve deflecting to the right, 60.72 feet, said curve having a radius of 120.00 feet and a chord which bears South 55°39'37" West, 60.08 feet to a 5/8 inch iron pin set at the northeasterly corner of said Richard M. Osborne, Tr. (PPN 16B-31B-28); |

The following 3 courses are along said PPN 16B-31B-28;

| | |
|---|---|
| COURSE VIII | Thence along the arc of a curve deflecting to the right, 23.25 feet, said curve having a radius of 88.00 feet and a chord which bears South 84°10'08" West, 23.19 feet to a 5/8 inch iron pin set at a point of tangency; |
| COURSE IX | Thence North 88°45'44" West, 85.74 feet to a 5/8 inch iron pin set at a point of curvature; |
| COURSE X | Thence along the arc of a curve deflecting to the right, 10.09 feet, said curve having a radius of 40.00 feet and a chord which bears North 81°01'43" West, 10.07 feet to the Place of Beginning and containing 0.5450 acres of land according to a survey done in July, 2000 by Richard A. Thompson, Jr., P.S. No. 7388 of LDC, Inc. be the same, more or less, but subject to all legal highways and easements of record. Bearings used herein are based on a previous survey by LDC, Inc. |

10