**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on August 29, 2019, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: August 29, 2019**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17-17361 |
| | ) | |
| RICHARD M. OSBORNE, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |

### ORDER AUTHORIZING THE TRUSTEE TO EMPLOY
### AG REAL ESTATE GROUP, INC. AND ERIC M. SILVER AS REALTOR AND
### PROPERTY MANAGER, NUNC PRO TUNC TO AUGUST 1, 2019

This matter is before the Court on the Application of the Trustee [Doc. No. 552], as supplemented by the Supplement to the same [Doc. 554] (together, the "<u>Application</u>")[1] to employ Ag Real Estate Group, Inc. and Eric M. Silver (together, "<u>Ag</u>") as realtor and property manager of the Properties.

Upon consideration thereof, the Court finds such Application to be well taken, that Ag is a disinterested person, is qualified to act as realtor and property manager of the Properties, and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Application.

1

that authorizing Ag to serve as realtor and property manager of the Properties would be in the best interest of the Debtor's estate.

IT IS THEREFORE ORDERED that the Trustee's Application is hereby approved and granted as set forth in this Order;

IT IS THEREFORE FURTHER ORDERED, that Ag is hereby authorized to serve as broker and property manager of the Properties in this case effective as of August 1, 2019; however, for the avoidance of doubt, Ag shall only collect rents with respect to any of the Properties that have been abandoned by the estate (and which are the subject of unexpired contracts and/or executory leases);

IT IS FURTHER ORDERED that additional parcels of real property shall be automatically added to the definition of Properties subject to this Order five days after the Trustee files with the Court a Notice of Additional Properties Subject to Ag Agreement; and

IT IS FURTHER ORDERED that the property management services to be provided by Ag shall be governed by the Management Agreement attached as Exhibit 1 hereto.

IT IS SO ORDERED.

# # #

Submitted by,

Patrick R. Akers (0095985)
VORYS, SATER, SEYMOUR AND PEASE LLP
200 Public Square, Suite 1400
Cleveland, Ohio 44114
(216) 479-6100
(216) 479-6060 (facsimile)
dtparobek@vorys.com
eowoyt@vorys.com
cmbrosius@vorys.com
prakers@vorys.com

*Counsel for the Interim Trustee*

Copies sent via electronic mail on the attached service list.

## SERVICE LIST

Patrick R. Akers on behalf of Trustee Kari B. Coniglio
prakers@vorys.com

Gregory P. Amend on behalf of Creditor First National Bank of Pennsylvania
gamend@bdblaw.com, grichards@bdblaw.com

Alison L. Archer on behalf of Interested Party Lakeland Community College
alison.archer@ohioattorneygeneral.gov,
Trish.Lazich@ohioattorneygeneral.gov;angelique.dennis-noland@ohioattorneygeneral.gov

Richard M. Bain on behalf of Interested Party Zachary B Burkons
rbain@meyersroman.com, mnowak@meyersroman.com;jray@meyersroman.com

Adam S. Baker on behalf of Creditor Michael E. Osborne, Sr.
abakerlaw@sbcglobal.net, adam@bakerlaw.us;abakerlaw@gmail.com

Austin B. Barnes, III on behalf of Creditor Tax Ease Ohio, LLC
abarnes@sandhu-law.com, bk1notice@sandhu-law.com

Robert D. Barr on behalf of Creditor Chicago Title Insurance Company
rbarr@koehler.law, rbarr@koehler.law

David T. Brady on behalf of Creditor Tax Ease Ohio, LLC
DBrady@Sandhu-Law.com, bk1notice@sandhu-law.com

Carrie M. Brosius on behalf of Trustee Kari B. Coniglio
cmbrosius@vorys.com, mdwalkuski@vorys.com

Kari B. Coniglio
kbconiglio@vorys.com, mdwalkuski@vorys.com;kbc@trustesolutions.net;jncash2@vorys.com

LeAnn E. Covey on behalf of Creditor Bank of America, N.A.
bknotice@clunkhoose.com

Richard W. DiBella on behalf of Creditor Nationwide Mutual Fire Insurance Company
rdibella@dgmblaw.com

Bryan J. Farkas on behalf of Trustee Kari B. Coniglio
bjfarkas@vorys.com

Stephen R. Franks on behalf of Creditor Bank of America, N.A.
amps@manleydeas.com

Stephen John Futterer on behalf of Creditor City of Willoughby
sjfutterer@sbcglobal.net, r43087@notify.bestcase.com

Melody Dugic Gazda on behalf of Plaintiff Home Savings Bank
mgazda@hendersoncovington.com

Melody Dugic Gazda on behalf of Respondent Home Savings Bank, Successor by Merger to The
Home Savings & Loan Company of Youngstown, Ohio
mgazda@hendersoncovington.com

Michael R. Hamed on behalf of Interested Party Gas Natural Inc.
mhamed@kushnerhamed.com, kgross@kushnerhamed.com

Heather E. Heberlein on behalf of Creditor First National Bank of Pennsylvania
hheberlein@bdblaw.com, vgum@bdblaw.com

Dennis J. Kaselak on behalf of Claimant Diane M. Osborne
dkaselak@peteribold.com, Cynthia@peteribold.com

Dennis J. Kaselak on behalf of Defendant Diane M. Osborne
dkaselak@peteribold.com, Cynthia@peteribold.com

Christopher J. Klym on behalf of Creditor Ohio Department of Taxation
bk@hhkwlaw.com

Jerry R. Krzys on behalf of Plaintiff Home Savings Bank
jkrzys@hendersoncovington.com, jerrykrzys@gmail.com

Matthew H. Matheney on behalf of Creditor First National Bank of Pennsylvania
mmatheney@bdblaw.com, bhajduk@bdblaw.com

