IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DISTRICT

| | | |
|---|---|---|
| In re: | ) | Case No. 17-17361 |
| | ) | |
| RICHARD M. OSBORNE, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |

## TRUSTEE'S MOTION FOR APPROVAL OF COMPROMISE

Kari B. Coniglio (the "Trustee"), the chapter 7 trustee for the bankruptcy estate of Richard M. Osborne (the "Debtor"), seeks approval to compromise claims between and among the Trustee and the Co-Executors of the Estate of Jerome T. Osborne[1] ("JTO Estate") related to certain ongoing disputes, as further described herein. In support of this Motion, the Trustee states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicate for the relief requested is Bankruptcy Rule 9019.

### FACTUAL BACKGROUND

4. Debtor is one of eight children of Jerome T. Osborne ("JTO"), who died June 21, 2014. JTO's Last Will and Testament ("JTO Will")[2] was filed for probate and his estate was opened in July 2014, Lake County Probate Court Case No. 14 ES 0305 ("JTO Estate"). The JTO Estate is still open. There are eight co-executors of the JTO Estate, one of which is Debtor. The JTO Estate filed its first inventory of the JTO Estate, under seal, on August 12, 2019 ("JTO Estate

---

[1] The eight Co-Executors of the Estate of Jerome T. Osborne are Richard M. Osborne (Debtor); Georgeanne Osborne Gorman; Michael E. Gorman; Jacqueline Osborne Fischer; William V. Krug; Jerome T. Osborne, III; William L. Mackey; and Jeremy Cash Osborne.

[2] A complete copy of the JTO Will is attached as **Exhibit 1**.

Inventory") and its first partial account of the JTO Estate, under seal, on September 22, 2020 ("JTO Estate Account").

5. The JTO Will provides for the distribution of 30% percent of JTO's "gross probate estate before payment of debts, expenses of administration, taxes, and other obligations" to be divided among his eight children, per stirpes.[3] The remainder of JTO's assets—after the payment of debts and expenses—is to be distributed to the trustees of a charitable trust created by the JTO Will.[4]

6. JTO loaned money to his children and to businesses in which they were involved during his lifetime, including to Debtor. Item VII of the JTO Will provides that unless $2.8 million in principal owed to certain businesses owned by JTO is repaid in full during the administration of the JTO Estate, the share of the JTO Estate otherwise bequeathed to Debtor shall be reduced by the amount remaining due on those debts, including interest.[5]

7. The JTO Will was executed July 27, 2012, at which time the total principal outstanding to Debtor from JTO's businesses was $2.8 million.

8. After JTO's death and before the Petition Date (as defined below), the JTO Estate loaned Debtor a total of an <u>additional</u> $615,000 in cash ($487,625 on August 18, 2016 and $127,375 on April 18, 2017). Debtor also signed a $550,000 promissory note (August 12, 2014) in favor of the JTO Estate to document and pay down prior loan obligations due to the JTO Estate. Each of these promissory notes ("Post-Death Notes") state that they are payable "as an offset against all amounts that [Debtor] is entitled to receive as a distribution from [the JTO Estate] as a

---

[3] *See* JTO Will at Item III, page 2.
[4] Pursuant to the terms of the JTO Will, the charitable trust created by it will continue, under supervision of the Lake County Probate Court, for a period of 99 years following the death of JTO. Debtor is named as one of the initial trustees of that charitable trust. *See* JTO Will at Item V, page 9-15.
[5] *See* JTO Will at Item VII, page 15.

result of inheritance as a beneficiary on the earlier of: (i) the date of the next distribution from the [JTO Estate] or (ii) upon demand of [the JTO Estate] in [the JTO Estate's] sole and absolute discretion . . ."[6]

9. On May 15, 2018, the JTO Estate filed a Proof of Claim herein concerning the Post-Death Notes in the amount of $1,172,712.00, with interest accruing ("POC").

10. The Co-Executors have made representations to the Lake County Probate Court that suggest that if date-of-death values of the JTO Estate assets are used then Debtor's share of the JTO Estate—before any offsets—would be $5,558,516.88 ("Possible Debtor Inheritance").[7]

11. The Co-Executors of the JTO Estate have also stated that the **current** value of the assets of the JTO Estate—which primarily consists of interests in 20 closely-held companies—is unknown, and may be **lower** than the date-of-death values. Accordingly, the Possible Debtor Inheritance may be significantly lower. Costs and time to obtain new appraisals of 20 closely-held companies were considered by the parties.

