WWR# 040023265

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 17-17361 |
| | ) | |
| RICHARD M OSBORNE | ) | CHAPTER 13 |
| | ) | |
| DEBTOR | ) | JUDGE ARTHUR I. HARRIS |
| | ) | |
| | ) | |

**LIMITED RESPONSE OF ERIEBANK TO TRUSTEE'S FIRST MOTION FOR ENTRY
OF ORDER AUTHORIZING AND APPROVING SALE OF EQUITY INTERESTS
(DOCKET #1194)**

Now comes ErieBank, by and through counsel and for its Limited Response to Trustee's

First Motion for Entry of Order Authorizing and Approving Sale of Equity Interests (docket #1194)

states as follows:

1.  ErieBank is the holder of a mortgage, which was executed and delivered by Achievement,

    Ltd., as to real property located at 6730-6738 Center Street, Mentor, Ohio which mortgage

    was recorded on August 23, 2016 as Instrument No. 2016R021902 with the Lake County

    Recorders Office.

2.  ErieBank's mortgage secures a Promissory Note, dated August 23, 2016, which was

    executed by Tatonka Oil Company, LLC, which loan is in default.

3.  ErieBank has initiated a Foreclosure action upon the Note and Mortgage in the Lake County

    Court of Common Pleas.

4. Trustee has filed a Motion for Entry of Order Authorizing and Approving Sale of Equity Interests (docket #1194), which includes a purported equity interest of Richard M. Osborne in Achievement, Ltd.

5. ErieBank is filing this Limited Response to put potential purchasers on notice as to the existence of its lien upon real property owned by Achievement, Ltd and to put potential purchasers on notice as to the pending foreclosure action, wherein Achievement, Ltd is named as a Defendant. A copy of the Complaint for Foreclosure is attached as Exhibit

WELTMAN, WEINBERG & REIS CO., L.P.A.

/s/ Scott D. Fink
Scott D. Fink  (0069022)
Attorney for ERIEBANK
Weltman, Weinberg & Reis Co., L.P.A.
965 Keynote Circle
Cleveland, OH 44131
216-739-5644
sfink@weltman.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2022 a true and correct copy of the foregoing Limited Response of ErieBank to Trustee's First Motion for Entry of Order Authorizing and Approving Sale of Equity Interests (docket #1194) was served:

Via the court's Electronic Case Filing System on these entities and individuals who are listed on the court's Electronic Mail Notice List:

Kari B. Coniglio, Trustee at kbconiglio@vorys.com

Gregory M. Dennin, Attorney for Debtor at greg@gmdlplaw.com

Office of the U. S. Trustee

and by regular U.S. Mail, postage prepaid, to:

RICHARD M OSBORNE
7020 Williams Rd
Concord, OH 44077

 /s/ Scott D. Fink
Scott D. Fink  (0069022)
Attorney for ERIEBANK
Weltman, Weinberg & Reis Co., L.P.A.
965 Keynote Circle
Cleveland, OH 44131
216-739-5644
sfink@weltman.com

WWR# 10151935-2

# Exhibit A

IN THE COURT OF COMMON PLEAS
LAKE COUNTY, OHIO

| | |
|---|---|
| ERIEBANK, A DIVISION OF CNB BANK<br>7402 CENTER STREET<br>MENTOR, OH 44060 | CASE NO. |
| | JUDGE: |
|      Plaintiff | |
| vs. | |
| | **COMPLAINT FOR<br>FORECLOSURE IN REM** |
| ACHIEVEMENT, LTD<br>6730-6738 CENTER STREET<br>MENTOR, OH 44060 | |
| | 16C077I000090 and 16C077I000100 |
| OSAIR, INC.<br>C/O RICHARD M. OSBORNE,<br>STATUTORY AGENT<br>7001 CENTER STREET<br>MENTOR, OH 44060 | |
| JTO MATERIALS, LLC<br>C/O RAR STATUTORY SERVICE CORP.,<br>STATUTORY AGENT<br>6685 BETA DRIVE<br>CLEVELAND, OH 44143 | |
| LAKE COUNTY TREASURER<br>105 MAIN STREET<br>PAINESVILLE, OH 44077 | |
|      Defendants | |

    1.    Plaintiff is the holder of a Promissory Note, a copy of which is attached as Exhibit

A, which was executed on or about August 23, 2016 by Tatonka Oil Company LLC, that by

reason of default in the terms of said Promissory Note and the Mortgage securing sa

    2.    Payments have not been made as required by the Promissory Note's terms, and

therefore, Plaintiff has declared said indebtedness due in the amount of $804,231.16 plus interest at principal sum of $721,699.90 plus interest at a variable rate, currently 5.99% per annum, from January 1, 2021.

3.      Plaintiff is the holder of a Mortgage, a copy of which is attached hereto as Exhibit B, which was executed and delivered by Achievement, LTD., to secure the indebtedness.

4.      The Mortgage was recorded on August 23, 2016, as Instrument No. 2016R021902 in Lake County Records, and thereby became and is the first lien after real estate taxes on the real property described therein.

5.      The conditions of the Mortgage have been broken, and therefore, the Mortgage has become absolute as Plaintiff has fulfilled all applicable conditions precedent.

6.      Pursuant to the covenants and conditions of the Mortgage, Plaintiff may from time to time prior to or during the pendency of this action, advance funds to pay real estate taxes, hazard insurance premiums or for property protection.

7.      The Defendants named herein have or may claim to have interests in said premises.

8.      Defendant, Lake County Treasurer, has or may claim to have an interest in the real property described in Plaintiff's Mortgage, by virtue of real estate taxes.

9.      Defendant, Osair Inc. may have or claim to have a mortgage subordinate to Plaintiff's mortgage, which we recorded on May 21, 2019 as Instrument No. 2019R011222.

10.      Defendant, JTO Materials, LLC, may have or claim to have a mortgage subordinate to Plaintiff's mortgage, which we recorded on May 21, 2019 as Instrument No. 2019R011223.

WHEREFORE, Plaintiff demands that it be found to have a first lien on the premises

described herein for the amount owing together with its advances for taxes, hazard insurance premiums or for property protection, plus interest thereon; that all Defendants' equity of redemption be foreclosed; that all Defendants be required to appear in this action and assert their interests in said premises or be forever barred from asserting any interest therein; that all liens on said premises be marshaled and their priorities determined; that said premises be sold as upon execution and the proceeds of said sale be applied according to law; and costs.

Weltman, Weinberg & Reis Co., L.P.A.