Shannon M. McCormick on behalf of Creditor Center Street School Condominiums and
coachhouses Unit Owners' Association, Inc.
bankruptcy@kamancus.com

Kelly Neal on behalf of Creditor The Huntington National Bank
kelly.neal@bipc.com, donna.curcio@bipc.com

David M. Neumann on behalf of Interested Party Zachary B Burkons
dneumann@meyersroman.com, jray@meyersroman.com;mnowak@meyersroman.com

Timothy P. Palmer on behalf of Creditor The Huntington National Bank
timothy.palmer@bipc.com, donna.curcio@bipc.com

Drew T. Parobek on behalf of Trustee Kari B. Coniglio
dtparobek@vorys.com, mdwalkuski@vorys.com

5

Tricia L. Pycraft on behalf of Accountant Rea & Associates, Inc.
tpycraft@ccj.com, bowman@ccj.com

Kirk W. Roessler on behalf of Creditor Estate of Jerome T. Osborne
kroessler@walterhav.com,
kballa@walterhav.com;slasalvia@walterhav.com;deppler@walterhav.com

Kirk W. Roessler on behalf of Creditor Osborne Farms, LLC fka Huron Lime Company, LLC
kroessler@walterhav.com,
kballa@walterhav.com;slasalvia@walterhav.com;deppler@walterhav.com

John J. Rutter on behalf of Creditor Mentor Lumber & Supply Co.
jrutter@ralaw.com

Frederic P. Schwieg on behalf of Attorney Frederic P. Schwieg
fschwieg@schwieglaw.com

Frederic P. Schwieg on behalf of Cross-Claimant Richard M. Osborne
fschwieg@schwieglaw.com

Frederic P. Schwieg on behalf of Debtor Richard M. Osborne
fschwieg@schwieglaw.com

Frederic P. Schwieg on behalf of Defendant Richard M. Osborne
fschwieg@schwieglaw.com

Michael J. Sikora, III on behalf of Creditor Chicago Title Insurance Company
msikora@sikoralaw.com, aarasmith@sikoralaw.com

Nathaniel R. Sinn on behalf of Creditor First National Bank of Pennsylvania
nsinn@bdblaw.com, grichards@bdblaw.com

Rachel L. Steinlage on behalf of Interested Party Zachary B Burkons
rsteinlage@meyersroman.com,
jray@meyersroman.com;mnowak@meyersroman.com;rbain@meyersroman.com

Richard J. Thomas on behalf of Plaintiff Home Savings Bank
rthomas@hendersoncovington.com, mgazda@hendersoncovington.com

Andrew M. Tomko on behalf of Creditor Tax Ease Ohio, LLC
atomko@sandhu-law.com, bk1notice@sandhu-law.com

Jeffrey C. Toole on behalf of Interested Party Zachary B Burkons
toole@buckleyking.com, young@buckleyking.com

Michael S. Tucker on behalf of Creditor Citizens Bank, N.A.
mtucker@ulmer.com

Phyllis A. Ulrich on behalf of Creditor The Huntington National Bank
bankruptcy@carlisle-law.com, bankruptcy@carlisle-law.com

Leslie E. Wargo on behalf of Cross-Claimant Richard M. Osborne
Leslie@Wargo-Law.com

Leslie E. Wargo on behalf of Debtor Richard M. Osborne
Leslie@Wargo-Law.com

Leslie E. Wargo on behalf of Spec. Counsel Leslie E Wargo
Leslie@Wargo-Law.com

Elia O. Woyt on behalf of Trustee Kari B. Coniglio
eowoyt@vorys.com, eowoyt@vorys.com;mdwalkuski@vorys.com

Maria D. Giannirakis ust06 on behalf of U.S. Trustee United States Trustee
maria.d.giannirakis@usdoj.gov

Scott R. Belhorn ust35 on behalf of U.S. Trustee United States Trustee
Scott.R.Belhorn@usdoj.gov

EXHIBIT 1

# Management Agreement

For Property located at – See attached **Schedule "A" – PROPERTY LIST**

Beginning Upon the issuance of a Court Order approving this agreement (likely August 2019) and ending upon the earlier of July 31, 2021, or notice (as outlined herein) of termination by either party.


### _OWNER x_____        AGENT x_____


# FOR OWNER: Kari B. Coniglio, Chapter 7 Trustee

# AGENT: *Ag* Real Estate Group, Inc.

17-17361-aih    Doc 589    FILED 08/29/19    ENTERED 08/29/19 14:59:50    Page 9 of 26

This Agreement is made this _____ day of _____, 2019 by and between Kari B. Coniglio (for "Owner") and *Ag* Real Estate Group, Inc. (the "Agent").

## Section 1  APPOINTMENT OF MANAGING AGENT

### 1.1  APPOINTMENT AND ACCEPTANCE

Owner hereby appoints Agent as sole and exclusive Agent of Owner to lease and manage the property described in paragraph 1.2 upon the terms and conditions provided herein. Agent accepts the appointment and agrees to furnish the services of its organization for the leasing and management of the Premises, as hereinafter defined; and Owner agrees to pay all expenses in connection with those services.  Owner and Agent agree that Agent may choose to refer leasing responsibilities to another broker/agent.

### 1.2  DESCRIPTION OF PREMISES

The property to be managed by Agent under this Agreement (the "Premises") is known as - See attached **Schedule "A" – PROPERTY LIST – subject to change from time to time**. Agent shall only collect rents with respect to any of the Premises that have been abandoned by the estate (and which are the subject of unexpired contracts and/or executory leases) (the "Abandoned Premises") and the terms and conditions of this Agreement relating to any action other than collection of the rent is not applicable to the Abandoned Premises.  The Abandoned Premises are identified on Schedule "A" with the notation "Abandoned Premises" next to the address of the Premises.