12. According to the Fiduciary's Account filed with the probate court in the JTO Estate on September 22, 2020, the Co-Executors have applied $2,225,000.00 of the Possible Debtor Inheritance to pay off the principal owed to the JTO Estate. Co-Executors claim remaining loan balances, plus accruing interest, of $1,928,841.80 and over $235,000.00 in legal fees related to collections and bankruptcy of Debtor. This would leave approximately $1,170,000.00 as a Net Possible Debtor Inheritance, **if** the values of the 20 closely-held companies that make up the majority of this value have not decreased since JTO's death in 2014. The value of the Net Possible Debtor Inheritance may be significantly lower.

---

[6] Copies of the $550,000, $487,625 and $127,375 promissory notes are at pages 23, 25 and 27 of the POC, Claim No. 105-2 filed herein on May 15, 2018.
[7] *See* August 24, 2020 Application To Distributed In-Kind at Exhibit A, Schedule 2, Zwick letter, "calculation of distributions to close the Estate," family distribution total of $44,468,135/8=$5,558,516.88.

13. On December 17, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Code").

14. On July 3, 2019 (the "Conversion Date"), this Court entered an order converting the Debtor's bankruptcy case to a case under chapter 7.

15. On the Conversion Date, the Trustee was appointed the trustee for the Debtor's estate.

16. The Trustee appeared in the JTO Estate case pending in Lake County Probate Court in place of Debtor (as beneficiary) shortly after her appointment and worked with counsel for the JTO Estate for over a year in an effort to determine the Net Possible Debtor Inheritance.

17. The timing of any distribution of a Net Possible Debtor Inheritance without a compromise is undeterminable. The Co-Executors filed an application for a partial distribution of the JTO Estate inheritance (shares of Osborne family-owned businesses, in-kind) to the Debtor's siblings[8] on August 24, 2020.[9] The Co-Executors excluded a distribution to the Trustee from this application because she had "questioned the amounts due and owing . . ."[10] Over Trustee's objection, the Lake County Probate Court approved the Co-Executor's application for in-kind distributions to the other Osborne family beneficiaries on October 19, 2020. Without compromise, the Co-Executors are in a position to receive their individual distributions from the JTO Estate but refuse distribution to the Trustee indefinitely. The Lake County Probate Court's decisions to date show its support of the Co-Executors in this regard, leaving the Co-Executors in a superior bargaining position. The Trustee is likely to expend significant legal fees opposing and appealing these decisions in order to assert her rights to distribution.

---

[8] Or, if deceased, to those siblings' descendants, per stirpes.
[9] A copy of the Co-Executor's Application to Distribute In Kind is attached as **Exhibit 2**.
[10] *See* Application to Distribute In Kind, page 6.

18. The nature of the distribution of the vast majority of the Net Possible Debtor Inheritance without compromise would be in-kind distribution of shares of closely-held businesses rather than in cash. The Trustee would then have to liquidate these shares before distribution to creditors. The Co-Executors—also beneficiaries of the JTO Estate and owners of shares in the same closely-held businesses—have argued at least a 30% marketability discount would apply to the value of the shares distributed to the Trustee.

19. The Co-Executors argue that they are entitled to an offset of the amount due to the Trustee from the JTO Estate for $161,408.92 in proceeds of an insurance policy covering tangible personal property located at the Debtor's PA Compound that she received following a fire at that property during the course of this matter.

20. On October 28 and 29, 2020, the Parties participated in a mediation conducted by Judge Mary Ann Whipple (the "Mediation"). At the Mediation the Trustee, the JTO Estate, and Debtor reached a settlement and compromise of the Trustee's interest in the JTO Estate and the JTO Estate's POC, subject to approval of this Court. The material terms of this agreement were memorialized in a mediation terms sheet, with a more formal settlement agreement contemplated.

21. Due to delays attributable to the Co-Executors and Debtor and outside of the Trustee's control, the settlement agreement was not finalized and fully executed until March 10, 2021. A copy of that settlement agreement is attached hereto as **Exhibit 3** (the "Settlement Agreement").