/s/ Larry R. Rothenberg
Larry R. Rothenberg #0011146
Benjamin N. Hoen #0077704
Nathan R. Duvelius #0095144
Ricardo Johnstone #0090721
Attorney for Plaintiff
965 Keynote Circle
Cleveland, OH 44131-1829
Phone: 216-739-5100 Fax: 216-363-4034
email: lrothenberg@weltman.com

# TERM NOTE

$824,800

Cleveland, Ohio

August 23, 2016

FOR VALUE RECEIVED, the undersigned ACHIEVEMENT, LTD., an Ohio limited liability company ("Achievement"), TATONKA OIL COMPANY LLC, an Ohio limited liability company ("Tatonka" and together with Achievement, collectively, "Borrowers" and each individually a "Borrower"), jointly and severally promise to pay, in accordance with the terms of the Credit Agreement (as hereinafter defined), to the order of ERIEBANK, a division of CNB Bank ("Bank") at its main office at, 7402 Center Street, Mentor, OH 44060, or at such other place as Bank shall designate, the principal sum of:

EIGHT HUNDRED TWENTY FOUR THOUSAND EIGHT HUNDRED AND 00/100..............................DOLLARS

in lawful money of the United States of America. As used herein, "Credit Agreement" means the Credit and Security Agreement dated as of even date herewith, among Borrowers and Bank, as the same may from time to time be amended, restated or otherwise modified. Capitalized terms used herein shall have the meanings ascribed to them in the Credit Agreement.

Borrowers also promise to pay interest on the unpaid principal amount of the Term Loan from time to time outstanding, from the date of the Term Loan until the payment in full thereof, at the rates per annum which shall be determined in accordance with the provisions of Section 2.1 of the Credit Agreement. Such interest shall be payable on each date provided for in such Section 2.1; provided, however, that interest on any principal portion which is not paid when due shall be payable on demand.

If this Term Note (this "Note") shall not be paid at maturity, whether such maturity occurs by reason of lapse of time or by operation of any provision for acceleration of maturity contained in the Credit Agreement, the principal hereof and the unpaid interest thereon shall bear interest, until paid, at a rate per annum equal to the Default Rate. All payments of principal of and interest on this Note shall be made in immediately available funds. In the event of a failure to pay interest or principal, within 15 days of the date the same becomes due, Bank may collect and Borrowers agree to pay a late charge of an amount equal to five percent (5%) of the amount of such late payment.

This Note is the Term Note referred to in the Credit Agreement. Reference is made to the Credit Agreement for a description of the right of the undersigned to anticipate payments hereof, the right of the holder hereof to declare this Note due prior to its stated maturity, and other terms and conditions upon which this Note is issued.

Except as expressly provided in the Credit Agreement, each Borrower expressly waives presentment, demand, protest and notice of any kind.

The undersigned authorizes any attorney at law at any time or times after the maturity hereof (whether maturity occurs by lapse of time or by acceleration) to appear in any state or federal court of record in the United States of America, to waive the issuance and service of process, to admit the maturity of this Note and the nonpayment thereof when due, to confess judgment against the undersigned in favor of the holder of this Note for the amount then appearing due, together with interest and costs of suit, and thereupon to release all errors and to waive all rights of appeal and stay of execution. The foregoing warrant of attorney shall survive any judgment, and if any judgment be vacated for any reason, the holder hereof nevertheless may thereafter use the foregoing warrant of attorney to obtain an additional judgment or judgments against the undersigned. The undersigned agrees that Bank's attorney may confess judgment pursuant to the foregoing warrant of attorney. The undersigned further agrees that the attorney confessing judgment pursuant to the foregoing warrant of attorney may receive a legal fee or other compensation from Bank.

[The remainder of this page is intentionally left blank.]

9448810 v1

IN WITNESS WHEREOF, the parties have signed this Note as of the date first written above.

BORROWERS:

ACHIEVEMENT, LTD.

By: _____

Print Name: Richard M. Osborne, Sr., Trustee, Richard M. Osborne Trust, as amended

Title: Managing Member

> "WARNING -- BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE."

TATONKA OIL COMPANY LLC

By: _____

Print Name: Richard M. Osborne, Sr., Trustee, Richard M. Osborne Trust, as amended

Title: Managing Member

> "WARNING -- BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE."

[Signature Page to Term Note]

9448810 v1

Exhibit B

*2016R021902 21*

2016R021902

LAKE COUNTY OHIO
RECORDED ON
08/23/2016    01:52:53PM

ANN M. RADCLIFFE
LAKE COUNTY RECORDER
REC FEE:       $180.00
PAGES:  21

OPEN-END MORTGAGE, ASSIGNMENT OF LEASES
AND RENTS AND FIXTURE FILING

<u>Maximum Principal Amount Not to Exceed $824,800</u>

THIS OPEN-END MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING (as the same may from time to time be amended, restated or otherwise modified, this "**Mortgage**") is made as of August 23, 2016, between ACHIEVEMENT, LTD., an Ohio limited liability company, with an address of 7001 Center Street, Mentor, OH 44060 ("**Mortgagor**"), to ERIEBANK, a division of CNB Bank, with an address of 7402 Center Street, Mentor, OH 44060 ("**Bank**").

WHEREAS, Bank, Mortgagor and TATONKA OIL COMPANY LLC an Ohio limited liability company ("**Tatonka**" and together with Mortgagor, collectively, "**Borrowers**") are parties to an Credit and Security Agreement of even date herewith (as the same may from time to time be amended, restated or otherwise modified, the "**Credit Agreement**") pursuant to which Bank will, among other things, grant to Borrowers certain loans and other extensions of credit pursuant to the Credit Agreement. The capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Credit Agreement;

WHEREAS, Mortgagor understands that Bank is willing to enter into the Credit Agreement and to grant such financial accommodations to Borrowers only upon certain terms and conditions as set forth therein, one of which is that Mortgagor execute and deliver this Mortgage and this Mortgage is being executed and delivered in consideration of each financial accommodation, if any, granted to Borrowers by Bank pursuant to the Credit Agreement and for other valuable considerations.

TO SECURE TO BANK payment in full of all of the Obligations, as hereinafter defined, Mortgagor does hereby mortgage, grant, convey and assign to Bank the real property described in **Exhibit "A"** attached hereto and made a part hereof, together with all present and future right, title and interest of Mortgagor therein or in any way appertaining thereto, and all buildings, improvements and tenements now or hereafter erected on the real property, and all heretofore or hereafter vacated alleys and streets abutting the real property, and all

9378512 v2

easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock appurtenant to the real property, and all fixtures, machinery, equipment, engines, boilers, incinerators, building materials, appliances and goods of every nature whatsoever now or hereafter owned by Mortgagor and located in, or on, or used, or intended to be used in connection with the real property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; all cranes and materials handling equipment, if any; and all elevators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, fixtures, equipment, if any; and all rentals, revenues, payments, repayments, deposits, income, charges and moneys derived from the use, lease, sublease, rental or other disposition of the real property and the proceeds from any insurance or condemnation award (or payment in lieu of a condemnation award) pertaining thereto, if any; and all other property (tangible and intangible) now owned or hereafter acquired by Mortgagor and used in, on or about the subject real property or arising from the operation of the real property, all of which, including replacements and additions thereto and proceeds therefrom, shall be deemed to be and remain a part of the real property covered by this Mortgage; and all of the foregoing, including said real property, are herein referred to as the "**Property**".

Mortgagor represents and warrants that (i) Mortgagor is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, convey and assign the Property, (ii) the Property is unencumbered except for the matters approved by Bank and described on **Exhibit "B"** attached hereto and made a part hereof ("**Permitted Encumbrances**"), and (iii) Mortgagor will warrant and defend generally the title to the Property against all claims and demands whatsoever, except as aforesaid.