### 1.3  TERM

The term of this Agreement shall be for an initial period of 2 years (the "initial term") from the 1st day following receipt of the court order approving this agreement, to and including the 31st day of July, 2021, and thereafter shall be automatically renewed from month to month unless terminated as provided in sections 21 or 27 herein. Each of said one-month renewal periods is referred to as a "monthly term".

### 1.4  MANAGEMENT OFFICE

Owner shall not provide on-site space for a management office.

### 1.5  INTENTIONALLY DELETED

## Section 2  BANK ACCOUNTS

The various bank accounts established under this Agreement shall at all times be established in Owner's name but under Agent's control. Agent's and Owner's designees shall be the only parties authorized to draw upon such accounts. No amounts deposited in any accounts established under this Agreement shall in any event be commingled with any other funds of Agent, other than a nominal opening balance which may be required by the depository institution. Owner hereby directs Agent to consolidate funds from all properties on Schedule "A" into 1 operating account.  Owner and Agent agree that the bank accounts shall be established at Huntington Bank or other bank so designated by Agent as the bank where Agent has the majority of its client accounts.  Owner shall have online access to information in all bank accounts at all times.

### 2.1  OPERATING (AND/OR) RESERVE ACCOUNT(S)

Agent and Owner shall establish a minimum balance to be kept in the operating accounts, subject to availability of surplus cash.  As often as Owner wishes, Agent shall disburse to Owner all funds exceeding the agreed upon minimum operating account balance and will not maintain any type of separate reserve account.

17-17361-aih    Doc 589    FILED 08/29/19    ENTERED 08/29/19 14:59:50    Page 10 of 26

**2.1.1  INITIAL DEPOSIT AND CONTINGENCY RESERVE**

Immediately upon commencement of this Agreement, Owner shall remit to Agent the sum of *"to be determined upon mutual agreement of Agent and Owner"* to be deposited in the Operating Account as an initial deposit representing the estimated disbursements to be made in the first month following the commencement of this Agreement. Owner agrees to maintain a mutually agreeable amount in the account at all times to enable Agent to pay the obligations of Owner under this Agreement as they become due. Owner and Agent shall review the amount of the contingency reserve from time to time and shall agree in writing on a new contingency reserve amount when such is required.  Agent shall not be obligated to advance any of his own funds to facilitate the operation and/or management of the properties.

**2.2  SECURITY DEPOSIT ACCOUNT**

Agent shall, if required by law, maintain a separate interest-bearing account for tenant security deposits. Such account shall be maintained in accordance with applicable state or local laws, if any.  *__Owner and Agent agree that Agent received no security deposit funds from Owner.__*

**2.3  FIDELITY BOND**

Upon written request of Owner to Agent, Agent shall obtain a fidelity bond in the amount of *"to be determined upon mutual agreement of Agent and Owner following Owner's written request to Agent"* with a company determined by Agent. All costs associated with obtaining and maintaining such bond shall be paid for by Owner.

**Section 3  COLLECTION OF RENTS AND OTHER RECEIPTS**

**3.1  AGENT'S AUTHORITY**

Agent shall collect (and give receipts for, if necessary) all rents, charges and other amounts receivable on Owner's account in connection with the management and operation of the Premises. Such receipts (except tenants' security deposits, which shall be handled as specified in paragraphs 2.2 and 3.3 hereof; and special charges, which shall be handled as specified in paragraph 3.2 hereof) shall be deposited in the Operating Account maintained by Agent for the Premises.

**3.2  SPECIAL CHARGES**

*THIS SECTION INTENTIONALLY DELETED.*

**3.3  SECURITY DEPOSITS**

Agent shall collect, deposit, and disburse tenants' security deposits in accordance with the terms of each tenant's lease and applicable law. In fairness to residential tenants, Owner hereby authorizes Agent to properly disburse Security Deposits from the operating funds (when due), even though Owner has not tendered security deposit funds to Agent.  Agent shall pay tenants interest upon such security deposits only if required by law to do so. Subject to the availability of funds, Agent shall comply with all applicable state or local laws concerning the responsibility for security deposits and interest, if any.

## Section 4  DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

### 4.1  OPERATING EXPENSES
From the Operating Account, Agent is hereby authorized to pay or reimburse itself for all expenses and costs of operating the Premises and for all other sums due Agent under this Agreement, including Agent's compensation under section 17.  Owner hereby acknowledges that operating expenses (including Agent's fees) will be disbursed prior to payment of debt service (if any)  and real estate taxes.  In the event that there are insufficient funds available for the payment of debt service and real estate taxes, those expenses will remain unpaid until there are sufficient funds available.

### 4.2  DEBT SERVICE
Owner shall give Agent advance written notice of at least 30 days if Owner desires Agent to make any additional monthly or recurring payments (such as mortgage indebtedness, general taxes, or special assessments, or fire, steam boiler, or other insurance premiums) out of the proceeds from the Premises. If Owner notifies Agent to make such payments after the beginning of the term of this Agreement, Agent shall have the authority to name a new minimum operating reserve amount pursuant to paragraph 2.1.1 of this Agreement, and Owner shall maintain this new amount at all times in the Operating Account.

### 4.3  NET PROCEEDS
To the extent that funds are available, and after maintaining the cash minimum operating reserve amount as specified in paragraph 2.1.1, Agent shall transmit cash balances to Owner periodically, as follows: Quarterly, or approximately every 90 days.  Such periodic cash balances shall be remitted to the following person(s) attention at the address shown:

Kari B. Coniglio, Chapter 7 Trustee
200 Public Square, Suite 1400
Cleveland, OH  44114

_____

## Section 5  AGENT NOT REQUIRED TO ADVANCE FUNDS

In the event that the balance in the Operating Account is at any time insufficient to pay disbursements due and payable under paragraphs 4.1 and 4.2 above, Owner shall, immediately upon notice from Agent to Owner, remit to Agent sufficient funds to cover the deficiency and replenish the contingency reserve. In no event shall Agent be required to use its own funds to pay such disbursements. Nor shall Agent be required to advance any monies to Owner, to the Security Deposit Account, or to the Operating Account.