22. Under the terms of the Settlement Agreement, the Trustee, Jerome T. Osborne, III, and Georgeanne Osborne-Gorman (collectively with Jerome T. Osborne, the "Co-Executor Representatives"), Huron River Properties, Inc., f/k/a Huron Lime, Inc., and Osborne Farms, LLC,

5

17-17361-aih    Doc 1083    FILED 03/17/21    ENTERED 03/17/21 17:32:21    Page 5 of 13

f/k/a Huron Lime Company, LLC (collectively with the Co-Executor Representatives, and Huron River Properties, Inc., the "JTO Parties") agreed as follows:

    a. The Trustee and the JTO Parties will seek this Court's approval of the Settlement Agreement and the Lake County Probate Court's approval of the Settlement Agreement ("Court Approvals");

    b. The Co-Executor Representatives shall cause the JTO Estate to pay to the Trustee the sum of $739,000.00 in immediately available funds within 5 Business Days of the appeal deadlines of the Court Approvals;

    c. Osborne Farms, LLC (owned by the Co-Executors of the JTO Estate) shall disclaim any interest it has in the PA Insurance Proceeds (as defined in the attached Settlement Agreement);

    d. The JTO Parties shall withdraw each of the Proofs of Claim by filing with the Court a Notice of Withdrawal with respect to each of the Proofs of Claim;

    e. The Trustee shall file with this Court a Notice of Proposed Abandonment notifying creditors of the Trustee's proposed abandonment of (1) the PA Tangible Personal Property (as defined in the attached Settlement Agreement), and (2) any future or expectancy interest, which the Debtor has in the JTO Estate; and

    f. The Trustee shall release all claims against the JTO Parties, including, but not limited to, any claims arising out of or related to (1) the Disputes (as defined in the attached Settlement Agreement), (2) the JTO Will and the Debtor's rights and interests as a beneficiary thereunder, (3) any loans and

accompanying loan documents in favor of Osborne Farms LLC and Huron River Properties, Inc. (as described in the Settlement Agreement); and (4) other subject matter more fully defined in the Settlement Agreement.

## LEGAL DISCUSSION

### Standard of Review

23. Bankruptcy Rule 9019(a) authorizes a bankruptcy court to approve compromises or settlements as follows:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

24. A bankruptcy court has "an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is fair and equitable." *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988). *See also In re Horvath*, No. 13-34137, 2015 Bankr. LEXIS 654, at *27 (N.D. Ohio Mar. 3, 2015) (quoting *Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968)).

25. A trustee has the burden of persuading a court that a compromise is fair and equitable, and thus should be approved. *Horvath*, 2015 Bankr. LEXIS 654, at *29 (citation omitted).

26. Courts consider the following factors when determining whether a compromise or settlement is fair and equitable:

(1) the probability of success in litigation;
(2) the difficulties, if any, to be encountered in collecting any judgments that might be rendered;
(3) the complexity of the litigation involved, as well as the expense, inconvenience and delay necessarily attendant to the litigation; and
(4) the paramount interests of creditors with proper deference to their reasonable views.

*McGraw v. Yelverton (In re Bell & Beckwith)*, 87 B.R. 476, 478 (N.D. Ohio 1988) (citation omitted).

27. In considering these factors, a court "does not resolve disputed factual and legal issues, nor should it substitute its judgment for that of the trustee," but it should "canvass the issues and determine whether the proposed settlement "'falls below the lowest point in the range of reasonableness.'" *Horvath*, 2015 Bankr. LEXIS 654, at *28–29 (quoting *McGraw*, 87 B.R. at 478–79; *In re Nicole Gas Prod., Ltd.*, 518 B.R. 429, 441 (Bankr. S.D. Ohio 2014)). In other words, a court must inquire whether the compromise is in the best interest of the estate. *McGraw*, 87 B.R. at 478.

**Application**

Probability of Success in Litigation

28. This factor weighs in favor of approval of the Settlement. The Trustee recognizes challenges to prevailing upon the Lake County Probate Court to require the Co-Trustees to provide prompt and thorough updated appraisals of all 20 closely-held companies at the expense of the JTO Estate. The Trustee, moreover, recognizes challenges in persuading the Lake County Probate Court that the Co-Executors should be deemed to have offset the debt owed to the JTO Estate before the additional loans of cash to the Debtor were made, thereby reducing the interest owed and attorneys' fees claimed by the Co-Executors and increasing the Net Possible Debtor's Inheritance. The JTO Estate has been pending for over six years. The Lake County Probate Court granted the Co-Executors twelve extensions of time to file their initial inventory in the case and four extensions of time to file their first partial account—and account which was not filed until over six years after JTO's death. The Lake County Probate Court also allowed payment of over $2 million dollars in attorney's fees to the co-executors' counsel and nearly $3 million dollars in

fiduciary fees to the co-executors before that first partial account was filed and largely before the first inventory was filed. In addition, the Lake County Probate Court did not see any reason to deny the Co-Executors' Application to Distribute In-Kind assets primarily to themselves while determination of the amount due and owing to the Trustee from the JTO Estate was undetermined and scheduled for mediation. Continued litigation in the Lake County Probate Court would require the Trustee to expend significant funds and would likely be unsuccessful.