Mortgagor and Bank covenant and agree as follows:

1. PAYMENT OF OBLIGATIONS. Mortgagor shall promptly pay, or cause to be paid, when due all of the following (collectively, the "**Obligations**"): (a) all Secured Debt; (b) all other indebtedness now owing or hereafter incurred by Borrowers to Bank pursuant to the Credit Agreement and any promissory notes executed in connection therewith; (c) each renewal, extension, consolidation or refinancing of any of the foregoing, in whole or in part; (d) all interest from time to time accruing on any of the foregoing, and all commitment and other fees payable pursuant to the Credit Agreement; and (e) all costs and expenses, including reasonable attorneys' fees, incurred by Bank (or any of its affiliates) in connection with the enforcement of the Credit Agreement or in connection with the collection of any portion of the indebtedness described in (a), (b), (c) or (d) hereof. LAKE COUNTY TITLE, LLC

Order No. _1607721B_

2

2.    OPEN-END MORTGAGE. This Mortgage is an Open-End Mortgage under Section 5301.232 of the Ohio Revised Code and is intended to secure all of the Obligations after this Mortgage has been delivered to the appropriate County Recorder's office for recordation. This Mortgage shall secure the maximum principal amount of up to Eight Hundred Twenty-Four Thousand Eight Hundred and 01/100 Dollars ($824,800) together with interest thereon and such other amounts as shall become due and owing pursuant to the Credit Agreement, this Mortgage, or any other Loan Document. If and to the extent applicable and permitted by applicable law, Mortgagor hereby waives any rights it might have under Section 5301.232(C) of the Ohio Revised Code. In addition to the loan advance referred to above, Bank shall have the right, but not the obligation, upon an Event of Default under the Credit Agreement to make protective advances with respect to the Property for the payment of property taxes, assessments, insurance premiums or expenses incurred to protect and preserve the Property, as contemplated by Section 5301.233 of the Ohio Revised Code, and such protective advances, together with interest thereon (at the Default Rate) of each such advance until it is repaid in full, shall be secured by this Mortgage to the fullest extent and with the highest priority contemplated by Section 5301.233 of the Ohio Revised Code. This paragraph shall serve as notice to all persons who may seek or obtain a lien on the Property subsequent to the date of recording of this Mortgage, that until this Mortgage is released, any debt owed Bank by Mortgagor, including advances made subsequent to the recording of this Mortgage, shall be secured with the priority afforded this Mortgage as recorded.

3.    FUNDS FOR TAXES, INSURANCE AND OTHER CHARGES. Mortgagor shall pay to Bank on the first day of each month until the Obligations have been paid in full, a sum equal to one-twelfth of the taxes and assessments that may be levied on the Property, In addition, if an Event of Default has occurred, Bank may require Mortgagor to pay to Bank in advance on the first day of each month, until the Obligations have been paid in full, a sum equal to one-twelfth of (a) the yearly water and sewer rates and assessments that may be levied on the Property and (b) the yearly premium installments for fire and other hazard insurance, rent loss insurance (if applicable) and such other insurance covering the Property as Bank may reasonably require pursuant to the Credit Agreement, all as reasonably estimated initially and from time to time by Bank on the basis of assessments and bills and reasonable estimates thereof. All payments made by Mortgagor pursuant to the two immediately preceding sentences shall be referred to as the "**Funds**". Any waiver by Bank of a requirement that Mortgagor pay such Funds may be revoked by Bank, in Bank's sole discretion, at any time upon notice in writing to Mortgagor. Upon an Event of Default, Bank may require Mortgagor to pay to Bank, in advance, such other Funds for other taxes, charges, premiums, assessments and impositions in connection with Mortgagor or the Property that Bank shall reasonably deem necessary to protect Bank's interests (herein "**Other Impositions**"). Unless otherwise provided by applicable law, Bank, at Bank's option, may require Funds for Other Impositions to be paid by Mortgagor in a lump sum (not exceeding Other Impositions due for a one-year period) or in periodic installments.

9378512 v2

The Funds shall be held by Bank and shall be applied to pay such water and sewer rates, rents, taxes, assessments and insurance premiums and Other Impositions so long as no Event of Default under Section 8.1 of the Credit Agreement has occurred. Bank shall make no charge for so holding and applying the Funds, analyzing such account or for verifying and compiling said assessments and bills, unless Bank pays Mortgagor interest, earnings or profits on the Funds and applicable law permits Bank to make such a charge. Bank shall give to Mortgagor, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to such Funds was made. The Funds are pledged as additional security for the Obligations and shall be subject to the Bank's right of set off.

If the amount of the Funds held by Bank at the time of the annual accounting thereof shall exceed the amount reasonably deemed necessary by Bank to provide for the payment of water and sewer rates, taxes, assessments, insurance premiums, rents and Other Impositions as they fall due, Bank (in its reasonable discretion) may either (i) return the amount of the excess to Mortgagor or (ii) apply a part or all of such excess at such time or times as it may elect to the Obligations. If, at any time, the amount of the Funds held by Bank shall be less than the amount reasonably deemed necessary by Bank to pay water and sewer rates, taxes, assessments, insurance premiums, rents and Other Impositions, as they fall due, Mortgagor shall, on written demand, pay such deficiency except in the event the shortfall is due to an application of the Funds pursuant to (ii) of the prior sentence. Upon the occurrence of an Event of Default, Bank may apply, in any amount and in any order as Bank shall determine in Bank's reasonable discretion, any Funds held by Bank at the time of application to pay water and sewer rates, rents, taxes, assessments, insurance premiums and Other Impositions that are now or will hereafter become due. Upon release of this Mortgage, Bank shall promptly refund to Mortgagor any Funds held by Bank.

4. CHARGES; MECHANICS LIENS. Mortgagor shall pay all water and sewer rates, taxes, assessments, insurance premiums, and Other Impositions (subject to Mortgagor's right to diligently contest the same if more particularly provided in the Credit Agreement), attributable to the Property. Mortgagor shall promptly discharge any lien that has, or may have, priority over or equality with, the lien of this Mortgage, other than Permitted Encumbrances except as permitted in Section 5.9 of the Credit Agreement.

If a mechanic's lien is filed against the Property, Mortgagor shall promptly notify Bank and, at Bank's request, shall, at Mortgagor's option, either (i) escrow with Bank or, with the consent of Bank, deposit in a court of competent jurisdiction a sum of money equal to the amount of the lien, or (ii) provide a bond against the lien in such amount and in such manner as to discharge the lien as an encumbrance against the Property. Without Bank's prior written consent which shall not be unreasonably withheld, conditioned or delayed or except as permitted in Section 5.9 of the Credit Agreement, Mortgagor shall not allow any lien, encumbrance, or other interest in the Property to be perfected against the Property, other than

4

Permitted Encumbrances, unless Mortgagor is then diligently contesting same and has, as to the lien, encumbrance or interest being contested, complied with (i) or (ii) of the preceding sentence.