If Agent elects to advance any money in connection with the Premises to pay any expenses for Owner, such advance shall be considered a loan subject to repayment (withoutinterest), and Owner hereby agrees to reimburse Agent, as provided in paragraph 17.7, and hereby authorizes Agent to deduct such amounts from any monies due Owner.

**Section 6  FINANCIAL AND OTHER REPORTS**

By the 30th day following the end of a fiscal quarter (April 30th, July 31st, October 31st, January 31st), Agent shall furnish Owner with only the following:
- Statement of cash receipts and disbursements from the operation of the Premises during the previous quarter
- Delinquency Report
- Check Register
- Fully reconciled Bank Statements

In addition, Agent shall, on a mutually acceptable schedule, prepare and submit to Owner such other reports as are agreed on by both parties at an additional expense.  Owner's CPA shall prepare, at Owner's expense, tax returns and any and all financial statements Owner requests or requires other than the statement of receipts and disbursements as described above.

**6.1  OWNER'S RIGHT TO AUDIT**

Owner's CPA shall have the right (not more than 6 times per calendar year) to perform periodic audits of all applicable accounts managed by Agent, and all costs of such audit(s) shall be paid by Owner.

**Section 7  ADVERTISING**

Agent is authorized to exclusively list the Premises for rent.    Advertising may include, but not be limited to: periodicals, signs, plans, internet web sites, brochures, or displays, or such other means as Agent may deem proper and advisable. Agent is authorized to place signs on the Premises advertising the Premises for rent, provided such signs comply with applicable laws. The direct cost of such advertising shall be paid out of the Operating Account. All advertising shall make clear that Agent is the manager and NOT the Owner of the Premises.

**Section 8  LEASING AND RENTING – subject to separate LISTING AGREEMENT**

**8.1  AGENT'S AUTHORITY TO LEASE PREMISES**

Agent shall use reasonable efforts to keep the Premises rented by procuring tenants for the Premises. Agent is authorized to negotiate, prepare, and execute (upon written approval) all leases, including all renewals and extensions of leases (and expansions of space in the Premises, if applicable) and to cancel and modify existing leases. Agent shall execute all leases as agent for the Owner. All costs of leasing shall be paid out of the Operating Account. No lease shall be in excess of 2 year(s) without written approval by Owner. The form of the lease shall be provided by Owner to Agent.

**8.2  NO OTHER RENTAL AGENT**

During the term of this Agreement, Owner shall not authorize any other person, firm, or corporation to negotiate or act as leasing or rental agent with respect to any leases for space in the Premises. Owner agrees to promptly forward all inquiries about leases to Agent.

**8.3  RENTAL RATES**

Upon written consent and approval of Owner, Agent is authorized to establish and change or revise all rents, fees, or deposits, and any other charges chargeable with respect to the Premises.

**8.4  ENFORCEMENT OF LEASES**

Agent is authorized to institute, in Owner's name, all legal actions or proceedings for the enforcement of any lease term, for the collection of rent or other income from the Premises, or for the evicting or dispossessing of tenants or other persons from the Premises. Agent is authorized to sign and serve such notices as Agent deems necessary for lease enforcement, including the collection of rent or other income. Agent is authorized, when expedient, to settle, compromise, and release such legal actions or suits or reinstate such tenancies. Any monies for such settlements

paid out by Agent shall not exceed $500.00 (five hundred dollars) without prior approval by Owner. Attorneys' fees, filing fees, court costs, and other necessary expenses incurred in connection with such actions and not recovered from tenants shall be paid out of the Operating Account or reimbursed directly to Agent by Owner. With prior approval of Owner as to timing and selection of counsel, Agent may engage counsel on Owner's behalf to handle such litigation.

## Section 9  EMPLOYEES

### 9.1  AGENT'S AUTHORITY TO HIRE

Agent is authorized to hire, supervise, discharge, and pay all contractors, vendors or other personnel necessary in the management, maintenance, and operation of the Premises. Employees shall be deemed employees of the Agent and not Owner, and Agent shall not be liable to Owner or others for any act or omission on the part of such employees unless Agent had prior knowledge of acts of the employee that could be deemed grossly negligent, willful misconduct, wanton, and reckless.

### 9.2  OWNER PAYS EMPLOYEE EXPENSES

Agent has no authority to hire any employees to work on the payroll of Owner.

### 9.3  AGENT'S AUTHORITY TO FILE RETURNS

Owner's CPA shall have sole responsibility to file any and all tax returns at Owner's expense.

### 9.4  WORKERS' COMPENSATION INSURANCE

Agent has no authority to hire any employees to work on the payroll of Owner, therefore Owner will not need to participate in the State of Ohio Worker's Compensation program.

### 9.5  HOLD HARMLESS, LABOR LAWS

Agent has no authority to hire any employees to work on the payroll of Owner, therefore Owner will not have exposure to issues relating to Labor Laws.

## Section 10  MAINTENANCE AND REPAIR

Agent is authorized to make or cause to be made, through contracted services or otherwise, all ordinary repairs and replacements reasonably necessary to preserve the Premises in its present condition and for the operating efficiency of the Premises, and all alterations required to comply with lease requirements, governmental regulations, or insurance requirements. Agent is also authorized to decorate the Premises and to purchase or rent, on Owner's behalf, all equipment, tools, appliances, materials, supplies, uniforms, and other items necessary for the management, maintenance, or operation of the Premises. Such maintenance and decorating expenses shall be paid out of the Operating (and/or) Reserve Account(s).