Difficulty in Collecting Judgment

29. This factor weighs heavily in favor of approval of the Settlement. As set forth above, the Lake County Probate Court has shown little interest in expediting final distribution and closing of the JTO Estate. The JTO Estate administration could continue indefinitely and the value of the closely-held companies that make up the majority of the value of the JTO Estate—whose current market value is unknown—could evaporate during the continued dispute. Moreover, even if an agreed percentage of the JTO Estate assets were distributed to the Trustee in-kind, she would then have to liquidate those minority interests at a heavy discount. Because the mostly likely buyers of the shares are the Co-Executors (who all own shares in the same companies), they may refuse to redeem them at all or only at a significantly discounted value. The Trustee may be forced to hold the shares indefinitely or sell them at a value lower than the value received in the Settlement Agreement. The costs of continued negotiation, discovery, and legal briefing as well as appraisals of 20 closely-held companies all weigh heavily in favor of settlement.

Complexity, Expense, and Inconvenience of Litigation

30. This factor weighs in favor of approval of the Settlement. As explained above, absent a settlement, the Trustee will expend significant additional time and expense in discovery, negotiation, briefing, and argument relating to the uncertain value of the

Net Possible Debtor Inheritance. As evidenced by the fact that it took five months to negotiate and obtain an executed settlement agreement with the Co-Executors after agreeing to material terms at a mediation in October 2020, it is clear that continued dealings with the Co-Executors regarding any topic will be inordinately time-consuming and costly. Therefore, the expense and delay of the continued litigation support approval of the Settlement.

### Interests of Creditors

31. This factor weighs in favor of approval of the Settlement. Here, the compromise will avoid both the time and administrative expenses associated with litigating over the Net Possible Debtor Inheritance and the disputed interests in the PA Insurance Proceeds. The Settlement will provide the Debtor's estate with an immediate and certain value of **$739,000.00 in cash** and a release of any claims in the $161,408.92 of the PA Insurance Proceeds the Trustee is presently holding from which distributions may be made, while curtailing administrative expenses. If the Settlement is not approved, there is a significant likelihood that the Debtor's bankruptcy estate will continue incur substantial administrative expenses and may recover nothing. If she is able to force a recovery following expenditure of those additional administrative expenses, she may not be able to liquidate its value at the same value provided by the Settlement Agreement. The creditors of the bankruptcy estate will be benefited by the compromise.

For the foregoing reasons, the Trustee requests that the Court enter an order approving this compromise as set forth in this Motion.

Respectfully submitted,

/s/ Marcel C. Duhamel
Marcel C. Duhamel (0062171)
Elia O. Woyt (0074109)
Carrie M. Brosius (0075484)
VORYS, SATER, SEYMOUR AND PEASE LLP

200 Public Square, Suite 1400
Cleveland, Ohio 44114
(216) 479-6100
(216) 479-6060 (facsimile)
mcduhamel@vorys.com
eowoyt@vorys.com
cmbrosius@vorys.com

*Counsel to the Trustee*

**CERTIFICATE OF SERVICE**

I certify that on March 17, 2021, a copy of the foregoing *Trustee's Motion for Approval of Compromise* was served via the Court's Electronic Case Filing System on the following who are listed on the Court's Electronic Mail Notice List:

- Patrick R. Akers    prakers@vorys.com
- Gregory P. Amend    gamend@bdblaw.com, grichards@bdblaw.com
- Alison L. Archer    alison.archer@ohioattorneygeneral.gov, Trish.Lazich@ohioattorneygeneral.gov;angelique.dennis-noland@ohioattorneygeneral.gov
- Richard M. Bain    rbain@meyersroman.com, mnowak@meyersroman.com;jray@meyersroman.com
- Adam S. Baker    abakerlaw@sbcglobal.net, adam@bakerlaw.us;abakerlaw@gmail.com
- Austin B. Barnes    abarnes@sandhu-law.com, bk1notice@sandhu-law.com
- Robert D. Barr    rbarr@koehler.law, syackly@koehler.law
- Jeffrey W. Bieszczak    jwbieszczak@vorys.com
- David T. Brady    DBrady@Sandhu-Law.com, bk1notice@sandhu-law.com
- Carrie M. Brosius    cmbrosius@vorys.com, mdwalkuski@vorys.com
- Kari B. Coniglio    kbconiglio@vorys.com, mdwalkuski@vorys.com;kbc@trustesolutions.net;jncash2@vorys.com
- LeAnn E. Covey    bknotice@clunkhoose.com
- Richard W. DiBella    rdibella@dgmblaw.com
- Melody A. Dugic    mgazda@hendersoncovington.com
- Marcel C. Duhamel    mcduhamel@vorys.com, mdwalkuski@vorys.com
- Douglas M. Eppler    deppler@walterhav.com
- Bryan J. Farkas    bjfarkas@vorys.com, bjfarkas@vorys.com;caujczo@vorys.com;mdwalkuski@vorys.com
- Matthew D. Fazekas    mdfazekas@vorys.com
- Scott D. Fink    ecfndoh@weltman.com
- Glenn E. Forbes    bankruptcy@geflaw.net, gforbes@geflaw.net;r45233@notify.bestcase.com
- Stephen R. Franks    amps@manleydeas.com
- Stephen John Futterer    sjfutterer@sbcglobal.net, r43087@notify.bestcase.com
- Marc P. Gertz    mpgertz@gertzrosen.com, dmichna@gertzrosen.com
- Michael R. Hamed    mhamed@kushnerhamed.com, kgross@kushnerhamed.com
- Heather E. Heberlein    hheberlein@porterwright.com, mvitou@porterwright.com
- Dennis J. Kaselak    dkaselak@peteribold.com, Cynthia@peteribold.com
- Christopher J. Klym    bk@hhkwlaw.com
- Jerry R. Krzys    jkrzys@hendersoncovington.com, jerrykrzys@gmail.com
- Scott B. Lepene    scott.lepene@thompsonhine.com, Christine.Broz@thompsonhine.com;ECFDocket@thompsonhine.com
- Jeffrey M. Levinson    jml@jml-legal.com

- Matthew H. Matheney    mmatheney@porterwright.com, cpeskar@porterwright.com
- Shannon M. McCormick    bankruptcy@kamancus.com
- Michael J. Moran    mike@gibsonmoran.com, moranecf@gmail.com;r55982@notify.bestcase.com
- Heather L. Moseman    heather@mosemanlaw.com
- Kelly Neal    kelly.neal@bipc.com, donna.curcio@bipc.com
- David M. Neumann    dneumann@meyersroman.com, jray@meyersroman.com;mnowak@meyersroman.com
- Timothy P. Palmer    timothy.palmer@bipc.com, donna.curcio@bipc.com
- Drew T. Parobek    dtparobek@vorys.com, mdwalkuski@vorys.com
- Tricia L. Pycraft    tpycraft@ccj.com, bowman@ccj.com
- Kirk W. Roessler    kroessler@walterhav.com, kballa@walterhav.com;slasalvia@walterhav.com;deppler@walterhav.com
- John J. Rutter    jrutter@ralaw.com
- Frederic P. Schwieg    fschwieg@schwieglaw.com
- Michael J. Sikora    msikora@sikoralaw.com, aarasmith@sikoralaw.com
- Nathaniel R. Sinn    nsinn@porterwright.com, cpeskar@porterwright.com
- Robin L. Stanley    rstanley@peteribold.com, Sonya@peteribold.com;Cynthia@peteribold.com;5478@notices.nextchapterbk.com
- Rachel L. Steinlage    rsteinlage@meyersroman.com, jray@meyersroman.com;mnowak@meyersroman.com;rbain@meyersroman.com
- Richard J. Thomas    rthomas@hendersoncovington.com, mgazda@hendersoncovington.com
- Stephen G. Thomas    steve@sgtlaw.net, kim@sgtlaw.net
- Andrew M. Tomko    atomko@sandhu-law.com, bk1notice@sandhu-law.com
- Jeffrey C. Toole    jtoole@bernsteinlaw.com, lyoung@bernsteinlaw.com
- United States Trustee    (Registered address)@usdoj.gov
- Michael S. Tucker    mtucker@ulmer.com
- Phyllis A. Ulrich    bankruptcy@carlisle-law.com, bankruptcy@carlisle-law.com
- Leslie E. Wargo    Leslie@Wargo-Law.com
- Karey Werner    kewerner@vorys.com
- Elia O. Woyt    eowoyt@vorys.com, eowoyt@vorys.com;mdwalkuski@vorys.com
- Maria D. Giannirakis ust06    maria.d.giannirakis@usdoj.gov
- Scott R. Belhorn ust35    Scott.R.Belhorn@usdoj.gov

/s/ Marcel C. Duhamel
Marcel C. Duhamel (0062171)