5. **PRESERVATION AND MAINTENANCE OF PROPERTY.** Mortgagor (a) shall not commit waste or permit impairment or deterioration of the Property; (b) shall not abandon the Property; (c) shall, unless Bank withholds insurance proceeds as security for or application to the Obligations as provided in Section 5.1 of the Credit Agreement, restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Bank may approve in writing, in the event of any damage, injury or loss thereto, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair unless the improvements constituting the Property are (i) totally destroyed, (ii) insurance has been maintained thereon as required by this Mortgage, or (iii) Bank applies the proceeds of such insurance to payment of the Obligations; (d) shall keep the Property, including improvements, fixtures, equipment, machinery and appliances, in good repair, ordinary wear and tear excepted, and shall replace improvements, fixtures, equipment, machinery and appliances on the Property owned by Mortgagor when necessary to keep such items in good repair; (e) shall comply in all material respects with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property, including, without limitation, the Americans with Disabilities Act, as it may be amended from time to time; and (f) shall give notice in writing to Bank, appear in and defend any action or proceeding purporting to affect the Property, except for any such action or proceeding caused by the gross negligence or intentional misconduct of Bank. Unless required by applicable law or unless Bank has otherwise consented in writing, which consent shall not be unreasonably withheld, conditioned or delayed, neither Mortgagor nor any tenant or other person shall remove, demolish or alter any improvement now existing or hereafter erected on the Property or any fixture (other than trade fixtures), equipment, machinery or appliance in or on the Property owned by Mortgagor and used or intended to be used in connection with the Property except as permitted pursuant to the Credit Agreement or when obsolete or incident to the replacement of improvements, fixtures, equipment, machinery and appliances with items of like kind or of at least equal quality.

6. **USE OF PROPERTY.** Unless required by applicable law or unless Bank has otherwise consented in writing which consent shall not be unreasonably withheld, conditioned or delayed, Mortgagor shall not allow changes in the use for which all or any part of the Property was intended at the time this Mortgage was executed, except as otherwise contemplated by the Credit Agreement. Mortgagor shall not initiate or acquiesce in a change in the zoning classification of the Property without Bank's prior written consent.

7. **PROTECTION OF BANK'S SECURITY.** After an Event of Default, if any action or proceeding is commenced that affects the Property or title thereto or the interest of

5

9378512 v2

Bank therein, including, but not limited to, eminent domain, insolvency, enforcement of local laws, or arrangements or proceedings involving a bankrupt or decedent, then Bank, at Bank's option, may make such appearances, disburse such sums and take such action as Bank reasonably deems necessary to protect Bank's interests, including, but not limited to, (a) disbursement of reasonable attorneys' fees; (b) entry upon the Property to remedy any failure of Mortgagor to perform hereunder; and (c) procurement of satisfactory insurance.

Any amounts disbursed by Bank pursuant to this Section 7, with interest thereon, shall become part of the Obligations and shall be secured by this Mortgage. Unless Mortgagor and Bank agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the Default Rate unless collection from Mortgagor of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Mortgagor under applicable law. Mortgagor hereby covenants and agrees that Bank shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the Obligations. Nothing contained in this Section 7 shall require Bank to incur any expense or take any action hereunder.

8.      CONDEMNATION. Mortgagor shall promptly notify Bank of any action or proceeding relating to any condemnation or other taking of the Property, or part or interest thereof, and Mortgagor shall appear in and prosecute any such action or proceeding and settle or compromise such claim unless Bank elects to appear in and prosecute such action. Mortgagor authorizes Bank, upon the occurrence of an Event of Default, at Bank's option, as attorney-in-fact for Mortgagor, to commence, appear in and prosecute, in Bank's or Mortgagor's name, any action or proceeding relating to any condemnation or other taking of the Property, or part or interest thereof, and to settle or compromise any claim in connection with such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Bank.

With the consent of Bank, which consent may be withheld in Bank's reasonable discretion, Mortgagor may apply such awards, payments, proceeds or damages, after the deduction of Bank's expenses incurred in the collection of such amounts, to restoration or repair of the Property. Otherwise such sums so received shall be applied to payment of the Obligations.

9.      ESTOPPEL CERTIFICATE. Mortgagor shall, within fourteen (14) days of a written request from Bank, furnish Bank with a written statement, setting forth, to the knowledge of Mortgagor, the sums secured by this Mortgage and any right of set-off, counterclaim or other defense that exists against such sums and any Obligations.

6

9378512 v2

10. UNIFORM COMMERCIAL CODE AND FIXTURE FILING. This Mortgage shall also constitute a "fixture filing" under the Uniform Commercial Code as adopted in Ohio for the purpose of perfecting Bank's security interest in all of Mortgagor's property now owned or hereafter acquired which is or becomes a "fixture" to the Property under the Uniform Commercial Code as adopted in Ohio, with the names and addresses of the "debtor" and "secured party" for such purpose being:

|  |  |
|---|---|
| Debtor: | Achievement, Ltd.<br>7001 Center Street<br>Mentor, OH 44060<br>Attn: Richard M. Osborne, Sr. |
| Secured Party: | ErieBank, a division of CNB Bank<br>7402 Center St.<br>Mentor, Ohio 44060<br>Attn: Andrew Meinhold |

11. LEASES OF THE PROPERTY. Mortgagor shall comply with and observe Mortgagor's obligations as landlord or as tenant, as the case may be, under any leases of the Property or any part thereof. Mortgagor shall furnish Bank with executed copies of the leases hereafter made of all or any part of the Property, and all leases and all amendments, modifications to or terminations of any of same hereafter entered into will be subject to Bank's prior written approval, which approval shall not be unreasonably withheld, conditioned or delayed, . Unless otherwise directed by Bank, all leases of the Property made after the date hereof shall specifically provide that such leases are subordinate to this Mortgage; that the tenant attorns to Bank, such attornment to be effective upon Bank's acquisition of title to the Property; that the tenant agrees to execute such further evidences of subordination and attornment as Bank may from time to time reasonably request; and that the attornment of the tenant shall not be terminated by foreclosure. Mortgagor shall not, without Bank's written consent, execute, materially modify, surrender or terminate, either orally or in writing, any lease hereafter made of all or any part of the Property, permit an assignment or sublease of such a lease, or request or consent to the subordination of any lease of all or any part of the Property to any lien subordinate to this Mortgage, which consent shall not be unreasonably withheld, conditioned or delayed. If Mortgagor becomes aware that any tenant proposes to do, or is doing, any act or thing that may give rise to any right to set-off against rent, Mortgagor shall (a) take such steps as shall be reasonably calculated to prevent the accrual of any right to a set-off against rent, (b) notify Bank thereof and of the amount of said set-offs, and (c) within twenty (20) days after such accrual, reimburse the tenant who shall have acquired such right to set-off or take such other steps as shall effectively discharge such set-off and as shall assure that rents thereafter due shall continue to be payable without set-off or deduction.

7

9378512 v2

12. REMEDIES CUMULATIVE. Each remedy provided in this Mortgage is distinct and cumulative to all other rights or remedies under this Mortgage, the Credit Agreement, or any other Loan Document or Related Writing, or afforded by law or in equity, and may be exercised concurrently, independently, or successively, in any order whatsoever.