### 10.1  APPROVAL FOR EXCEPTIONAL MAINTENANCE EXPENSE

The expense to be incurred for any one item of maintenance, alteration, refurbishing, or repair shall not exceed the sum of $1,000 (One Thousand Dollars), unless such expense is specifically authorized by Owner, or is incurred under such circumstances as Agent shall reasonably deem to be an emergency. In an emergency where repairs are *immediately* necessary for the preservation and safety of the Premises, or to avoid the suspension of any essential service to the Premises, or to avoid danger to life or property, or to comply with federal, state, or local law, such emergency repairs shall be made by Agent at Owner's expense without prior approval.

**10.2  APPROVAL FOR ROUTINE MAINTENANCE EXPENSES**

Owner and agent agree that there are several general classifications of typical property maintenance that are likely to occur, as described below:

- RECURRING SCHEDULED MAINTENANCE: These are tasks that may be contracted for on a recurring basis, such as grass cutting, snow plowing, etc. Agent will seek proposals for recurring maintenance task and review the proposals with Owner prior to contracting for such services. Agent welcomes input from Owner on preferred contractors to be included on bid lists.

- NON-RECURRING MAINTENANCE: These are tasks that are reasonably expected to occur but not necessarily on a regular or scheduled basis, such as unstopping a plugged up drain, minor repair to a door or window, etc. Agent will likely dispatch a "handy-man" or "semi-skilled" tradesman to address these tasks and will not likely seek proposals or estimates for this work. Agent will not likely review these repairs with Owner prior to their completion. In the event that Agent dispatches an independent contractor, Agent will process the independent contractor's invoice for payment from the operating account of Owner. In the event that Agent dispatches a maintenance person **who is a direct employee of Agent**, the cost for such a service call will be a $50 service charge plus $50/hour for the time spent on the task, during business hours and $100/hour after hours and on weekends. Agent shall use its reasonable business judgment to dispatch the contractor, tradesman or handyman who will provide quality services at commercially reasonable rates to the benefit of Owner. These rates are subject to change by mutual agreement.

- MAINTENANCE AND REPAIR REQUIRING SKILLED TRADESMEN Agent and Owner agree that certain repairs and maintenance tasks will be performed by licensed tradesmen, i.e. furnace and other life/safety repairs. Agent welcomes input from Owner on preferred contractors to be included on bid lists and approved contractor lists.

**Section 11  CONTRACTS, UTILITIES AND SERVICES**

Agent is authorized to negotiate contracts for nonrecurring items or expenses, not to exceed $1,000 (One Thousand dollars) unless approved by Owner, and to enter into agreements in Owner's name for all necessary repairs, maintenance, minor alterations, and utility services. Agent shall, in Owner's name and at Owner's expense, make contracts on Owner's behalf for electricity, gas, telephone, fuel, or water, and such other services as Agent shall deem necessary or prudent for the operation of the Premises. All utility deposits shall be the Owner's responsibility, except that Agent may pay same from the Operating Account if such funds are available.

**Section 12 RELATIONSHIP OF AGENT TO OWNER**

The relationship of the parties to this Agreement shall be that of Principal and Agent, and all duties to be performed by Agent under this Agreement shall be for and on behalf of Owner, in Owner's name, and for Owner's account. In taking any action under this Agreement, Agent shall act only as Agent for Owner, and nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement except that of Principal and Agent, or as requiring Agent to bear any portion of losses arising out of or connected with the ownership or operation of the Premises. Nor shall Agent at any time during the period of this Agreement be considered a direct employee of Owner. Neither party shall have the power to bind or obligate the other except as expressly set forth in this Agreement, except that Agent is authorized to act with such additional authority and power as may be necessary to carry out the spirit and intent of this Agreement. Agent is not expected to devote his full time attention or energy to the Premises and is free to pursue any and all other endeavors without restriction or limitation.

**Section 13  SAVE HARMLESS**

Owner shall indemnify, defend, and save Agent harmless from all loss, damage, cost, expense (including attorneys' fees), liability, or claims for personal injury or property damage incurred or occurring in, on, or about the Premises, so long as Agent has not acted in a manner that can be deemed to be to grossly negligent, willful misconduct, wanton and reckless.

**Section 14  LIABILITY INSURANCE**

Owner shall obtain and keep in force adequate insurance against physical damage (e.g., fire with extended coverage endorsement, boiler and machinery, etc.) and against liability for loss, damage, or injury to property or persons which might arise out of the occupancy, management, operation, or maintenance of the Premises. Agent will support Owner's efforts in this regard.  The amounts and types of insurance shall be acceptable to both Owner and Agent, and any deductible required under such insurance policies shall be Owner's expense. Agent shall be covered as an additional insured and property manager on all liability insurance maintained with respect to the Premises. Liability insurance shall be adequate to protect the interests of both Owner and Agent and in form, substance, and amounts reasonably satisfactory to Agent. Owner agrees to furnish Agent with certificates evidencing such insurance or with duplicate copies of such policies within 15 (fifteen) days of the execution of this Agreement. If Owner fails to do so, Agent may, but shall not be obligated to, place said insurance and charge the cost thereof to the Operating Account. Said policies shall provide that notice of default or cancellation shall be sent to Agent as well as Owner and shall require a minimum of 30 days' written notice to Agent before any cancellation of or changes to said policies.

**Section 15  AGENT ASSUMES NO LIABILITY**

Agent assumes no liability whatsoever for any acts or omissions of Owner, or any previous owners of the Premises, or any previous management or other agent of either. Agent assumes no liability for any failure of or default by any tenant in the payment of any rent or other charges due Owner or in the performance of any obligations owed by any tenant to Owner pursuant to any lease or otherwise. Nor does Agent assume any liability for previously unknown violations of environmental or other regulations which may become known during the period this Agreement is in effect. Any such regulatory violations or hazards discovered by Agent shall be brought to the attention of Owner in writing, and Owner shall promptly cure them.