13. TRANSFERS OF THE PROPERTY; CHANGES IN CONTROL OR OWNERSHIP OF MORTGAGOR. Except as expressly permitted pursuant to the Credit Agreement, Mortgagor shall not (a) voluntary or involuntary sell, exchange, assign, convey, transfer or otherwise dispose of all or any portion of the Property (or any interest therein), or all or any of the beneficial ownership interest in Mortgagor, or (b) convey to any party, other than Bank, a security interest in the Property or any part thereof or voluntarily or involuntarily permit or suffer the Property to be further encumbered to secure the payment of money.

14. CREDIT AGREEMENT PROVISIONS. Mortgagor agrees to comply with the covenants and conditions of the Credit Agreement that are hereby incorporated by reference in and made a part of this Mortgage. All sums disbursed by Bank to protect the security of this Mortgage shall be treated as Related Expenses, as defined in the Credit Agreement. All such sums shall bear interest from the date of disbursement at the Default Rate.

15. NOTICE. Except as otherwise provided herein, whenever notice is required to be given pursuant to the provisions hereof, such notice shall be in writing and, if to Mortgagor, at 7001 Center Street, Mentor, OH 44060, Attn: Richard M. Osborne, Sr., and, if to Bank, at 7402 Center Street, Mentor, Ohio 44060, Attn: Andrew Meinhold, or to such other address as Mortgagor or Bank may hereafter specify by written notice to each other. Each such notice shall be effective and conclusively deemed received (a) if given by facsimile, wire or telex, then when such facsimile, wire or telex is transmitted and such notice is then mailed, first class, postage prepaid, addressed as aforesaid, or (b) if given by overnight courier, the day after being delivered to such overnight courier or (c) if given by any other means, then when delivered at the address specified in this Section 15.

16. SUCCESSORS AND ASSIGNS BOUND; AGENTS; CAPTIONS. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and permitted assigns of Bank and Mortgagor. In exercising any rights hereunder or taking any actions provided for herein, Bank may act through its employees, agents or independent contractors as authorized by Bank. The captions and headings of the Sections of this Mortgage are for convenience only and are not to be used to interpret or define the provisions hereof.

17. GOVERNING LAW; SEVERABILITY. This Mortgage shall be governed by the laws of the State of Ohio, without regard to principles of conflicts of laws. In the event that any provision of this Mortgage conflicts with applicable law, such conflict shall not affect

8

other provisions of this Mortgage that can be given effect without the conflicting provisions, and to this end the provisions of this Mortgage are declared to be severable.

18.     WAIVER OF MARSHALING.  In the event of foreclosure of the lien of this Mortgage and the exercise of the power of sale given herein, the Property may be sold in one or more parcels or as an entirety as Bank may elect.

Notwithstanding the existence of any other security interests in the Property held by Bank or by any other party, Bank shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein.  The power of sale shall not be fully executed until all of the Property has been sold.  Bank shall have the right to determine the order in which any or all of the Obligations are satisfied from the proceeds realized upon the exercise of the remedies provided herein.  Mortgagor, any party that consents to this Mortgage, and any party that now or hereafter acquires a security interest in the Property and that has actual or constructive notice hereof, hereby waives any and all right to require the marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

19.     ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; BANK IN POSSESSION.  Mortgagor hereby absolutely and unconditionally assigns and transfers to Bank all the leases, rents and revenues of the Property, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Property, Mortgagor hereby authorizes Bank or Bank's agents to collect the aforesaid rents and revenues and Mortgagor hereby directs each tenant of the Property to pay such rents to Bank or Bank's agents.  Although this Mortgage is a present assignment, Bank shall not exercise any of the rights or powers herein conferred upon it until an Event of Default shall have occurred.  Upon the occurrence of an Event of Default, and without the necessity of Bank entering upon and taking and maintaining full control of the Property in person, by agent or by a court appointed receiver, Bank shall immediately be entitled to possession of all rents and revenues of the Property as specified in this Section 19 as the same become due and payable (including but not limited to rents then due and unpaid) and all such rents received by Mortgagor shall immediately upon delivery of such notice be held by Mortgagor as trustee for the benefit of Bank only.  Bank shall not be deemed to be a mortgagee in possession as a result of the exercise of such rights by Bank, and the receipt by Bank of such rents and revenues.  This Section 19 may be supplemented by a separate assignment of leases and rents instrument entered into by and between Bank and Mortgagor, which instrument shall set forth more fully Bank's rights with respect to the leases, rents and revenue of the Property and which instrument shall control in the event of a conflict with this Section 19.

20.     ASSIGNMENT OF CONSTRUCTION RIGHTS.  After an Event of Default, as Bank reasonably deems necessary to protect its interests, Mortgagor shall, upon request of

9

9378512 v2

Bank, execute and deliver to Bank in such form as Bank shall reasonably request, assignments of any and all rights or claims that relate to the construction of improvements on the Property and which Mortgagor may have against any party supplying or who has supplied labor, materials or services in connection with construction of the Property.

21. ACCELERATION; REMEDIES. Each of the following shall constitute an Event of Default hereunder, (i) if any Event of Default, as defined in the Credit Agreement, occurs under the Credit Agreement, subject to all applicable grace periods therein, or (ii) if Mortgagor defaults in the performance or observance of any of the covenants or agreements of Mortgagor contained in this Mortgage and such default continues for a period of thirty (30) days after written notice thereof from Bank to Mortgagor (provided, however, that where notice of a default is not required under the Credit Agreement no notice shall be deemed to be required under this Mortgage; provided, however, that Mortgagor shall not be deemed to be in default hereunder so long as Mortgagor does commence to cure such default during said thirty (30) day period and proceeds diligently therewith). After the occurrence of an Event of Default, in addition to any other right or remedy that Bank may now or hereafter have at law or in equity, Bank shall have the right and power: (i) to exercise the statutory power of sale; (ii) to foreclose upon this Mortgage and the lien hereof; (iii) to sell the Property according to law at one or more sales as an entirety or in parcels, if applicable, and at such time and place upon such terms and conditions and after such notices thereof as may be required by law; and (iv) to enter upon and take possession of the Property and/or have a receiver appointed therefor. Bank shall be entitled to collect all reasonable costs and expenses incurred in pursuing such reasonable remedies, including, but not limited to reasonable costs of documentary evidence abstracts, title reports and attorneys' fees.

22. INDEMNIFICATION. Mortgagor shall protect, indemnify and save harmless Bank (and any affiliate of Bank) from and against all liabilities and expenses (including, without limitation, reasonable attorneys' fees and expenses, including those incurred in connection with appellate, bankruptcy and post-judgment proceedings) imposed upon or incurred by or asserted against Bank (or any affiliate of Bank), and not caused by the gross negligence or intentional misconduct of Bank (or such affiliate of Bank) by reason of (a) Bank's interest in the Property or any interest therein or receipt of any rents, (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas or streets and such claim is asserted against Bank by virtue of its interest in the Property created under this Mortgage, except as caused by the gross negligence or willful misconduct of Bank and its agents (c) any use, non-use or condition in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property, parking areas or street and such claim is asserted against Bank by virtue of its interest in the Property created under this Mortgage, or (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage or the other Loan Documents, or (e) the

10

performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof. The obligations of Mortgagor under this Section 22 shall survive any termination or satisfaction of this Mortgage.