**Section 16  OWNER RESPONSIBLE FOR ALL EXPENSES OF LITIGATION**

Owner shall pay all expenses incurred by Agent, including, but not limited to, reasonable attorneys' fees and Agent's costs and time, and any liability, fines, penalties or the like, in connection with any claim, proceeding, or suit involving an alleged violation by Agent or Owner, or both, of any law pertaining to fair employment, fair credit reporting, environmental protection, rent control, taxes, or fair housing, including, but not limited to, any law prohibiting or making illegal discrimination on the basis of race, sex, creed, color, religion, national origin, or mental or physical handicap, provided, however, that Owner shall not be responsible to Agent for any such expenses in the event Agent is finally adjudged to have personally, and not in a representative capacity, violated any such law. Nothing contained in this Agreement shall obligate Agent to employ legal counsel to represent Owner in any such proceeding or suit.  In the event that counsel is employed to represent Owner, Owner shall have the right to approve of such counsel.

## 16.1  FEES FOR LEGAL ADVICE

Owner shall pay reasonable expenses incurred by Agent in obtaining legal advice regarding compliance with any law affecting the Premises or activities related to them. If such expenditure also benefits others for whom Agent in this Agreement acts in a similar capacity, Owner agrees to pay an apportioned amount of such expense.  In the event that counsel is employed to represent Owner, Owner shall have the right to approve of such counsel.

## Section 17  AGENT'S COMPENSATION AND EXPENSES

As compensation for the services provided by Agent under this Agreement (and exclusive of reimbursement of expenses to which Agent is entitled hereunder), Owner shall pay Agent as follows:

## 17.1  FOR MANAGEMENT SERVICES

For the PROPERTY MANAGEMENT services, we seek the following compensation terms:
- **One-Time** Startup Fees:
  - $150 per tenant, for properties that are occupied (review leases and data entry into property mgt / accounting system)
  - $100 per parcel, for properties that are vacant and/or unimproved

- Management Fees:
  - Residential Properties
    - $100 per tenant per month
    - New tenant lease – fee equal to 1 month rent.  *(Once we view the properties, we may suggest that the Trustee list the vacant units with a broker who specializes in finding residential tenants, with the leasing fee paid to the outside broker.  Note that there is not a duplication of fees in this case)*
    - Lease Renewal - $200 administrative fee
    - $50 per vacant residential or commercial unit per month *(not applicable to vacant land)*
    - Evictions – $250 plus actual court costs and legal fees
    - Repairs / Tenant Make Ready Work – Agent shall not markup any work which costs $1,000.00 (One Thousand Dollars) or less.  Administration and oversight of any work that costs more than $1,000.00 shall be considered outside the scope of this agreement and subject to separate agreement between Owner and Agent at the time that the work becomes necessary.
    - Management company to retain late fees collected (NOT late rent; only the late fees- in order to offset additional administrative work involved in collecting late rent).
  - Commercial Properties
    - Greater of either:
      - $500/month, or;
      - 6% of gross collected monthly rent

## 17.2  FOR LEASING

The Fee due from Owner to Agent for leasing of space within the Premises shall be equivalent to the greater of 1 (one) month's rent or 6% of the gross rent due over the initial term of the lease.  The fee is due and payable from the operating account (as an Owner expense) upon execution of the lease and upon payment, by tenant, of its first rental payment.  In the event that Agent advertises a property in a newspaper, the advertising expense shall be an Owner expense and shall also be paid from the operating account.

## 17.3  INTENTIONALLY DELETED

## 17.4  FOR RENOVATION, BUILD-OUT OR CONSTRUCTION

Any work within this description is outside the scope and compensation of this agreement.  Such work shall not be undertaken unless and until Owner and Agent agree (in writing) on pricing, contractor selection, project details and timing.

17-17361-aih    Doc 589    FILED 08/29/19    ENTERED 08/29/19 14:59:50    Page 17 of 26

### 17.5 FOR FIRE RESTORATION

The parties agree that any repair or replacement work exceeding an estimated cost of $1,000 is outside the scope of this agreement. Fire restoration and other work required due to the types of property damage or casualty that is typically covered by insurance policies shall not be undertaken unless and until Owner and Agent agree (in writing) on pricing, contractor selection, project details and timing. Insurance claims adjustment is outside of the scope of this agreement.

### 17.6 FOR OTHER ITEMS OF MUTUAL AGREEMENT

The parties agree that any other work items, not covered by the scope of this agreement, shall not be undertaken unless and until Owner and Agent agree (in writing) on pricing, contractor selection, project details and timing.

### 17.7 INTEREST ON UNPAID SUMS

Any sums due Agent under any provision of this Agreement, and not paid within 10 (ten) bank business days after such sums have become due, shall bear interest at the rate of 0.00% (Zero percent) per annum.

## Section 18  REPRESENTATIONS

Owner represents and warrants, that to the best of Owner's actual knowledge: there are no written or oral agreements affecting the Premises other than tenant leases, copies of which shall be furnished to Agent within 10 days following mutual execution of this agreement; that there are no recorded easements, restrictions, reservations, or rights of way which adversely affect the use of the Premises for the purposes intended under this Agreement; the property is zoned for the intended use; that all leasing and other permits for the operation of the Premises have been secured and are current; that the building and its construction and operation do not violate any applicable statutes, laws, ordinances, rules, regulations, orders, or the like (including, but not limited to, those pertaining to hazardous or toxic substances); that the building does not contain any asbestos, urea, formaldehyde, radon, or other toxic or hazardous substance; and that no unsafe condition exists.

## Section 19  STRUCTURAL CHANGES

Owner expressly withholds from Agent any power or authority to make any structural changes in any building, or to make any other major alterations or additions in or to any such building or to any equipment in any such building, or to incur any expense chargeable to Owner other than expenses related to exercising the express powers vested in Agent through this Agreement, without the prior *written* consent of a duly authorized representative of Owner.