23.    HAZARDOUS WASTE COVENANTS AND INDEMNIFICATION.

(a)    Mortgagor covenants and warrants that Mortgagor's use of the Property will at all times comply with and conform in all material respects to all laws, statutes, ordinances, rules and regulations of any governmental, quasi-governmental or regulatory authority now or hereafter in effect ("**Laws**") which relate to the transportation, storage, placement, handling, treatment, discharge, release, generation, production or disposal (collectively "**Treatment**") of any waste, waste products, petroleum or petroleum based products, radioactive materials, poly-chlorinated biphenyls, asbestos, hazardous materials or substances of any kind, pollutants, contaminants and any substance which is regulated by any law, statute, ordinance, rule or regulation (collectively "**Waste**") except to the extent non-compliance is scheduled in the Credit Agreement or the failure to so comply will not cause or result in a material adverse effect on Mortgagor or the Property. Mortgagor further covenants that it will not engage in or permit any party to engage in any Treatment of any Waste on or that affects the Property except for activities which comply with all Laws in all material respects or that will not result in a material adverse effect on Mortgagor or the Property.

(b)    Except as specifically disclosed to Bank in writing in any schedule to the Credit Agreement, the Property is not the subject of any Notice, as hereinafter defined, from any governmental authority or third party.

(c)    Promptly upon receipt of any Notice (and in any event within three (3) Business Days), from any party, Mortgagor shall deliver to Bank a true, correct and complete copy of any written Notice received by Mortgagor or a true, correct and complete report of any non-written Notice. Additionally, Mortgagor shall notify Bank immediately after having knowledge or Notice of any Waste in or affecting the Property. "**Notice**" shall mean any note, notice, information, or report of any of the following, except for any such matters that will not result in a material adverse effect on Mortgagor or the Property:

(i)    any suit, proceeding, investigation, order, consent order, injunction, writ, award or action related to or affecting or indicating the Treatment of any Waste in or affecting the Property;

9378512 v2

(ii)  any spill, contamination, discharge, leakage, release, threatened release, or escape of any Waste in or affecting the Property, whether sudden or gradual, accidental or anticipated, or of any other nature ("**Spill**");

(iii)  any dispute relating to Mortgagor's or any other party's Treatment of any Waste or any Spill in or affecting the Property;

(iv)  any claims by or against any insurer related to or arising out of any Waste or Spill in or affecting the Property;

(v)  any recommendations or requirements of any governmental or regulatory authority, insurer or board of underwriters relating to any Treatment of Waste or a Spill in or affecting the Property;

(vi)  any legal requirement or deficiency related to the Treatment of Waste or any Spill in or affecting the Property; or

(vii)  any tenant, licensee, concessionaire, manager, or other party or entity occupying or using the Property or any part thereof which has engaged in or engages in the Treatment of any Waste in or affecting the Property in violation of applicable Laws.

(d)  Except as otherwise provided hereunder, or in the Credit Agreement, in the event that (i) Mortgagor has caused, suffered or permitted, directly or indirectly, any Spill in or affecting the Property during the term of this Mortgage, or (ii) any Spill of any Waste has occurred on the Property during the term of this Mortgage, then Mortgagor shall immediately take all of the following actions:

(A)  notify Bank, as provided herein;

(B)  take all steps necessary or appropriate to clean up such Spill and any contamination related to the Spill, all in accordance with the requirements, rules or regulations of any local, state or federal governmental or regulatory authority or agency having jurisdiction over the Spill; provided that Mortgagor may contest any such requirement, rule or regulation by appropriate proceedings diligently and in good faith, so long as (1) Mortgagor provides Bank, at Mortgagor's cost, such sureties, performance bonds and other assurances as Bank may from time to time request in respect of such Spill and contamination and the cleanup thereof, (2) any governmental or other action against Mortgagor and the Property is effectively stayed during Mortgagor's efforts so to contest, and (3) in Bank's determination, a delay in such clean-up will not result in or increase any loss or liability to Bank;

12

9378512 v2

(C)     restore the Property to its condition prior to the Spill, provided that such restoration shall be no less than what is otherwise required by applicable federal, state or local law or authorities;

(D)     allow any local, state or federal governmental or regulatory authority or agency having jurisdiction thereof to monitor and inspect all cleanup and restoration related to such Spill; and

(E)     at the written request of Bank, post a bond or obtain a letter of credit for the benefit of Bank (drawn upon a company or bank satisfactory to Bank) or deposit an amount of money in an escrow account under Bank's name upon which bond, letter of credit or escrow Mortgagor may draw, and which bond, letter of credit or escrow shall be in an amount sufficient to meet all of Mortgagor's obligations under this Section 23; and Bank shall have the right to draw against the bond, letter of credit or escrow in its reasonable discretion in the event that Mortgagor is unable or unwilling to meet its obligation under this Section 23 or, if Mortgagor fails to post a bond or obtain a letter of credit or deposit such cash as is required herein, then Bank, at Mortgagor's cost and expense, may, but shall have no obligation to do so for the benefit of Mortgagor, do those things that Mortgagor is required to do under clauses (B), (C) and (D) of this subsection (d).

(e)     Mortgagor hereby agrees that it will indemnify, protect, defend, save and hold harmless Bank and Bank's officers, directors employees, agents, successors, assigns and affiliates (collectively, **"Indemnified Parties"**) against and from, and to reimburse the Indemnified Parties with respect to, any and all damages, claims, liabilities, liens, losses, costs and expenses (including, without limitation, reasonable attorneys', engineers' and consultants' fees and expenses, court costs, administrative costs, costs of appeals and all clean up, administrative, fines, penalties and enforcement costs of applicable governmental agencies) which are incurred by or asserted against the Indemnified Parties by reason or arising out of:  (i) the breach of any representation, warranty or undertaking of Mortgagor under this Section 23, or (ii) the Treatment of any Waste by Mortgagor or any tenant, licensee, concessionaire, manager, or other party occupying or using the Property, in or affecting the Property, or (iii) any Spill governed by the terms of this Section 23.

(f)     The obligations of Mortgagor under Section 23(e) shall survive any termination or satisfaction of this Mortgage.

24.     PRIORITY OF MORTGAGE LIEN.  Bank, at Bank's option, is authorized and empowered to do all things provided to be done by a mortgagee under Section 1311.14 of

9378512 v2

the Revised Code of Ohio, and any present or future amendments or supplements thereto, for the protection of Bank's interest in the Property.