However, such emergency repairs as may be required because of danger to life or property, or which are immediately necessary for the preservation and safety of the Premises or the safety of the tenants and occupants thereof, or required to avoid the suspension of any necessary service to the Premises, or to comply with any applicable federal, state, or local laws, regulations, or ordinances, shall be authorized pursuant to paragraph 10.1 of this Agreement, and Agent shall notify Owner appropriately.

## Section 20  BUILDING COMPLIANCE

Agent does not assume and is given no responsibility for compliance of the Premises or any building thereon or any equipment therein with the requirements of any building codes or with any statute, ordinance, law, or regulation of any governmental body or of any public authority or official thereof having jurisdiction, except to notify Owner promptly or forward to Owner promptly any complaints, warnings, notices, or summonses received by Agent relating to such matters. Owner represents that to the best of Owner's knowledge the Premises and all such equipment comply with all such requirements, and Owner authorizes Agent to disclose the ownership of the Premises to any such officials and agrees to indemnify and hold Agent, its representatives, servants, and employees, harmless of and from all loss, cost, expense, and liability whatsoever which may be imposed by reason of any present or future violation, not caused by the

Agents gross negligent or willful, wanton, and reckless manner or alleged violation of such laws, ordinances, statutes, or regulations.

**Section 21  TERMINATION**

**21.1  TERMINATION BY EITHER PARTY**
    This Agreement may be terminated by either Owner or Agent, with or without cause, at any time by the giving of 45 days' (forty-five days) written notice prior to the proposed termination date.

**21.2  TERMINATION FOR CAUSE**
    Notwithstanding the foregoing, this Agreement shall terminate in any event, and all obligations of the parties hereunder shall cease (except as to liabilities or obligations which have accrued or arisen prior to such termination, or which accrue pursuant to paragraph 21.3 as a result of such termination, and obligations to insure and indemnify), upon the occurrence of any of the following events:

    (a) BREACH OF AGREEMENT--Thirty (30) days after the receipt of notice by either party to the other specifying in detail a material breach of this Agreement, if such breach has not been cured within said thirty (30) day period; or if such breach is of a nature that it cannot be cured within said thirty (30) day period but can be cured within a reasonable time thereafter, if efforts to cure such breach have not commenced or/and such efforts are not proceeding and being continued diligently both during and after such thirty (30) day period prior to the breach being cured. HOWEVER, the breach of any obligation of either party hereunder to pay any monies to the other party under the terms of this Agreement shall be deemed to be curable within thirty (30) days.

    (b) FAILURE TO ACT, ETC.--In the event that any insurance required of Owner is not maintained without any lapse, or it is alleged or charged that the Premises, or any portion thereof, or any act or failure to act by Owner, its agent and employees with respect to the Premises, fails to comply with any law or regulation, or any order or ruling of any public authority, and Agent, in its sole discretion, considers that the action or position of Owner or its representatives with respect thereto may result in damage or liability to Agent, or disciplinary proceeding with respect to Agent's license, Agent shall have the right to terminate this Agreement at any time by written notice to Owner of its election to do so, which termination shall be effective upon the service of such notice. Such termination shall not release the indemnities of Owner set forth herein.

    (c) EXCESSIVE DAMAGE--Upon the destruction of or substantial damage to the Premises by any cause, or the taking of all or a substantial portion of the Premises by eminent domain, in either case making it impossible or impracticable to continue operation of the Premises.

    (d) INADEQUATE INSURANCE--If Agent deems that the liability insurance obtained by Owner per section 14 is not reasonably satisfactory to protect its interest under this Agreement, and if Owner and Agent cannot agree as to adequate insurance, Agent shall have the right to cancel this Agreement upon the service of notice to Owner.

    (e) INVALIDITY OF THE AGREEMENT – Either party may terminate the Agreement if the Agreement is deemed to be invalid or unenforceable.

**21.3  TERMINATION COMPENSATION**
    *THIS SECTION INTENTIONALLY DELETED*

**21.4  OWNER RESPONSIBLE FOR PAYMENTS**

    Upon termination of or withdrawal from this Agreement, Owner shall assume the obligations of any contract or outstanding bill executed by Agent under this Agreement for and on behalf of Owner and responsibility for payment of all unpaid bills. In addition, Owner shall furnish Agent security, in an amount satisfactory to Agent, against any obligations or liabilities which Agent may have properly incurred on Owner's behalf under this Agreement.

Agent may withhold funds for ninety (90) days after the end of the month in which this Agreement is terminated, in order to pay bills previously incurred but not yet invoiced and to close accounts. Agent shall deliver to Owner, within ninety (90) days after the end of the month in which this Agreement is terminated, any balance of monies due Owner or of tenant security deposits, or both, which were held by Agent with respect to the Premises, as well as a final accounting reflecting the balance of income and expenses with respect to the Premises as of the date of termination or withdrawal, and all records, contracts, leases, receipts for deposits, and other papers or documents which pertain to the Premises.

**21.5  SALE OF PREMISES – subject to terms of a separate Listing Agreement**

In the event that the Premises are to be marketed for sale during the period of this Agreement, Agent shall have exclusive rights of brokerage representation of Owner. A detailed and comprehensive Exclusive Representation Agreement shall be negotiated and executed by Owner and Agent, including the following brokerage fee schedule:

- Brokerage fees, payable upon closing of any transaction:
  - 10% fee on <u>vacant parcels</u> of land

  - <u>Commercial Real Estate, improved</u>:
    - 6% of the 1st $1,000,000 of gross sales price
    - 4% of the balance of the gross sales price exceeding $1,000,000

  - <u>Residential Real Estate, improved</u>:
    - 7% of the 1st $100,000 of gross sales price
    - 5% of the balance of the gross sales price exceeding $100,000

  - Reimbursement of up to $5,000 of actual, reasonable, 3rd party out of pocket marketing expenses (i.e. signage, advertising, etc.)