25. UNCONDITIONAL AND CONTINUING SECURITY INTEREST. Mortgagor's obligations under this Mortgage and the granting of a security interest to Bank pursuant to this Mortgage are unconditional and effective immediately, and those obligations and the security interest so granted shall continue in full effect until the Secured Debt shall have been paid in full and thereafter until Bank shall have delivered to Mortgagor (or such other Person or Persons who Bank determines in good faith to be entitled to the same) all Collateral (except any applied to the Secured Debt) in Bank's possession and until each assignment, financing statement, or other writing describing the Collateral or any part thereof and naming Bank (or its successor or assigns, if any) as assignee or secured party, as the case may be, shall have been released or terminated of record as to all of the Collateral therein described, regardless of the lapse of time, regardless of the fact that there may be a time or times when no Secured Debt is outstanding, regardless of any act, omission, or course of dealing whatever on the part of Bank and regardless of any other event, condition, or thing. Without limiting the generality of the foregoing, neither the amount of the Secured Debt for purposes of this Mortgage, nor Mortgagor's obligations under this Mortgage, nor the security interest granted pursuant to this Mortgage shall be diminished or impaired by:

(a) the granting by Bank of any credit to any Obligor, whether or not liability therefor constitutes Secured Debt, or any failure or refusal of Bank to grant any other credit to any Obligor even if Bank thereby breaches any duty or commitment to an Obligor or any other Person,

(b) the application by Bank of credits, payments, or proceeds to any portion of the Secured Debt,

(c) any extension, renewal, or refinancing of the Secured Debt in whole or in part,

(d) any amendment, restatement, or other modification of any kind in, to, or of any Related Writing, or any consent or other indulgence granted to any Obligor, or any waiver of any Event of Default,

(e) any acceptance of security for or any other Obligor on the Secured Debt or any part thereof, or any release of any security or other Obligor, whether or not Bank receive consideration for the release,

(f) any discharge of the Secured Debt in whole or in part under any bankruptcy or insolvency law or otherwise,

(g) the failure of Bank to make any presentment or demand for payment, to assert or perfect any claim, demand, or interest, or to enforce any right or remedy, or

14

17-17361-aih    Doc 1204    FILED 07/14/22    ENTERED 07/14/22 10:58:33    Page 22 of 29

any delay or neglect by Bank in respect of the Secured Debt or any part thereof or any security therefor,

(h)     any failure to give Mortgagor notice of *(i)* the making of any loan or other credit extension or the terms, conditions, and other provisions applicable thereto, *(ii)* any dishonor by any other Obligor, or *(iii)* the inaccuracy or incompleteness of any representation, warranty, or other statement made by any Obligor, or

(i)     any defense that may now or hereafter be available to any Obligor, whether based on suretyship, impairment of collateral, accord and satisfaction, breach of warranty, breach of contract, failure of consideration, tort, lack of capacity, usury, or otherwise, or any illegality, invalidity, or unenforceability of the Secured Debt or any part thereof or of any Related Writing.

26.     NO SETOFF; RIGHTS AGAINST OTHER OBLIGORS.     Mortgagor hereby *(a)* waives all now existing or hereafter arising rights to recoup or offset any obligation of Mortgagor under this Mortgage against any claim or right of Mortgagor against Bank, *(b)* waives all rights of exoneration now or hereafter arising out of or in connection with this Mortgage, and *(c)* agrees that unless and until all of the Secured Debt shall have been paid in full, Mortgagor will not assert against any other Obligor or any other Obligor's property any rights (including, without limitation, contribution, indemnification, reimbursement, and subrogation) now or hereafter arising (whether by contract, operation of law, or otherwise) out of or in connection with this Mortgage.

27.     JURY TRIAL WAIVER.     MORTGAGOR AND BANK WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE, BETWEEN MORTGAGOR AND BANK ARISING OUT OF, IN CONNECTION WITH, RELATED TO, OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED AMONG THEM IN CONNECTION WITH THIS MORTGAGE OR ANY NOTE OR OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR THE TRANSACTIONS RELATED THERETO. THIS WAIVER SHALL NOT IN ANY WAY AFFECT, WAIVE, LIMIT, AMEND OR MODIFY THE ABILITY OF BANK TO PURSUE REMEDIES PURSUANT TO ANY CONFESSION OF JUDGMENT OR COGNOVIT PROVISION CONTAINED IN ANY NOTE, OR OTHER INSTRUMENT, DOCUMENT OR AGREEMENT BETWEEN MORTGAGOR AND BANK.

28.     MAXIMUM INDEBTEDNESS SECURED. Anything in this Mortgage to the contrary notwithstanding, the mortgage, security interest and lien granted pursuant to this Mortgage shall secure payment of the Secured Debt only to the extent that the granting of such mortgage, security interest and lien would not be void, voidable, or avoidable under any applicable fraudulent transfer law.

15

9378512 v2

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage as of the day and year first set forth above.

MORTGAGOR:

ACHIEVEMENT, LTD.

By: _____
Print Name: Richard M. Osborne, Sr., Trustee
Richard M. Osborne Trust, as amended
Title: Managing Member

[SIGNATURE PAGE TO ACHIEVEMENT OPEN-END MORTGAGE]

16

9378512 v2

STATE OF OHIO              )
                           ) SS:
COUNTY OF _Lake_           )

    Before me, a Notary Public in and for said County and State, personally appeared the above-named ACHIEVEMENT, LTD., an Ohio limited liability company, by Richard M. Osborne, Sr., Trustee Richard M. Osborne Trust, as amended, its Managing Member, who acknowledged that he did sign the foregoing instrument on behalf of said company and that the same is her free act and deed as such Managing Member and the free act and deed of said company.

    IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal, at _Painesville_, Ohio, this _18_ day of _August_, 2016.



Notary Public
My commission expires: _____



JODI LITTMAN TOMASZEWSKI
Notary Public, State of Ohio
No Expiration Date
Recorded in Lake County

This instrument was prepared by:

Matthew P. Delguyd, Esq.
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
(216) 363-4544

[NOTARY PAGE TO ACHIEVEMENT OPEN-END MORTGAGE]

17

9378512 v2

## EXHIBIT "A"

### Legal Description

Parcel 1 (Prior deed- Inst No. 2015R021964; part of PPN 16-C-077-1-00-009-0)

Situated in the City of Mentor, County of Lake and State of Ohio, known as being part of Original Mentor
Township Lot 6, Tract 8, further known as being part of land conveyed to Achievement, LTD by deed recorded in Lake County Document No. 1997R027141 (PPN: 160-0771-008) and Document No. 2000R046860 (PPN:15C-0771-009);

Beginning at a point in the centerline of Bellflower Road, 60 (sixty) feet wide and varies, said point being South 89°59'30" East, 95.02 feet along said centerline from its intersection with the original centerline of Center Street (a.k.a. Route 615);

Thence South 00°00'30" West, 40.00 feet to a 5/8 inch iron pin set ("LDC, Inc.") at a northwesterly corner of a limited access right-of-way as shown in the plan of LAK-2-7.76 and the Principal Place of Beginning;

Course 1: Thence South 59°38'25" East, along said limited access right-of-way, 57.08 feet to a 5/8 inch iron pin set ("LDC, Inc.") at an angle point therein;

Course II: Thence South 01°30'44" West, continuing said limited access right-of-way, 109.00 feet to a 5/8 inch iron pin set ("LDC, Inc.") at an angle point therein;

Course III: Thence South 35°40'18" West, along said limited access right-of-way, 17.46 feet to a 5/8 inch iron pin set ("LDC, Inc.").in the northerly line of land conveyed to Achievement LTD by deed recorded in Lake County Document No. 1997R027141 (PPN: 16C-0771-010);

Course IV: Thence North 89°52'30" West, 101.81 feet to a 5/8 inch iron pin set ("LDC, Inc.");

Course V: Thence North 00°00'00h East, 151.79 feet to a 5/8 inch iron pin set ("LDC, Inc.") in said southerly sideline of Bellflower Road;

Course VI: Thence South 89°59'30" East, along said sideline, 65.62 feet to the Principal Place of Beginning and containing 0.3781 acres (16,469 square feet) of land as calculated and described from a survey done in January of 2012 by James R. Pegoraro, Jr., PS. No. 8150 of LDC, Inc., be the same, more or less, but subject to all legal highways and easements of record.