## Section 22  INDEMNIFICATION SURVIVES TERMINATION

All representations and warranties of the parties contained herein shall survive the termination of this Agreement. All provisions of this Agreement that require Owner to have insured or to defend, reimburse, or indemnify Agent (including, but not limited to, paragraphs 2.1, 2.3, 5, 8.4, 9.2, 9.5, 13, 14, 15, 16, 17.7, 20, 21.3, and 21.4) shall survive any termination; and if Agent is or becomes involved in any proceeding or litigation by reason of having been Owner's Agent, such provisions shall apply as if this Agreement were still in effect.

## Section 23  HEADINGS

All headings and subheadings employed within this Agreement and in the accompanying List of Provisions are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement.

## Section 24  FORCE MAJEURE

Any delays in the performance of any obligation of Agent under this Agreement shall be excused to the extent that such delays are caused by wars, national emergencies, natural disasters, strikes, labor disputes, utility failures, governmental regulations, riots, adverse weather, and other similar causes not within the control of Agent, and any time periods required for performance shall be extended accordingly.

### Section 25  COMPLETE AGREEMENT

This Agreement, including any specified attachments, constitutes the entire agreement between Owner and Agent with respect to the management and operation of the Premises and supersedes and replaces any and all previous management agreements entered into or/and negotiated between Owner and Agent relating to the Premises covered by this Agreement. No change to this Agreement shall be valid unless made by supplemental written agreement executed and approved by Owner and Agent. Except as otherwise provided herein, any and all amendments, additions, or deletions to this Agreement shall be null and void unless approved by Owner and Agent in writing. Each party to this Agreement hereby acknowledges and agrees that the other party has made no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein, and that each party, in entering into and executing this Agreement, has relied upon no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein.

### Section 26  RIGHTS CUMULATIVE; NO WAIVER

No right or remedy herein conferred upon or reserved to either of the parties to this Agreement is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy given under this Agreement or now or hereafter legally existing upon the occurrence of an event of default under this Agreement. The failure of either party to this Agreement to insist at any time upon the strict observance or performance of any of the provisions of this Agreement, or to exercise any right or remedy as provided in this Agreement, shall not impair any such right or remedy or be construed as a waiver or relinquishment of such right or remedy with respect to subsequent defaults. Every right and remedy given by this Agreement to the parties to it may be exercised from time to time and as often as may be deemed expedient by those parties.

### Section 27  APPLICABLE LAW AND PARTIAL INVALIDITY

The execution, interpretation, and performance of this Agreement shall in all respects be controlled and governed by the laws of the State of Ohio. If any part of this Agreement shall be declared invalid or unenforceable, Agent shall have the option to terminate this Agreement by notice to Owner.

### Section 28  NOTICES

Any notices, demands, consents, and reports necessary or provided for under this Agreement shall be in writing and shall be addressed as follows, or at such other address as Owner and Agent individually may specify hereafter in writing:

Agent:   *Ag* Real Estate Group, Inc.
Attn: Eric M. Silver, President and Broker
3659 South Green Road
Suite 100
Beachwood, OH  44122
Phone - 216-504-5000 x 122
Fax - 216-504-5001
Email - info@agrealestategroup.com

Owner:  Kari B. Coniglio, Chapter 7 Trustee
200 Public Square, Suite 1400
Cleveland, OH  44114

17-17361-aih     Doc 589     FILED 08/29/19     ENTERED 08/29/19 14:59:50     Page 22 of 26

Such notice or other communication may be mailed by United States registered or certified mail, return receipt requested, postage prepaid, and may be deposited in a United States Post Office or a depository for the receipt of mail regularly maintained by the post office. Such notices, demands, consents, and reports may also be delivered by hand or by any other receipted method or means permitted by law. For purposes of this Agreement, notices shall be deemed to have been "given" or "delivered" upon personal delivery thereof.

**Section 29  AGREEMENT BINDING UPON SUCCESSORS AND ASSIGNS**

This agreement shall be binding upon the parties hereto and their respective personal representatives, heirs, administrators, executors, successors and assigns.

**Section 30  ALARM AND MONITORING AT VACANT SPACES**

Agent hereby recommends that Owner authorize Agent to install temporary alarm systems with monitoring capacity in all vacant spaces in an attempt to minimize vandalism and property damage.

**SIGNATURES**

       IN WITNESS WHEREOF, the parties hereto have affixed or caused to be affixed their respective signatures this _____ day of _____, 2019.

OWNER:
Kari B. Coniglio, Chapter 7 Trustee

By: _____, ITS _____

AGENT:
*Ag* Real Estate Group, Inc. By

_____
By: Eric M. Silver, President and Broker

17-17361-aih     Doc 589     FILED 08/29/19     ENTERED 08/29/19 14:59:50     Page 24 of 26

# SCHEDULE "A"

# PROPERTY LIST

| Property Description | Monthly Rental Amount | Status |
|---|---|---|
| 7482 Center Street, Unit #5 | $950 | Occupied |
| 7472 Presley | $1,000 | Vacant |
| 7474 Presley | $1,000 | Occupied |
| 1180 W. Jackson | $800 | Occupied |
| 7792 Ravenna | $500 | Occupied |
| 6980 Ravenna | $600 | Occupied |
| 5660 Vrooman | $1,100 | Occupied |
| 11575 Girdled | $1,050 | Occupied |
| 11579 Girdled | $1,100 | Occupied |
| 7741 Auburn | $600 | Vacant |
| 15499 Kinsman | $600 | Occupied |
| 6912 St. Rt. 44 (Lot) | $500 | Occupied |
| Painesville Lot | $1,322.50 | Occupied |