Parcel 2 (Prior deed-Inst No. 2015R022101; part of PPN 16-C-077-1-00-009-0)

Situated in the City of Mentor, County of Lake and State of Ohio, known as being part of Original Mentor
Township Lot 6, Tract 8, further known as being part of lands conveyed to Achievement, LTD by deed recorded in Lake County Document No. 1997R027141 (PPN: 160-0771-008) and Lake County Document No. 2000R046860 (PPN: 160-0771-009) and part of Mentor Joint Venture by deed recorded in Volume 1076, Page 491 of Lake County Official Records (PPN: 16C-0771-007):

A-1

9378512 v2

Beginning at a point in the centerline of Bellflower Road, 60 (sixty) feet wide and varies, said point being South 89°59'30" East, 220.75 feet along said centerline from its intersection with the original centerline of Center Street (a.k.a. Route 615);

Thence South 00°00'30" West, 30.00 feet to a 1/2 inch iron pin found at an angle point in the southerly sideline of Bellflower Road and the Principal Place of Beginning;

Course I: Thence South 77°58'32" East, along said southerly sideline of Bellflower Road, 48.03 feet to a 5/8 inch iron pin set (I.D. "LDC INC") at an angle point therein;

Course II: Thence South 89°59'30" East, 13.14 feet to a 5/8 inch iron pin set (ID. "LDC INC");

Course III: Thence South 00°00'00" East, 151.79 feet to a 5/8 inch iron pin set (I.D. "LDC INC") in the northerly line of land conveyed to Achievement LTD by deed recorded in Lake County Document No. 1997R027141 (PPN: 160-0771-010);

Course IV: Thence North 89°52'30" West, 13406 feet to a 5/8 inch iron pin set (I.D. "LDC INC") in the easterly line of land conveyed to Mentor Joint Venture by deed recorded in Volume 818, Page 550 of Lake County Official Records (PPN: 16C-0771-006);

Course V: Thence North 01°2400" East, along said easterly line, 161.56 feet to a 5/8 inch iron pin set (I.D. "LDC INC") in said southerly sideline of Bellflower Road;

Course VI: Thence South 89°59'30" East, along said sideline, 70.00 feet to the Principal Place of Beginning and containing 0.4818 acres (20,986 square feet) of land as calculated and described from a survey done in January of 2012 by James R. Pegoraro, Jr., P.S. No. 8150 of LDC, Inc.; be the same, more or less, but subject to all legal highways and easements of record.

Parcel 3    (Prior deed- Inst No. 2015R021965;   PPN 16-C-077-1-00-010-0)

Situated in the City of Mentor, County of Lake and State of Ohio, known as being part of Original Mentor Township Lot 6, Tract 8, further known as being part of lands conveyed to Achievement, LTD by deed recorded in Lake County Document No. 1997R027141 (PPN: 16C-0771-010) and part of Mentor Joint Venture by deed recorded in Volume 1076, Page 491 of Lake County Official Records (PPN: 16C-0771-007) & Volume 798, Page 1258 (PPN: 16C-0771-001):

Beginning at a point in the centerline of Bellflower Road, 60 (sixty) feet wide and varies, said point being South 89°59'30" East, 95.02 feet along said centerline from its intersection with the original centerline of Center Street (a.k.a. Route 615);

Thence South 00°00'30" West, 40.00 feet to a 5/8 inch iron pin set ("LDC, Inc.") at a northwesterly corner of a limited access right-of-way as shown in the plan of LAK-2-7.76;

Thence South 59°38'25" East, along said limited access right-of-way, 57.08 feet to a 5/8 inch iron pin set ("LDC, Inc.") at an angle point therein;

Thence South 01°30'44" West, continuing along said limited access right-of-way, 109.00 feet to a 5/8 inch iron pin set ("LDC, Inc.") at an angle point therein;

A-2

9378512 v2

Thence South 35°40'18" West, continuing along said limited access right-of-way, 17.46 feet to a 5/8 inch iron pin set ("LDC, Inc.") and Principal Place of Beginning;

Course I: Thence continuing South 35°40'18" West, along said limited right-of-way, 98.30 feet to a 5/8 inch iron pin set ("LDC, Inc.") in the northerly limited access line of S.R. 2 as shown in LAK-2-7.39;

Course II: Thence North 89°52'31" West, continuing along said limited access line, 110.51 feet to an angle point therein (Witness a 1 1/2 inch iron pipe found 0.19' N.);

Course III: Thence South 53°01'13" West, continuing along said limited access line, 89.27 feet to a 5/8 inch iron pin set ("LOC, Inc.");

Course IV: Thence North 01°24'00" East, passing through a 5/8 " iron pin at 84.19 feet, a total distance of 133.87 feet to a 5/8 inch iron pin set ("LDC, Inc.");

Course V: Thence South 89°52'30" East, 235.87 feet to the Place of Beginning and containing 0.4255 acres (18,536 square feet) of land as calculated and described from a survey done in January of 2012 by James R. Pegoraro, Jr., P.S. No. 8150 of LDC, Inc., be the same, more or less, but subject to all legal highways and easements of record.

A-3

9378512 v2

## EXHIBIT "B"

Permitted Encumbrances

1. Subject to any oil and/or gas lease, pipeline agreement, or other instrument related to the production or sale of oil or natural gas which may arise subsequent to the Date of Policy.

2. Oil, gas, coal and other mineral interests together with rights appurtenant thereto whether created by deed, lease, grant, reservation, severance, sufferance or exception.

3. Premises under examination abut on State Route 2 a limited access highway to which vehicular access from abutting property is denied between regularly constituted access points.

4. Pole line agreement filed for record July 19, 1923 and recorded in Volume 71, Page 262 of Lake County Records.

5. Easement for Ingress and egress as reserved in the deed from the Estate of John S. Dollins to Jack and Betty Brown filed for record August 31, 1949 and recorded in Volume 268, Page 550 of Lake County Records.

6. Reservation of an easement for sanitary sewer as contained in the deed from Lucille Casto to Frances and Winston Walker, filed for record July 11, 1966 and recorded in Volume 648 Page 115 of Lake County Records.

7. Highway easement to the City of Mentor, filed for record March 6, 1996 and recorded as Instrument No 1996R007463 of Lake County Records (bellflower widening at Center St).

8. Reciprocal easement agreement for ingress egress and utilities filed for record August 18, 2015 and recorded as Instrument No. 2015R021966 of Lake County Records.

9. Utility Easement option if favor of Aqua Ohio Inc., filed for record January 26, 2016 and recorded as Instrument No. 2016R001929 of Lake County Records.

10. Taxes and assessments for the first half of tax year 2016, and subsequent years, which are a lien, but not yet due and payable.

B-1

9378512 v2